UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RIVKA MANDEL,

                Plaintiff,

    v.

JACOB DASKAL, BELLA DASKAL, PEARL
DEMBITZER, LEIBY DEMBITZER, CHAYA
BORNSTEIN, SHULEM BORNSTEIN, CHAIM
DASKAL, ESTHER BRODY, ROSE
TEITELBAUM, BENZION DASKAL,
SOLOMON DASKAL, BARRY DASKAL,
CHAVI FISCHBEIN, ISAAC FISCHBEIN, BORO
PARK SHOMRIM, BAIS YAAKOV HIGH
SCHOOL OF CHICAGO, CRAINDELL Z.
MANNES, RABBI BEN ZION HALBERSTAM,
CHAIM S. HALBERSTAM, CONGREGATION
SHAAREI ZION OF BOBOV, RABBINICAL
COLLEGE BOBOVER YESHIVA BNEI ZION,
LIPA "NUSSY" BRAUNER, MUTTY
BRAUNER, YAD EPHRAIM a/k/a EZRAS
CHOLIM YAD EPHRAIM, PESACH
GREENBERG, YACHAD D'BOBOV, and
CHAIM FLEISCHER,

                Defendants.

Case No. 1:23-cv-07352 (RER) (VMS)

---

**DEFENDANTS RABBI BEN ZION HALBERSTAM AND CHAIM S. HALBERSTAM'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

Dechert LLP
Andrew J. Levander
Gary J. Mennitt
May Chiang
Julia Markham-Cameron *(pro hac vice)*
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

LEGAL STANDARD.................................................................................................... 4

ARGUMENT................................................................................................................. 5

I.  Plaintiff's claim against the Halberstam Defendants fails as a matter of law
   because 18 U.S.C. § 2255 does not create a right of action predicated on
   secondary liability............................................................................................... 5

II. Even if 18 U.S.C. § 2255 does allow for secondary liability, Plaintiff has failed to
   allege the requisite scienter against the Halberstam Defendants and thus still fails......... 10

CONCLUSION............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................4, 5

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ........................................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................4

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)................................................................................................ *passim*

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018)............................................................................................11

*City of New York v. Milhelm Attea & Bros.*,
    No. 06-CV-3620 (CBA), 2009 WL 701005 (E.D.N.Y. Mar. 11, 2009) ............................8, 10

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
    924 F. Supp. 449, 475 (S.D.N.Y. 1996)...........................................................................8

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
    671 F. Supp. 3d 387, 411 (S.D.N.Y. 2023).......................................................................8

*Doe 9 v. Varsity Brands, LLC*,
    679 F.Supp.3d 464 (D.S.C. June 26, 2023) .....................................................................7

*Doe v. City of Gauley Bridge*,
    No. 2:21-CV-00491, 2022 WL 3587827 (S.D.W. Va. Aug. 22, 2022) ...................................7

*Doe v. Hansen*,
    No. 4:16-CV-546 JAR, 2018 WL 2223679 (E.D. Mo. May 15, 2018), *aff'd*
    *sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019) ........................7

*Doe v. Liberatore*,
    478 F. Supp. 2d 742 (M.D. Pa. 2007) ...........................................................................9, 10

*Doe v. Schneider*,
    No. CIV.A. 08-3805, 2013 WL 5429229 (E.D. Pa. Sept. 30, 2013) ...................................9, 10

*Fulton v. Goord*,
    591 F.3d 37 (2d Cir. 2009)..............................................................................................5

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 474 (E.D.N.Y. 2012) ....................................................................8

*Heffernan v. HSBC Bank USA*,
    2001 WL 803719, at *7 (E.D.N.Y. Mar. 29, 2001) .................................................8

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 118 (2d Cir. 2013).................................................................................7, 8

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
    146 F.3d 66 (2d Cir. 1998)......................................................................................3

*Jean-Charles v. Perlitz*,
    937 F. Supp. 2d 276 (D. Conn. 2013) .................................................................7, 8

*Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship &*
    *Immigr. Servs.*, 30 F.4th 318 (2d Cir. 2022)...........................................................9

*Mangiafico v. Blumenthal*,
    471 F.3d 391 (2d Cir. 2006)....................................................................................2

