UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RIVKA MANDEL

                Plaintiff,

  -against-

JACOB DASKAL; BELLA DASKAL; PEARL
DEMBITZER; LEIBY DEMBITZER; CHA YA
BORNSTEIN; SHULEM BORNSTEIN; CHAIM
DASKAL; ESTHER BRODY; ROSE
TEITELBAUM; BENZION DASKAL;
SOLOMON DASKAL; BARRY DASKAL;
CHAVI FISCHBEIN; ISAAC FISCHBEIN;
BORO PARK SHOMRIM; BAIS Y AAKOV
HIGH SCHOOL OF CHICAGO; CRAINDELL
Z. MANNES; RABBI BEN ZION
HALBERSTAM; CHAIM S. HALBERSTAM;
CONGREGATION SHAAREI ZION OF
BOBOV; RABBINICAL COLLEGE BOBOVER
YESHIVA BNEI ZION; LIPA "NUSSY"
BRAUNER; MUTTY BRAUNER; YAD
EPHRAIM a/k/a EZRAS CHOLIM YAD
EPHRAIM; PESACH GREENBERG; YACHAD
D'BOBOV; and CHAIM FLEISCHER,

                Defendants.

Case No.: 23-cv-07352 (RER) (VMS)

**ORAL ARGUMENT REQUESTED**

Hon. Ramon E. Reyes, Jr.

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS BY DEFENDANTS BELLA DASKAL,
<u>PEARL DEMBITZER, LEIBY DEMBITZER AND ROSE TEITELBAUM</u>**

**ROSENBERG & ESTIS, P.C.**
*Attorneys for Defendants Bella
Daskal, Pearl Dembitzer, Leiby
Dembitzer and Rose Teitelbaum*
733 Third Avenue
New York, New York 10017
(212) 867-6000

DEBORAH RIEGEL
BENJAMIN Z. KOBLENTZ
  *Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

LEGAL STANDARDS ............................................................................................................ 5

ARGUMENT ........................................................................................................................... 6

POINT I       THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
AGAINST THE DASKAL FAMILY DEFENDANTS PURSUANT TO
18 U.S.C. § 2255 ......................................................................................................... 6

    A.     Plaintiff's Claim Against the Daskal Family Defendants Fails as a Matter
of Law because 18 U.S.C. § 2255 Does Not Create a Right of Action
Predicated Upon Secondary Liability .................................................................. 7

    B.     Even if 18 U.S.C. § 2255 Does Allow for Secondary Liability, Plaintiff
has Failed to Allege the Requisite Scienter Against the Daskal Family
Defendants ......................................................................................................... 11

CONCLUSION ....................................................................................................................... 16

RE\09501\0001\5646498v5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achtman v. Kirby, McInerney, & Squire, LLP*,
 464 F.3d 328 (2d Cir. 2006) ............................................................................. 5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ......................................................................................... 5

*Atuahene v. City of Hartford*,
 10 F. Appx. 33 (2d Cir. 2001) ....................................................................... 14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ......................................................................................... 5

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
 754 F.2d 57 (2d Cir. 1985) ............................................................................ 12

*Butts v. New York City Dep't of Educ.*,
 No. 16-cv-5504 (NGG) (RML), 2018 WL 4725263 (E.D.N.Y. Sept. 28, 2018) ..................... 9

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
 511 U.S. 164 (1994) ................................................................. 1, 6, 7, 8, 9, 10, 11, 12

*Chowdhury v. Worldtel Bangladesh Holding, Ltd.*,
 746 F.3d 42 (2d Cir. 2014) .............................................................................. 8

*Citizens United v. Schneiderman*,
 882 F.3d 374 (2d Cir. 2018) ........................................................................... 15

*City of New York v. Milhelm*,
 2009 WL 701005 (E.D.N.Y. Mar. 11, 2009) .................................................... 9

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
 924 F. Supp. 449 (S.D.N.Y. 1996) ................................................................. 10

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
 671 F. Supp. 3d 387 (S.D.N.Y. 2023) ............................................................ 10

*Doe 9 v. Varsity Brands, LLC*,
 No. CV 6:22-3509-HMH, 2023 WL 4191782 (D.S.C. June 26, 2023) ................ 8

*Doe v. Hansen*,
 No. 4:16-CV-546 JAR, 2018 WL 2223679 (E.D. Mo. May 15, 2018),
 *aff'd sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*,
 920 F.3d 1184 (8th Cir. 2019) .......................................................................... 8