*Murray v. Nazareth Reg'l High Sch.*,
    579 F. Supp. 3d 383 (E.D.N.Y. 2021) ..................................................................11

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)....................................................................8

*Papasan v. Allain*,
    478 U.S. 265 (1986)................................................................................................5

*Rock Sourcing LLC v. JGX LLC*,
    No. 21 CIV. 1054 (JPC), 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) ...............12

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)......................................................................................7

*Shovah v. Mercure*,
    44 F. Supp. 3d 504 (D. Vt. 2014)...........................................................................9

*Singleton v. Clash*,
    951 F. Supp. 2d 578 (S.D.N.Y. 2013), *aff'd sub nom. S.M. v. Clash*, 558 F.
    App'x 44 (2d Cir. 2014)......................................................................................8, 9

*St. Louis v. Perlitz*,
    176 F. Supp. 3d 97 (D. Conn. 2016).......................................................................9

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023)................................................................................................7

*United States v. Beasley*,
    490 F. Supp. 1228 (S.D.N.Y. 1980)................................................................................13

*United States v. Labat*,
    905 F.2d 18 (2d Cir. 1990)...................................................................................10

*Weiss v. City Univ. of New York*,
    No. 17-CV-3557 (VSB), 2019 WL 1244508 (S.D.N.Y. Mar. 18, 2019).................................10

*Williams v. People of State of N.Y.*,
    337 U.S. 241 (1949)........................................................................................13

*Zeitlin v. Palumbo*,
    532 F. Supp. 3d 64, 69 (E.D.N.Y. 2021) ..............................................................11

## Rules and Statutes

18 U.S.C. § 2.............................................................................................................9, 10

18 U.S.C. § 1595.......................................................................................................8

18 U.S.C. § 2255 .......................................................................................... *passim*

18 U.S.C. § 2333.....................................................................................................7, 8

18 U.S.C. § 2342.......................................................................................................8

Fed. R. Civ. P. 12(b)(6)..............................................................................................4

## PRELIMINARY STATEMENT

Defendant Rabbi Ben Zion Halberstam ("Rabbi B.Z. Halberstam") is the Grand Rabbi of the Bobover Jewish community and the head of the Shaarei Zion of Bobov synagogue, which is the heart of the Bobover community in Borough Park, Brooklyn. Defendant Rabbi Chaim S. Halberstam ("Rabbi C. Halberstam," and together with Rabbi Halberstam, the "Halberstam Defendants") is his son.

In 2018, the Bobover community was shocked by the revelation that one of its members, Defendant Jacob Daskal ("Daskal"), had been indicted for sexually abusing Plaintiff Rivka Mandel. The shock in the Bobover community was compounded by the fact that Daskal, until that moment, had been well-respected in the community. Ultimately, Daskal plead guilty to the related federal charges and was sentenced to seventeen and a half years in jail for his crimes.

Plaintiff's Amended Complaint seeks recompense for Daskal's crimes not just from Daskal and his family, but also from the Halberstam Defendants and other institutions and individuals in the Bobover community. Plaintiff, who is not a member of the Bobover Community, has not and cannot allege that she ever interacted, met, or spoke with the Halberstam Defendants. Likewise, Plaintiff has not alleged—and cannot allege—any facts to support her baseless claims that the Halberstam Defendants had any awareness of any wrongdoing by Daskal, much less that they aided and abetted such wrongdoing. Indeed, instead of alleging any specific unlawful or improper act by, or avoidable transfer to, the Halberstam Defendants, the Amended Complaint appears to base its claim against them for aiding and abetting liability on letters they sent to the Court at Daskal's sentencing and a single conclusory allegation. But the sentencing letters were not attempts to aid Daskal in his horrible conduct, nor are they evidence that the Halberstam Defendants knew such conduct was taking place.

The Amended Complaint thus fails to state a claim against the Halberstam Defendants. It fails as a matter of law because 18 U.S.C. § 2255 ("Section 2255") does not create a cause of action for secondary liability, the sole cause of action asserted against the Halberstam Defendants. And even if Section 2255 *did* allow for claims based on secondary liability, the Amended Complaint does not contain allegations sufficient to establish that the Halberstam Defendants acted with the requisite intent to state such a claim. For these reasons, the Halberstam Defendants respectfully request that this Court dismiss this action against them.