RE\09501\0001\5646498v5

*Doe v. Liberatore*,
 478 F. Supp. 2d 742 (M.D. Pa. 2007) ...................................................................12

*Doe v. Schneider*,
 No. CIV.A. 08-3805, 2013 WL 5429229 (E.D. Pa. Sept. 30, 2013) ................................12, 15

*Gill v. Arab Bank, PLC*,
 893 F. Supp. 2d 474 (E.D.N.Y. 2012) ...................................................................9

*Gray v. Darby*,
 No. CIV A 08-CV-02527, 2009 WL 805435 (E.D. Pa. Mar. 25, 2009)...............................11

*Halberstam v. Welch*,
 705 F.2d 472 [D.C. Cir. 1983] ...........................................................................12

*Harding v. Watch Tower Bible & Tract Soc'y of New York, Inc.*,
 No. 22-6029, 2022 WL 3025816 (10th Cir. Aug. 1, 2022) .....................................11

*Heffernan v. HSBC Bank USA*,
 No. 1:99CV07981, 2001 WL 803719 (E.D.N.Y. Mar. 29, 2001) ...........................9

*Jean-Charles v. Perlitz*,
 937 F. Supp 2d 276 (D. Conn. 2013)......................................................................8

*Mastafa v. Chevron Corp.*,
 759 F. Supp. 2d 297 (S.D.N.Y. 2010),
 *aff'd*, 770 F.3d 170 (2d Cir. 2014)....................................................................10

*May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*,
 No. 21-cv-02891 (RPK) (PK), 2022 WL 4539577 (E.D.N.Y. Sept. 28, 2022)....................15

*Noble v. Weinstein*,
 335 F. Supp. 3d 504 (S.D.N.Y. 2018).........................................................10, 12, 14

*Prewett v. Weems*,
 749 F.3d 454 (6th Cir. 2014) ...........................................................................11

*Red Rock Sourcing LLC v. JGX LLC*,
 No. 21 CIV 1054 (JPC), 2024 WL 1243325 (S.D.N.Y. Mar. 22, 2024) .......................14

*Rothstein v. UBS AG*,
 708 F.3d 82 (2d Cir. 2013),
 *superseded by statute as recognized by Twitter, Inc. v. Taamneh*,
 598 U.S. 471 (2023).........................................................................................9

*Shovah v. Mercure*,
 44 F. Supp. 3d 504 (D. Vt. 2014).........................................................................10

- iii -

*Singleton v. Clash*,
  951 F. Supp. 2d 578 (S.D.N.Y. 2013),
  *aff'd sub nom. S.M. v. Clash*,
  558 F. Appx. 44 (2d Cir. 2014)..................................................................10

*St. Louis v. Perlitz*,
  176 F. Supp. 3d 97 (D. Conn. 2016)..........................................................10

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 118 (2d Cir. 2013).......................................................................9

*United States v. Labat*,
  905 F.2d 18 (2d Cir. 1990).........................................................................12

**Statutes and Other Authorities**

18 U.S.C. § 2255................................................1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 15

18 U.S.C. § 2333(a)...................................................................................9

18 U.S.C. § 2423(a)...................................................................................2

Contraband Cigarette Trafficking Act .........................................................9

FRCP 12(b)(6) .............................................................................1, 2, 5, 16

Securities Exchange Act § 10(b)..................................................................7

Torture Victims Prevention Act..................................................................10

RE\09501\0001\5646498v5

Defendants Bella Daskal, Pearl Dembitzer, Leiby Dembitzer and Rose Teitelbaum (collectively, the "Daskal Family Defendants"), through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss Count I alleged against them in plaintiff Rivka Mandel's ("Plaintiff" or "Mandel") Amended Complaint (the "Amended Complaint") with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules").

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint asserts a single cause of action against the Daskal Family Defendants alleging that, in violation of 18 U.S.C. § 2255 ("§ 2255"), they allegedly aided and abetted defendant Jacob Daskal ("Daskal") in the commission of crimes involving the sexual abuse of Plaintiff, for which Daskal ultimately pleaded guilty to federal charges in July 2023.