## STATEMENT OF FACTS

Rabbi B.Z. Halberstam is the head of the Congregation Shaarei Zion of Bobov and the Grand Rabbi of the Bobov Hassidic Dynasty and communities. AC ¶¶ 30, 62. Rabbi C. Halberstam is his son. AC ¶ 29. Plaintiff and certain of the defendants were not members of the Bobover community although others were. *See* Am. Compl. ("AC"), ECF No. 21 ¶¶ 10–39, 42. The Halberstam Defendants do not know Plaintiff, and were not involved in, or aware of, any interactions between Daskal and Plaintiff—no facts to the contrary are alleged.

In 2018, Daskal was indicted in New York state court for sexually abusing Plaintiff. AC ¶¶ 44–45. In 2021, he was indicted in federal court for the same conduct. AC ¶¶ 48–49. In July 2023, Daskal pleaded guilty to the federal charges. AC ¶¶ 58–60. Daskal's sentencing hearing took place on October 11, 2023, before Judge Nicholas Garaufis. AC ¶ 1. Daskal was sentenced to 17.5 years in federal prison for his crimes. AC ¶ 1.

The Halberstam Defendants, along with certain others from both inside and outside the Bobover community, submitted letters to Judge Garaufis for inclusion in Daskal's sentencing record. Am. Compl. ¶ 62; *see United States v. Daskal*, No. 1:21-cr-00110-NGG (E.D.N.Y.), ECF

No. 147-3 at 6–10 ("Halberstam Letters").[1]  In these Letters, the Halberstam Defendants made

clear their horror at Daskal's actions, acknowledging Daskal's "awful transgression" and

castigating Daskal for "los[ing] his moral compass."  Halberstam Letters at 7, 10.  The Letters also

detailed the Halberstam Defendants' recollections of Daskal's conduct within the community and

their observations following the filing of federal charges that Daskal was "tortured by guilt for the

harm he has caused," "painfully aware of the tragedy involved," and that "his pain for [Plaintiff],

his wife and his family and all those who looked up to his for all the good that he has done will be

carried by him always."  *See generally* Halberstam Letters.

On January 25, 2024, Plaintiff initially named Daskal as the sole defendant in this action.

Subsequently, Plaintiff filed the Amended Complaint in this matter, adding the Halberstam

Defendants among many others.  *See generally* AC.  Plaintiff's sole claim against the Halberstam

Defendants is that they are somehow liable under Section 2255 "as a consequence of their

knowledge of, aiding and abetting, enabling and concealing the conduct of defendant Daskal."  AC

¶ 94.  The Amended Complaint states without alleging facts that unnamed "defendants . . . provided

collective communal assistance to Daskal."  AC ¶ 4.  But it is unclear what the Halberstam

Defendants allegedly did that assisted Daskal.  To the contrary, the allegations about the

Halberstam Defendants are that supposedly, somehow, without specifying any factual basis or

even circumstantial facts whatsoever that:

---

[1] The Halberstam Defendants respectfully request that this Court take judicial notice of their Letters, which are incorporated in the Amended Complaint, *see* AC ¶ 62, and are public documents filed openly on the docket for the criminal action against Daskal.  As such, the Court may take judicial notice thereof. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (taking judicial notice of docket sheet in another action as "docket sheets are public records of which the court could take judicial notice" and the complaint "incorporated pleadings . . . referred to in the docket sheet"); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

(1) the Halberstam Defendants "had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct inflicted by defendant Daskal on Ms. Mandel," AC ¶¶ 28–29;

(2) Rabbi B.Z. Halberstam "was the recipient of [unidentified] assets of defendant Daskal transferred [at unknown times] to him for the purpose of avoiding compensation to Ms. Mandel," AC ¶ 29;

(3) they submitted statements in support of Daskal for consideration at his sentencing, AC ¶ 62;

(4) they somehow supposedly "sought to intervene in and delay [Daskal's] sentencing," AC ¶ 66; and

(5) they, among others, bore "responsibility" for Daskal's actions, according to a statement by Judge Garaufis at Daskal's sentencing, AC ¶ 91.