As an initial matter, Plaintiff's claim fails as a matter of law because § 2255 does not create a cause of action for secondary liability, including, without limitation, for aiding and abetting the perpetrator of the crimes specified in the statute. As set forth in the United States Supreme Court's holding in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994), and a number of consistent holdings by district courts within both the Second Circuit and federal courts across the country, civil aiding and abetting liability does not exist unless a predicate statute expressly provides for such liability. Notwithstanding the same, the Amended Complaint fails to identify any of the statutes listed in § 2255 that could serve as the predicate act for Plaintiff's § 2255 claim.

Additionally, giving all favorable inferences, there is simply no factual basis set forth in the Amended Complaint for Plaintiff's claim that any of the Daskal Family Defendants -- Bella Daskal (Daskal's wife), Rose Teitelbaum and Pearl Dembitzer (Daskal's daughters) and Leiby Dembitzer (Daskal's son-in-law) -- were aware of Daskal's alleged wrongdoing, much less aided

and abetted such wrongdoing. Instead of alleging any specific facts to substantiate that the Daskal Family Defendants acted unlawfully or improperly, the Amended Complaint merely references general statements made by the District Court at Daskal's sentencing and letters sent by the Daskal Family Defendants prior to Daskal's sentencing. Accordingly, even if § 2255 did provide for secondary liability, which it does not, the Amended Complaint does not contain allegations sufficient to establish that the Daskal Family Defendants acted with the requisite scienter to support such a claim. Accordingly, Plaintiff's Amended Complaint against the Daskal Family Defendants should be dismissed pursuant to Federal Rule 12(b)(6), and the Amended Complaint must be dismissed with prejudice against the Daskal Family Defendants because any further amendment would be futile.

## STATEMENT OF FACTS

Bella Daskal is Daskal's wife. Am. Compl., ECF Dkt. No. 21, ¶ 11. Pearl Dembitzer and Rose Teitelbaum are Daskal's daughters. Am. Compl., ECF Dkt. No. 21, ¶¶ 12, 18. Leiby Dembitzer is Daskal's son-in-law and married to Pearl Dembitzer. Am. Compl., ECF Dkt. No. 21, ¶ 13. As discussed below, the Amended Complaint fails set forth any factual allegations that the Daskal Family Defendants had knowledge of Daskal's crimes or provided substantial assistance to him.

The Amended Complaint is predicated upon Daskal's sexual abuse of Plaintiff. On or about May 11, 2018, Daskal was indicted in Kings County Supreme Court. Am. Compl., ECF Dkt. No. 21, ¶ 44. On or about July 14, 2023, Daskal pleaded guilty to a subsequent federal indictment for violating 18 U.S.C. § 2423(a). Am. Compl., ECF Dkt. No. 21, ¶ 53. Judge Garaufis accepted the plea. Am. Compl., ECF Dkt. No. 21, ¶ 58. Thereafter, on or about October 11, 2023, Daskal was sentenced to 17.5 years in federal prison. Am. Compl., ECF Dkt. No. 21, ¶ 1.

Plaintiff initially commenced this litigation on or about October 2, 2023 solely against Daskal. *See* ECF Dkt. No. 1. On or about January 25, 2024, Plaintiff filed the Amended Complaint, adding, *inter alia*, the Daskal Family Defendants as defendants. Am. Compl., ECF Dkt. No. 21. The Daskal Family Defendants were not served until 119 days later, on May 23, 2024. *See* ECF Dkt. Nos. 62-65.

The Amended Complaint contains no substantive allegations against the Daskal Family Defendants. Rather, Plaintiff relies on paraphrased and conclusory statements made by Judge Garaufis at the sentencing of Daskal, which failed to establish, let alone sufficiently plead, the Daskal Family Defendants' purported knowledge of, role in, or specific acts in furtherance of Daskal's crimes:

> As Judge Garaufis explained, the other named defendants and others whose identities will be revealed through the use of federal disclosure procedures provided collective communal assistance to Daskal by defendants' criminal acts (i) to deter Ms. Mandel from seeking vindication for the crimes she suffered and to silence her through attempts of bribery and threats and acts of violence against her, and (ii) corruptly to deter her from providing information as to Daskal's pattern, practice, and history of sexual assault and abuse of many other young women to whom defendants and other community members provided access to him to groom those children in order to achieve Daskal's sexual abuse and exploitation of them.