These conclusory statements are mere legal conclusions without any supporting factual allegations and do not state a claim against the Halberstam Defendants. At the threshold, Section 2255 does not create a cause of action based on aiding and abetting liability. For another, even if aiding and abetting *were* actionable, these allegations are far too conclusory to establish that the Halberstam Defendants are liable for Daskal's actions. For these reasons, the Halberstam Defendants respectfully request that this Court dismiss the Amended Complaint against them with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In deciding whether a complaint meets this standard, the court must draw inferences from its allegations "in the light most favorable to the plaintiff." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## ARGUMENT

As detailed below, the plain text of Section 2255 provides that victims of the crimes specified in the statute may seek damages against the direct perpetrators of those crimes. However, Section 2255 does not provide an express right of action against aiders and abettors. Thus, because Section 2255 does not create a right of action based on secondary liability, Plaintiff cannot state a claim against the Halberstam Defendants based on Daskal's conduct. *See* Point I. And even if there could be secondary liability for Daskal's conduct, Plaintiff's claim nonetheless fails because she has failed to allege any facts supporting that the Halberstam Defendants committed any act with the requisite scienter. *See* Point II. For these reasons, Plaintiff's claim against the Halberstam Defendants must be dismissed.

## I. Plaintiff's claim against the Halberstam Defendants fails as a matter of law because 18 U.S.C. § 2255 does not create a right of action predicated on secondary liability.

Section 2255 provides that "Any person who, while a minor, was a victim of a violation of [certain sections of Title 18 prohibiting sexual abuse of children] and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of

the action, including reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2255(a).

Because Section 2255 does not provide for a right of action against individuals alleged to be liable as aiders-and-abettors or accessories (or under any other theory of secondary liability) Plaintiff's claim fails as a matter of law. In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.* ("*Central Bank*"), the Supreme Court made clear that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiffs may also sue aiders and abettors." 511 U.S. 164, 182 (1994). In *Central Bank*, the Supreme Court considered whether § 10(b) of the Securities Exchange Act provided for aiding and abetting liability. *See generally id.* at 181–85. Recognizing that the plain language of the statute "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act," and that "nothing in the text or history of § 10(b) even implies that aiding and abetting was covered," the Court refused to interpret the statute to allow a claim for secondary liability. *See id.* at 177, 183–85. The Court concluded that "congressional intent to impose . . . aiding and abetting liability" could not plausibly be interpreted from "statutory silence." *Id.* at 185; *see also id.* at 177 ("If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words "aid" and "abet" in the statutory text. But it did not.").

Section 2255, like § 10(b) of the Securities Exchange Act, is silent concerning secondary liability. *See generally* 18 U.S.C. § 2255. *Central Bank* thus dictates that there can be no secondary liability under that statute. And most courts that have considered the issue—including at least one district court within the Second Circuit—have held that *Central Bank* forecloses such claims under Section 2255.

The District of Connecticut in *Jean-Charles v. Perlitz* granted defendants' motion to dismiss an aiding-and-abetting claim brought under Section 2255, reasoning that "under *Central Bank* the lack of any reference to secondary liability in § 2255 is fatal to the plaintiffs' [claim]." 937 F. Supp. 2d 276, 281–83 (D. Conn. 2013). *Perlitz* is consistent with the decisions of district courts around the nation holding that Section 2255 does not allow for secondary liability of any kind. *See, e.g.*, *Doe v. Hansen*, No. 4:16-CV-546 JAR, 2018 WL 2223679, at *5 (E.D. Mo. May 15, 2018) ("the Court agrees with the conclusion reached by the *Perlitz* court, following the logic of *Central Bank*, that the civil remedy provision of [Child Abuse Victims Rights Act] does not permit claims for secondary or vicarious liability."), *aff'd sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019); *Doe 9 v. Varsity Brands, LLC*, 679 F.Supp.3d 464, 481 (D.S.C. June 26, 2023) ("Section 2255 makes no mention of secondary liability, which by itself is an indication that Congress did not intend to permit such a theory." (internal citation omitted)); *Doe v. City of Gauley Bridge*, No. 2:21-CV-00491, 2022 WL 3587827, at *13 (S.D.W. Va. Aug. 22, 2022) ("statutory interpretation does not support imposing vicarious liability under § 2255.").