Am. Compl., ECF Dkt. No. 21, ¶ 4. Similarly, Plaintiff claims that:

> [A]s to the other defendants and others whose identities will be revealed through federal disclosure laws, Judge Garaufis at the October 11, 2023, sentencing made clear that the other defendants identified in this Amended Complaint and others bear responsibility for creating and maintaining a regime of terror and intimidation which is wholly consistent with the operation of gangland enterprises that generate fear, a code of *omerta*, and a system of revenge and intimidation identical in many respects to the operation of drug cartels, organized crime syndicates, and terrorist organizations.

Am. Compl., ECF Dkt. No. 21, ¶ 7.  Nevertheless, Judge Garaufis' sole reference to specific conduct involving the Daskal Family Defendants does not address, let alone make a finding regarding the Daskal Family Defendants' alleged role in or knowledge of Daskal's crimes.  Rather, Judge Garaufis simply notes that "in or about June 2017, Daskal 'offered to have [Ms. Mandel] stay with his family at his summer home in South Fallsburg, New York...[and Ms. Mandel] moved in shortly thereafter.'"  Am. Compl., ECF Dkt. No. 21, ¶ 43.

Moreover, the Amended Complaint broadly states that "Daskal and other defendants identified earlier in this Amended Complaint" attempted to silence Plaintiff through coercion, threats, and intimidation, including slashing Plaintiff's tires and attempting to bribe Plaintiff.  Am. Compl., ECF Dkt. No. 21, ¶¶ 50-51.  The Amended Complaint does not identify which of these acts, if any, the Daskal Family Defendants were involved in; instead, it merely paints all of the defendants with the same broad brush.

Finally, the Amended Complaint references letters submitted by Bella Daskal, Pearl Dembitzer, and Rose Teitelbaum as part of Daskal's sentencing memorandum as if to suggest that the mere act of supporting Daskal in connection with his sentencing creates liability.  Am. Compl., ECF Dkt. No. 21, ¶ 62.  The Amended Complaint also makes references to Daskal's alleged transfer of "millions of dollars of his assets in an effort to avoid compensation to Ms. Mandel." Am. Compl., ECF Dkt. No. 21, ¶¶ 5, 8, 11-13, 18, 89.  The Amended Complaint does not allege how or when such alleged transfers were made or how, even if true, they would support the asserted claims that the Daskal Family Defendants abetted or facilitated Daskal's crimes.

Plaintiff's sole cause of action against the Daskal Family Defendants is in Count I of the Amended Complaint for violation of "18 U.S.C. §2255 as a consequence of their knowledge of, aiding and abetting, enabling and concealing the conduct of defendant Daskal for compensatory

damages and 'punitive damages' in favor of Ms. Mandel in an amount to be determined at trial but believed to exceed $150 million." Am. Compl., ECF Dkt. No. 21, ¶ 94. As discussed below, Plaintiff makes this claim even though § 2255 does not create a cause of action for aiding and abetting and Plaintiff makes no specific allegations as to how the Daskal Family Defendants aided and abetted Daskal, if at all. Simply put, Plaintiff fails to a state claim upon which relief could be granted.

## **LEGAL STANDARDS**

To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (a complaint's factual allegations must "raise a right to relief above the speculative level"). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (*citing Twombly*, 550 U.S. at 555); *see also Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss").

RE\09501\0001\5646498v5

# ARGUMENT

## POINT I

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE DASKAL FAMILY DEFENDANTS PURSUANT TO 18 U.S.C. § 2255

As discussed below, the United States Supreme Court in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) ("*Central Bank*") has made clear that a private plaintiff may not assert a cause of action alleging secondary liability, such as for aiding and abetting, where a statute does not provide for liability for aiding and abetting or any other form of secondary liability. This holding applies to § 2255. The overwhelming majority of courts that have addressed the issue of secondary liability under § 2255 have followed *Central Bank*, holding that § 2255 does not allow for secondary liability because the plain language of § 2255 is silent with regard to same. Moreover, while the Second Circuit has not addressed the issue of secondary liability under § 2255 specifically, courts within the Second Circuit, including this Court, have relied on *Central Bank* in finding that federal statutes creating civil liability do not give rise to a presumption that liability for violations of the statutes extend to aiders and abettors where the statute is silent regarding secondary liability. Notwithstanding the same, as set forth below, the Amended Complaint fails to identify a predicate act required to make a § 2255 claim such that the Amended Complaint should be dismissed.

Even assuming § 2255 does create a cause of action for secondary liability, Plaintiff failed to allege any facts suggesting that any of the Daskal Family Defendants had any knowledge of Daskal's crimes or facilitated Daskal in any way, both of which are required to state a § 2255 claim.