Moreover, while the Second Circuit has not directly addressed this question under Section 2255, the *Perlitz* decisions and others like it are entirely consistent with Second Circuit precedent interpreting *Central Bank* to disallow secondary liability claims under comparable statutes. For example, in *Rothstein v. UBS AG*, the Second Circuit held that *Central Bank* precluded a plaintiff's aiding-and-abetting claims under a now-superseded version of the Anti-Terrorism Act, 18 U.S.C. § 2333(a), which provided a civil remedy for violations of anti-terrorism laws but was silent regarding secondary liability. 708 F.3d 82, 97 (2d Cir. 2013), *superseded by statute as recognized by Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 123–24 (2d Cir. 2013) (affirming district court's grant of motion to dismiss

aiding-and-abetting claims under § 2333(a) under *Rothstein* and *Central Bank*); *see also Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474 (E.D.N.Y. 2012) (same).

Other federal courts in this Circuit take the same approach, applying *Central Bank* to find there is no civil aiding and abetting liability under the RICO statutes. *See Heffernan v. HSBC Bank USA*, 2001 WL 803719, at \*7 (E.D.N.Y. Mar. 29, 2001) ("the reasoning in *Central Bank* forecloses aiding and abetting liability for a civil RICO violation because the text of 18 U.S.C. § 1962 does not reveal a congressional intent to impose civil liability for such conduct."); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 475 (S.D.N.Y. 1996) ("under *Central Bank*'s approach to statutory construction, the court must conclude that there is no civil aiding and abetting liability under RICO.") Similarly, in *City of New York v. Milhelm Attea & Bros.*, this Court extended the reasoning of *Central Bank* to foreclose a claim for aiding and abetting a violation of the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2342(a). No. 06-CV-3620 (CBA), 2009 WL 701005, at \*2–6 (E.D.N.Y. Mar. 11, 2009). More recently, the Southern District has twice applied *Central Bank* to grant motions to dismiss aiding-and-abetting claims brought pursuant to 18 U.S.C. § 1595, which establishes a private civil right of action for violations of certain federal sex trafficking statutes. *Noble v. Weinstein*, 335 F. Supp. 3d 504, 513, 525 (S.D.N.Y. 2018); *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 411 (S.D.N.Y. 2023). Notably, the *Noble* court favorably cited *Perlitz* in support of its reasoning.

Further, district courts within the Second Circuit have affirmed the propriety of adhering to the plain text of Section 2255. The Southern District of New York has held that because the statute does not explicitly provide for the application of the discovery rule to the statute of limitations, that doctrine does not apply. *Singleton v. Clash*, 951 F. Supp. 2d 578, 586–87 (S.D.N.Y. 2013), *aff'd sub nom. S.M. v. Clash*, 558 F. App'x 44 (2d Cir. 2014). One year later,

the District of Vermont came to the same conclusion, reasoning that "[t]he plain language of the statute indicates that the § 2255 claim accrues at the time of victimization," and, in contrast to state statutes expressly providing that the statute of limitations begins to run upon the discovery of the link between the prohibited conduct and latent injuries, "provides only that the statute of limitations begins to run at the time the right of action first accrues." *Shovah v. Mercure*, 44 F. Supp. 3d 504, 510–11 (D. Vt. 2014). And in *St. Louis v. Perlitz*, the District of Connecticut agreed, musing that "[i]t may be sound policy" to adopt the discovery rule in computing the statute of limitations for a Section 2255 claim, "[b]ut there is no reason to think Congress did so[.]" 176 F. Supp. 3d 97, 100 (D. Conn. 2016). *Singleton*, *Shovah*, and *St. Louis* make clear that courts in the Second Circuit will not inject affirmative provisions into Section 2255 when they are missing from the plain text of the statute. These cases thus support that secondary liability—which is not provided for in the statutory text—should not be read into Section 2255. *Cf. Knight First Amend. Inst. at Columbia Univ. v. United States Citizenship & Immigr. Servs.*, 30 F.4th 318, 331 (2d Cir. 2022) ("It is not the province of the courts to add words to statutes that Congress has enacted."). Because case law overwhelmingly holds that there can be no secondary liability under Section 2255, and because such a holding is consistent with *Central Bank* and Second Circuit precedent interpreting that decision, this Court should dismiss the Amended Complaint as alleged against the Halberstam Defendants.[2]