**A.**   **Plaintiff's Claim Against the Daskal Family Defendants Fails as a Matter of Law because 18 U.S.C. § 2255 Does Not Create a Right of Action Predicated Upon Secondary Liability**

Plaintiff has alleged only one claim against the Daskal Family Defendants in her Amended Complaint: a violation of § 2255 for allegedly "know[ing] of, aiding and abetting, enabling and concealing the conduct of defendant Daskal." Am. Compl., ECF Dkt. No. 21, ¶ 94. However, as set forth below, the plain text of § 2255 does not provide for liability for aiding and abetting, nor any other form of secondary liability:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

The United States Supreme Court decision in *Central Bank* made clear that where the text of a federal statute "does not prohibit aiding and abetting . . . a private plaintiff may not maintain an aiding and abetting suit." 511 U.S. 164, 191 (1994). In *Central Bank*, the Supreme Court stated that the plain text of § 10(b) of the Securities Exchange Act "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act, and does not reach those who aid and abet a violation" and that Congress's decision not to explicitly impose secondary liability upon violators of the statute "indicates a deliberate congressional choice with which the courts should not interfere." *Id.* at 164, 184. Therefore, the Supreme Court found that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors" (*id.* at 182) and "it is not plausible to interpret

[ ] statutory silence as tantamount to an implicit congressional intent to impose [statutory] aiding and abetting liability" (*id*. at 185). *See also Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 53, fn. 10 (2d Cir. 2014) (aiding and abetting liability is "an 'ancient criminal law doctrine' that is generally presumed not to apply in civil suits") (*citing Central Bank*, 511 U.S. at 181-82). *Central Bank* therefore instructs that a private plaintiff may not assert a cause of action alleging secondary liability, such as for aiding and abetting, where a statute, such as § 2255, is silent as to liability for aiding and abetting or any other form of secondary liability whatsoever.

In fact, most courts that have addressed the existence of secondary liability under § 2255 have held that *Central Bank* forecloses such claims. At least one district court within the Second Circuit - the District of Connecticut - expressly relied on *Central Bank*, holding that § 2255 does not allow for secondary liability because the plain language of the statute "is silent with regard to the availability of secondary liability." *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281–282 (D. Conn. 2013). In relying on *Central Bank*, the *Perlitz* Court specifically held that "[i]t is the approach the Court took in *Central Bank* that matters, not the statute it was considering." *Id*. at 281. The decision in *Perlitz* is consistent with rulings from several other federal courts, all of which apply *Central Bank*'s principles of statutory interpretation to conclude that no secondary liability exists under § 2255. *See Doe v. Hansen*, No. 4:16-CV-546 JAR, 2018 WL 2223679, at *5 (E.D. Mo. May 15, 2018) (the court, "agree[ing] with the conclusion reached by the *Perlitz* court, following the logic of *Central Bank*," found that the civil remedy provision of § 2255 "does not permit claims for secondary or vicarious liability"), *aff'd sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019); *Doe 9 v. Varsity Brands, LLC*, No. CV 6:22-3509-HMH, 2023 WL 4191782, at *7 (D.S.C. June 26, 2023) ("Section 2255 makes no mention of secondary

RE\09501\0001\5646498v5

liability, which by itself is an indication that Congress did not intend to permit such a theory") (internal citations and quotations omitted).

Although the Second Circuit has not specifically addressed the issue of secondary liability under § 2255, the above-cited decisions comport with precedent from the Eastern District of New York. For example, in *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474 (E.D.N.Y. 2012), this Court dismissed a plaintiff's claim predicated on an aiding and abetting theory under an Anti-Terrorism Act because the *Central Bank* doctrine "is undeniably broad, and nothing in its holding turns on particular features of securities laws." 893 F. Supp. at 499 (internal citation and quotation omitted). *See also Heffernan v. HSBC Bank USA*, No. 1:99CV07981, 2001 WL 803719, at *7 (E.D.N.Y. Mar. 29, 2001) ("the enactment of a statute creating private civil liability for a primary violation of a statute does not give rise to a presumption that such liability extends to aiders and abettors"); *Butts v. New York City Dep't of Educ.*, No. 16-cv-5504 (NGG) (RML), 2018 WL 4725263, at *5 (E.D.N.Y. Sept. 28, 2018) (relying on *Central Bank* and dismissing aiding and abetting claim under city code because "it is not clear that §§ 1981 and 1983 provide a remedy for aiding and abetting"); *City of New York v. Milhelm*, 2009 WL 701005, at *3 (E.D.N.Y. Mar. 11, 2009) (the fact that the Contraband Cigarette Trafficking Act "do[es] not contain the words 'aid' and 'abet' or any other express language authorizing civil suits against secondary violators of the CCTA… counsels against construing the CCTA to include civil aiding and abetting liability").