---

[2]     Some district courts have ignored *Central Bank* and read secondary liability into Section 2255 by relying on 18 U.S.C. § 2(a), which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 756 (M.D. Pa. 2007) (quoting 18 U.S.C. § 2(a) and holding that "if one has aided or abetted another in violating one of the statutes listed in section 2255, then he himself has committed an act indictable under that listed statute."); *Doe v. Schneider*, No. CIV.A. 08-3805, 2013 WL 5429229, at *10 n.13 (E.D. Pa. Sept. 30, 2013). The Halberstam Defendants respectfully posit that these cases were wrongly decided. Not only do they fail to consider *Central Bank*'s admonishment not to read secondary liability into statutes where it is not explicitly provided, but they misapply Section 2(a), which

**II.** **Even if 18 U.S.C. § 2255 does allow for secondary liability, Plaintiff has failed to allege the requisite scienter against the Halberstam Defendants and thus still fails.**

Plaintiff has utterly failed to state an aiding and abetting claim against the Halberstam Defendants even were the Court to reject the strong authority that *Central Bank* precludes secondary liability under Section 2255. Even the minority decisions in *Liberatore* and *Schneider* recognize that aiding-and-abetting liability requires that the defendant have "conscious[] . . . knowledge of the underlying substantive offenses, as well as the specific criminal intent to commit them." *Liberatore*, 478 F. Supp. 2d at 756; *see Schneider*, 2013 WL 5429229, at \*10 (requiring that "the defendant knew the offense was being committed" and "the defendant acted with the intent to facilitate it."). Indeed, *Liberatore* acknowledges that "'[a] general suspicion that an unlawful act may occur is not enough'" to establish the requisite intent. 478 F. Supp. 2d at 756 (citing *United States v. Labat*, 905 F.2d 18, 23 (2d Cir. 1990)). Similarly, the *Schneider* court granted summary judgment in favor of alleged aiders and abettors where there was no evidence that they "provided any assistance to [the principal] in carrying out the alleged abuse, nor that they had . . . the intent for [the principal] to engage in criminal sexual activity with Plaintiff." 2013 WL 5429229, at \*10. Accordingly, where, as here, Plaintiff has not alleged that the aiding-and-abetting defendants "desired that [the principal's] crimes be accomplished" or "actively participated in some manner to assist [the principal] in the commission of his offenses," the Court should grant the Halberstam Defendants' motion. *See id.* at 757.

---

creates a *criminal*, not *civil*, cause of action for aiding and abetting. *See Central Bank*, 511 U.S. at 190–91 ("while it is true that an aider and abettor of a criminal violation of [certain statutes] violates 18 U.S.C. § 2, it does not follow that a private civil aiding and abetting cause of action must also exist"); *Weiss v. City Univ. of New York*, No. 17-CV-3557 (VSB), 2019 WL 1244508, at \*12 (S.D.N.Y. Mar. 18, 2019) ("18 U.S.C. § 2 . . . does not provide a private cause of action"); *Milhelm Attea & Bros., Inc.*, 2009 WL 701005 at \*6 ("there is no statutory provision similar to § 2 authorizing civil suits against aiders and abettors").

Plaintiff's Amended Complaint fails for similar reasons. It contains *zero* factual allegations that the Halberstam Defendants knew of the underlying substantive offenses committed by Defendant Daskal, much less that they had any intent to facilitate those offenses—and to be clear, the Halberstam Defendants vehemently deny that they would ever intend such despicable conduct. *See generally* AC. Plaintiff's allegations that the Halberstam Defendants "had knowledge of, facilitated, aided and abetted, and concealed" Daskal's conduct, were "members of the 'community' identified by Judge Garaufis as bearing 'responsibility'" for Daskal's actions, and that Rabbi Halberstam was "the recipient of assets of defendant Daskal transferred to him for the purpose of avoiding compensation to Ms. Mandel" do not establish the requisite intent, because each of these allegations is entirely conclusory, unsupported by a single fact, meeting, community act, or transfer of assets, and wholly made "upon [Plaintiff's] information and belief." AC ¶¶ 28–29, 91. The law is clear that "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). Rather, "such an allegation must be supported by 'factual information that makes the inference of culpability plausible.'" *Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383, 389 (E.D.N.Y. 2021) (citing *Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 69 (E.D.N.Y. 2021)). The Amended Complaint does not set forth any basis for the supposed "information and belief" and contains no such factual allegations to support any inference that either Halberstam Defendant knew, much less intended, for Daskal to commit his heinous acts against Plaintiff.