The Second Circuit and Southern District of New York have also affirmed this broad reading of the *Central Bank* doctrine. *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118, 123 (2d Cir. 2013) (rejecting the plaintiffs' aiding and abetting theory of liability under 18 U.S.C. § 2333(a)) (*citing Central Bank*, 511 U.S. at 185); *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) ("we are not persuaded that the district court erred in concluding that plaintiffs had

- 9 -

not stated a claim on which relief could be granted against UBS on an aiding-and-abetting theory, because it does not appear to us that Congress intended § 2333(a) to permit recovery on such a theory"), *superseded by statute as recognized by Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023); *see also Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 475 (S.D.N.Y. 1996) ("under *Central Bank's* approach to statutory construction, the court must conclude that there is no civil aiding and abetting liability under RICO"); *Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010), *aff'd*, 770 F.3d 170 (2d Cir. 2014) (citing *Central Bank*, the court rejected plaintiff's argument that the court should presume the existence of aiding and abetting liability in the Torture Victims Prevention Act despite the statute's silence regarding such liability because "the Supreme Court has adopted a default rule that is exactly opposite to the plaintiffs' suggestion"); *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 410-411 (S.D.N.Y. 2023) (finding that the TVPA "does not provide civil liability for aiding and abetting under [18 U.S.C.] § 2" because "aiding and abetting liability should not be read into [18 U.S.C. §] 1595's silence"); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018) ("The Supreme Court's holding in *Central Bank*, coupled with the absence of authorities supporting aider and abettor liability under [18 U.S.C. §] 1595, militates against reading a form of liability into a statute that does not provide for it").[1]

Even assuming § 2255 does create a cause of action for secondary liability -- which the *Central Bank* doctrine establishes that it clearly does not -- Plaintiff's failure to identify a predicate act in the Amended Complaint warrants dismissal of her § 2255 claim.  § 2255 allows "[a]ny

---

[1] District courts within the Second Circuit have also affirmed the propriety of adhering to the plain text of § 2255, holding that because the statute does not explicitly provide for the application of the discovery rule to the statute of limitations, that doctrine does not apply.  *Singleton v. Clash*, 951 F. Supp. 578, 586–587 (S.D.N.Y. 2013), *aff'd sub nom. S.M. v. Clash*, 558 F. App'x 44 (2d Cir. 2014); *see also Shovah v. Mercure*, 44 F. Supp. 3d 504, 511 (D. Vt. 2014); *St. Louis v. Perlitz*, 176 F. Supp. 3d 97 (D. Conn. 2016).

person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title" to recover the damages set forth therein. Here, the Amended Complaint fails to identify any of the statutes listed in § 2255 that is intended to serve as the predicate act for Plaintiff's § 2255 claim and such claim should therefore be dismissed. *See Gray v. Darby*, No. CIV.A. 08-CV-02527, 2009 WL 805435, at *6 (E.D. Pa. Mar. 25, 2009) (dismissing complaint that failed to allege a predicate felony under § 2255); *Harding v. Watch Tower Bible & Tract Soc'y of New York, Inc.*, No. 22-6029, 2022 WL 3025816, at *2, fn. 3 (10th Cir. Aug. 1, 2022) (court, in dismissing on other grounds, nevertheless doubted the sufficiency of plaintiff's complaint that did "not clearly state a § 2255 claim … or allege that he was the victim of any of the predicate federal crimes necessary to state such a claim"); *Prewett v. Weems*, 749 F.3d 454, 457 (6th Cir. 2014) ("Under [§ 2255], the victim must establish a liability predicate for the award and a damages predicate for the award. As for liability, the victim must show that his abuser violated a qualifying criminal statute").

Consistent with the United States Supreme Court's decision in *Central Bank* and an overwhelming majority of federal courts relying thereon, including this Court and others within the Second Circuit, the Daskal Family Defendants respectfully submit that there can be no secondary liability, including for aiding and abetting, under § 2255. Accordingly, Plaintiff's claim against the Daskal Family Defendants should be dismissed.