Also insufficient to state a claim are the Amended Complaint's allegations that unidentified "others"—meaning individuals other than Daskal—"bear responsibility for creating and maintaining a regime of terror and intimidation" and "orchestrated a multi-pronged approach to

'silence'" Plaintiff. AC ¶¶ 7, 50. Again, the law is clear that a complaint fails to satisfy minimum

pleading requirements when it "lump[s] all the defendants together in each claim and provid[es]

no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34

(2d Cir. 2001). Where a court is "unable to discern from the pleadings [a defendant's] specific

role, if any" in a claimed offense, that claim should properly be dismissed. *Rock Sourcing LLC v.

JGX LLC*, No. 21 CIV. 1054 (JPC), 2024 WL 1243325, at \*25 (S.D.N.Y. Mar. 22, 2024). Such is

the case here. There is nothing in the Amended Complaint which, if proven, would show that the

Halberstam Defendants participated in this alleged conduct, much less that either actually knew

about and facilitated Daskal's crimes.

The only specific acts that Plaintiff points to involve judicial proceedings following

Daskal's guilty plea—that the Halberstam Defendants wrote letters on Daskal's behalf for

consideration at his sentencing hearing and the erroneous allegation that the Halberstam

Defendants were part of a group (they were not) that "sought to intervene in and delay the

sentencing." AC ¶¶ 62, 66. These allegations *cannot* support any inference of aiding and

abetting—the letters were written, and the sentencing occurred, after the misconduct had ended

and Daskal had pleaded guilty. More to the point, these letters expressly condemned Daskal's

wrongdoing against Mandel in no uncertain terms, with Rabbi B.Z. Halberstam making clear that

he "certainly cannot condone any such action" and Rabbi C. Halberstam calling Daskal's deeds an

"awful transgression." Halberstam Letters at 10, 7. Rather, the Halberstam Defendants simply

noted that Daskal's crimes were contrary to his conduct as previously known by the two rabbis

based on Daskal's services to the community. No negative inference can be drawn against the

authors based on their interactions with the Court in connection with the sentencing.

Indeed, recognition of a claim based upon the submission of character reference letters for consideration at sentencing would be anathema to the policies underlying federal sentencing policies. As the Supreme Court admonished nearly 75 years ago, "the punishment should fit the offender and not merely the crime. . . . The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender." *Williams v. People of State of N.Y.*, 337 U.S. 241, 247 (1949). Indeed, "[f]ailure to analyze and deal with factors relating to character, before imposing sentence, is akin to the surgeon making a crucial incision without prior examination of x-rays, medical tests, etc." *United States v. Beasley*, 490 F. Supp. 1228, 1231 (S.D.N.Y. 1980). The sentencing letters submitted on Daskal's behalf, including those submitted by the Halberstam Defendants, helped to provide Judge Garaufis a full picture of Daskal, helping to ensure that the punishment fit the offender. Such letters are plainly not evidence of aiding and abetting Daskal's crimes. In sum, Plaintiff has failed to state a claim against the Halberstam Defendants.

## CONCLUSION

For all the foregoing reasons, the Court should grant the Halberstam Defendants' motion to dismiss Plaintiff's claim against them.

Dated: New York, New York
      May 24, 2024

Respectfully submitted,

By: *Andrew J. Levander*
     Andrew J. Levander
     Gary J. Mennitt
     May Chiang
     Julia Markham-Cameron*
     **Dechert LLP**
     Three Bryant Park
     1095 Avenue of the Americas
     New York, NY 10036
     Telephone: 212-698-3500
     Email: gary.mennitt@dechert.com
     Email: andrew.levander@dechert.com
     Email: julia.markham-cameron@dechert.com

     *Attorneys for the Halberstam Defendants*

     *\* admitted pro hac vice*