**B.      Even if 18 U.S.C. § 2255 Does Allow for Secondary Liability, Plaintiff has Failed to Allege the Requisite Scienter Against the Daskal Family Defendants**

Even if § 2255 did allow Plaintiff to assert a cause of action for secondary liability, which it does not, the Amended Complaint must still be dismissed because Plaintiff has failed to allege any facts suggesting that any of the Daskal Family Defendants possessed knowledge of Daskal's crimes or provided substantial assistance to Daskal in furtherance of his crimes, both of which are

required to state such a claim. The Second Circuit has established three requirements for aiding and abetting liability:

> (1) the existence of a…violation by the primary (as opposed to the aiding and abetting) party;
>
> (2) "knowledge" of this violation on the part of the aider and abettor; and
>
> (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985). "The focus of aiding and abetting, in the context of civil liability, is 'whether a defendant knowingly gave 'substantial assistance'' to the primary violator of the underlying statute." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018) (*quoting Halberstam v. Welch,* 705 F.2d 472, 478 [D.C. Cir. 1983]).

Indeed, where the courts were willing to consider the possibility of secondary liability in § 2255 (which is contrary to the Supreme Court holding in *Central Bank*) in *Doe v. Liberatore*, 478 F. Supp. 2d 742 (M.D. Pa. 2007) and *Doe v. Schneider*, No. CIV.A. 08-3805, 2013 WL 5429229 (E.D. Pa. Sept. 30, 2013), they held that a defendant must have "conscious[] knowledge of the underlying substantive offenses, as well as the specific criminal intent to commit them" to prove aiding and abetting liability. *Liberatore*, 478 F. Supp. 2d at 756 (granting summary judgment in favor of defendants where only evidence of aiding and abetting was that defendants may have had reason to suspect sexual abuse and stating that "[a] general suspicion that an unlawful act may occur is not enough") (*quoting United States v. Labat*, 905 F.2d 18, 23 (2d Cir. 1990)); *see Schneider*, 2013 WL 5429229, at *10 (plaintiff must demonstrate defendant "knew the offense was being committed" and "acted with the intent to facilitate it").

RE\09501\0001\5646498v5

Here, the Amended Complaint fails to allege that the Daskal Family Defendants had any knowledge whatsoever of Daskal's crimes, let alone provided any assistance to him. Plaintiff simply relies upon general statements made by Judge Garaufis during Daskal's sentencing and letters sent by the Daskal Family Defendants prior to Daskal's sentencing. In broadly claiming that Judge Garaufis' statements prove that "the other named defendants…provided collective communal assistance to Daskal…" (Am. Compl., ECF Dkt. No. 21, ¶ 4) and that "the other defendants identified in this Amended Complaint and others bear responsibility for creating and maintaining a regime of terror and intimidation" (*id.* at ¶ 7), the Amended Complaint does not reference any actual statement by Judge Garaufis whereby he alleged specific instances of the Daskal Family Defendants aiding and abetting Daskal. *See also* Am. Compl., ECF Dkt. No. 21, ¶ 63 (Judge Garaufis' claim that "not a single person among the legions of supporters of Daskal - a convicted felon - uttered a single word of empathy, sympathy or concern for Ms. Mandel" does not amount to a specific allegation against the Daskal Family Defendants that they aided and abetted Daskal).

Indeed, although Plaintiff would have this Court rely primarily on alleged findings in connection with Daskal's sentencing, Judge Garaufis' 54-page Memorandum and Order, filed on June 9, 2023, carefully and chronologically detailed Daskal's conduct, yet, when referencing Plaintiff's temporary stay at Daskal's summer home, makes no allegations (let alone a conclusion) that the Daskal Family Defendants aided or abetted Daskal in any capacity. *See* Am. Compl., ECF Dkt. No. 21, ¶ 43. Nor does Judge Garaufis' Memorandum and Order even suggest that the Daskal Family Defendants were suspicious of Daskal's criminal activity. Likewise, the Amended Complaint's reference to letters submitted by three of the Daskal Family Defendants as part of Daskal's sentencing memorandum (*see* Am. Compl., ECF Dkt. No. 21, ¶ 62) cannot support any

- 13 -

inference of aiding and abetting, as these letters were submitted well after Daskal's crimes were committed.

Plaintiff also repeatedly asserts that Daskal transferred millions of dollars of his assets to the Daskal Family Defendants to avoid compensating Plaintiff. *See* Am. Compl., ECF Dkt. No. 21, ¶¶ 5, 8, 11-13, 18, 89. Even assuming, for purposes of this motion to dismiss, that Plaintiff's assertion is true, it does not, and cannot suggest that the Daskal Family Defendants "knowingly gave 'substantial assistance'" in furtherance of Daskal's criminal activity. *See Noble*, 335 F. Supp. at 525. Indeed, any alleged transfer of assets by Daskal does not establish the requisite intent to prove that the Daskal Family Defendants aided and abetted Daskal in the commission of his crimes.

Simply, the Amended Complaint's lack of concrete factual allegations specifically against the Daskal Family Defendants is fatal to Plaintiff's claim. Tellingly, without identifying the Daskal Family Defendants' role, if any, the Amended Complaint claims that:

> Daskal, upon information and belief, recruited individuals to coerce, threaten, bribe and intimidate Ms. Mandel into ceasing to cooperate with federal agents and prosecutors. In other words, Daskal and others, including those identified as defendants earlier in this Amended Complaint, orchestrated a multi-pronged campaign to 'silence' Ms. Mandel…

> Daskal and other defendants identified earlier in this Amended Complaint sought to eviscerate the Government's prosecution of him by coercing, intimidating, and attempting to bribe Ms. Mandel into silence and withdrawal of assistance from the prosecution…

Am. Compl., ECF Dkt. No. 21, ¶¶ 50-51. A complaint cannot "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). Where a court is "unable to discern from the pleadings [a defendant's] specific role, if any" in a claimed offense, that claim should properly be dismissed. *Red Rock Sourcing LLC v. JGX LLC*, No. 21 CIV. 1054 (JPC), 2024 WL 1243325, at *25 (S.D.N.Y. Mar. 22, 2024). Here, the Amended Complaint fails to distinguish between the

- 14 -

Daskal Family Defendants' alleged conduct and the conduct of the other defendants.  Rather, the Daskal Family Defendants' role in allegedly aiding and abetting Daskal is impossible to discern from the Amended Complaint.

Similarly, the Amended Complaint vaguely states that "[u]pon information and belief, the members of the 'community' identified by Judge Garaufis as bearing 'responsibility' include, among others to be located through discovery proceedings, defendants B. Daskal, P. Dembitzer, L. Dembitzer…[and] R. Teitelbaum."  Am. Compl., ECF Dkt. No. 21, ¶ 91.  However, "[a] litigation cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."  *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018).  Instead, "statements made upon information and belief must be supported by some factual allegations making them plausible."  *May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*, No. 21-cv-02891 (RPK) (PK), 2022 WL 4539577, at *4 (E.D.N.Y. Sept. 28, 2022).  Here, the Amended Complaint merely makes a series of conclusory allegations, lumping all of the defendants together with no specific factual allegations that the Daskal Family Defendants had knowledge of Daskal's crimes or provided substantial assistance to him.

As illustrated above, even if the Court could find a basis for liability under § 2255 (which it is submitted it cannot), the Amended Complaint falls woefully short of alleging that the Daskal Family Defendants "provided any assistance … in carrying out the alleged abuse [or] that they had the same state of mind as required for the principal offense."  *Schneider*, 2013 WL 5429229, at *10 (internal quotations omitted).  The Amended Complaint does not reference a single specific act by any of the Daskal Family Defendants suggesting they had even a suspicion of Daskal's conduct, let alone that they aided and abetted him in any capacity.  Accordingly, Plaintiff has failed to allege any facts suggesting that any of the Daskal Family Defendants possessed the knowledge

RE\09501\0001\5646498v5

or provided the substantial assistance required to state a claim for aiding and abetting liability, and Plaintiff's claim against the Daskal Family Defendants should be dismissed.

## <u>CONCLUSION</u>

Accordingly, the Amended Complaint should be dismissed with prejudice pursuant to Federal Rule 12(b)(6).

Respectfully submitted,

Dated:   New York, New York
           August 9, 2024

**ROSENBERG & ESTIS, P.C.**
*Attorneys for Defendants Bella Daskal, Pearl Dembitzer, Leiby Dembitzer and Rose Teitelbaum*

By: _____
        Deborah Riegel
733 Third Avenue
New York, New York 10017
(212) 867-6000

RE\09501\0001\5646498v5