UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

RIVKA MANDEL,

                         Plaintiff,

                - against –

JACOB DASKAL,

                        Defendant.

                           1:23-cv-07352 (RER) (VMS)

---------------------------------------------------------------------x

## DECLARATION OF PLAINTIFF RIVKA MANDEL (A) IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL AND (B) IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR (i) PROTECTIVE ORDERS UNDER FRCP 26(c) AND (ii) BIFURCATION UNDER FRCP 42(b)

RIVKA MANDEL declares under penalty of perjury as follows:

1. I am the plaintiff in this action. I respectfully submit this declaration in opposition to the motion of defendant Jacob Daskal ("Daskal") to compel further responses to interrogatories to which I have already responded and further responses to Daskal's document demands to which I have previously responded.

2. Moreover, this declaration is submitted in support of a cross-motion which is vitally important to me – for a protective order which will restrict any information I provide to the purpose of this litigation and prevent Daskal – an enormously powerful man in the community of which he and I are members – from disseminating any information about me. As I will describe later in this declaration, Daskal – the founder of the Shomrim organization in Brooklyn, New York, a semi-official "police" force which Daskal not only founded but has controlled – has for years degraded and humiliated me. Unless restrained, he will, both directly and through his vast network of supporters, continue to inflict damage on me.

3.   This declaration is also respectfully submitted in support of the branch of the cross-motion which requests the bifurcation of this action.  As I understand it, United States District Judge Ramón Reyes on March 18, 2026 granted summary judgment against Daskal as to liability under Count 1 of my Amended Complaint.  As difficult as it is for me to re-live the nightmares Daskal inflicted on me when I was 15 and 16 years old (I am now 24 years old), I am prepared to testify and provide evidence at an early jury trial in an effort to recover financial damages, both compensatory and punitive, for the harms Daskal inflicted on me.[1]

**The Protective Order**

*(i)    Overview*

4.   The Daskal interrogatories are highly personal and exclusively motivated by a strategy to invade my privacy and humiliate me.  The interrogatories, in addition, are abusive on their face and totally irrelevant to any issue raised by my Amended Complaint (*see* annexed Exhibit 1).

5.   For example, Daskal propounded an interrogatory demanding that I identify every "nickname, alias, or identity" that I "ever used, gone by, been known as, or been associated with." *See* annexed Exhibit 2, Response to Interrogatory No. 19 at 10-11.

6.   I am obviously a lay person, not a lawyer, but it is inconceivable to me that such a question has any good faith basis.  I have always been known as Rivka Mandel, which has been my name since birth and still is.

7.   Another of many instances of irrelevant questioning is Interrogatory No. 16 (*id.*), which demands that I identify "all educational or academic institutions" at which I have "ever been enrolled or registered...." *Id.* at 10.  It is plain to me that the question has absolutely nothing

---

[1] Except as otherwise specifically noted, I have personal knowledge of the facts set forth in this declaration.

to do with any issue raised by the Amended Complaint or Daskal's defense of the allegations of the Amended Complaint.

8. Similarly invasive of my privacy, as well as utterly irrelevant, is Daskal's demand that I identify "all of my Social Media names or 'handles' used from the time" when I first met Daskal in 2017 to "the present." *See* Exhibit 2.

9. Likewise, Daskal has demanded my "complete medical records" and my complete "bank statements." *See* Exhibit 2. My "medical records" are extremely personal and I cannot conceive of any purpose which would be served by granting Daskal access to my "medical records."

10. And I am certain that if Daskal, his attorneys and his many powerful supporters receive my medical records they will instantly and widely be disseminated to the community of which Daskal was and remains a key member.

11. Similarly, my "bank statements" which Daskal has demanded contain highly private information which can be of no use to Daskal and his attorneys and supporters. It is important, I believe, to bear in mind that I am a 24-year-old woman who was victimized as a girl by Daskal, whom United States District Judge Nicholas Garaufis at the October 2023 sentencing accurately described as "clearly a sick man" (*see* Exhibit 1, Amended Complaint ¶ 90).[2]

*(ii)    Daskal's History of Intimidation and Revenge*

12. Daskal repeatedly raped, sodomized and sexually abused me when I was 15 and 16 years old. He engaged in those criminal acts when he was 58 years old and he did so at his homes in Brooklyn and upstate New York and elsewhere. Ultimately, in October 2023, he pleaded

---

[2] The accompanying letter of my attorney, Paul Batista, addresses other issues raised by the adequacy of my responses to Daskal's interrogatories and document demand.

guilty to the criminal offenses against me and was sentenced by Judge Garaufis to 17.5 years in prison.

13. During the period when Daskal was under investigation for his crimes against me, Daskal made repeated attempts to coerce and intimidate me into *not* cooperating with law enforcement authorities. As I stressed to Judge Garaufis at Daskal's sentencing in October 2023, "Daskal harassed me and was stalking me whenever I ventured outside." *See* Exhibit 1, Amended Complaint ¶ 29.

14. I also emphasized at the sentencing:

> Although I am trying very hard to move forward in my life...[it] is something that I live with every day. What affected me the most was the fact that I was entrusted to Jacob Daskal's care as a minor and trusted him to protect me and he violated that trust in the worst ways possible. This is something that has a major effect on my every relationship to this very day. I live with the trauma of what he has done to me physically and emotionally every day. My life will never be the same again. This horrendous experience has shaped me in so many ways....And I know that what happened wasn't my fault. However, to live with the pain of knowing that you were stripped of your youth in such a vile and degrading way is something that stays with you forever. [*Id.*, Amended Complaint ¶ 82.]

15. I also stressed to Judge Garaufis that Daskal sought to control and dominate my life. Daskal "wanted me to believe that he was going to control my entire life and that I was never going to break free from his grip....The abuse was a lot more than just sexual abuse. He abused me mentally, emotionally all the time fully aware of the fact that he was taking advantage of a vulnerable child." *Id.*

*(iii)  The Extent of Daskal's Control*

16. Daskal always made me aware of his power, influence and willingness to abuse that power. He continuously boasted about his influence in the community, his "close" relationship with the New York City Police Department, and the fact that he was the founder and

controlling person of the Shomrim organization, a quasi-military force which was a major presence in the community.

17.     He warned me repeatedly that if I cooperated with law enforcement he would ruin my life and that, in any event, no one would ever believe me since he was such a powerful man in the community.

18.     Among other things, Daskal made arrangements through intermediaries for me to visit Arthur Aidala ("Aidala"), an attorney described to me as highly influential with the United States Attorney's Office for the Eastern District of New York, which was conducting the investigation and prosecution of Daskal.

19.     I met with Aidala in 2021 and 2022.  On one of the two occasions I met with Aidala, I was given a check for $30,000 made payable to Aidala and drawn on the account of a religious congregation the name of which I cannot recall.  I gave the $30,000 check to Aidala, who told me that the charges against Daskal could be "lessened in exchange for money."  (I did not make or retain a copy of the check.)

20.     Although I was only 20 years old, I immediately told Aidala that that was illegal.

21.     Aidala responded that there was a legal way to use money to "lessen Daskal's exposure to charges."  I was later informed that I was correct and that the arrangement Aidala proposed was, in fact, illegal.

22.     Moreover, Aidala asked me to sign a retainer agreement he had prepared.  I initially did so, and Aidala kept the $30,000 check payable to him.

23.     I soon learned that Daskal had orchestrated the entire incident involving Aidala.  When I learned that the $30,000 originated from Daskal through one of his cousins, I

promptly notified Aidala that I was withdrawing the representation and made it clear I did not want to be represented by Aidala.

24.    I emphasize that at the outset I was unaware that Daskal was orchestrating this arrangement.  As soon as I became aware of Daskal's manipulation, I ceased all contact with Aidala and reported the matter to the agent of the Federal Bureau of Investigation who was preparing the criminal case for trial.

25.    Daskal has also sought to influence negatively my experience with my employers.  For example, I was employed at one point by an organization named Yedei Chesed.  In order to create negative information about me for potential use in cross-examining me at his trial, Daskal through his intermediaries approached Mr. David Sternhill, the person who ran Yedei Chesed, to fabricate negative employment information about me.  Mr. Sternhill declined to do that.

26.    Even at sentencing, Daskal, in a frantic attempt to secure leniency, conceded his power and influence, informing Judge Garaufis:

> [The] first thing I want to say to the victim [*i.e.*, Ms. Mandel], I cannot express how sorry I am for what I did.  I do not know how I can ever repay her for the terrible damage that I caused her.  For a young girl, the harm that she has to deal with the rest of her life, words cannot capture…the overwhelming regret and shame for what I did….*[W]hatever I feel is nothing compared to the awful pain I caused Ms. Mandel.  Your Honor, I'm here to accept responsibility for my crime.  I took advantage of my position in Shomrim to do something unspeakable.*  [*See* Exhibit 1, Amended Complaint ¶ 84 (emphasis supplied).][3]

---

[3] I find it disturbing that the same firm – Meister Seelig & Fein LLP ("Meister Seelig") – which represented Daskal in the criminal action now represents him in this action.  More specifically, Meister Seelig and Daskal made repeated motions in the criminal action, and the firm and Daskal waited until the day the trial was scheduled to begin to change Daskal's plea to guilty.  In addition, I have every reason to believe that Meister Seelig has every document it has demanded from me.  As my document response makes clear, I gave every document I once had relating to Daskal and the crimes against me to the United States Attorney's Office and did not retain copies of anything I provided to law enforcement.  Thus, Meister Seelig itself has everything it demanded from me.  Meister Seelig has failed to produce the documents it is demanding from me.

*(iv)*      *Scope of Protective Order*

27.      Given Daskal's history and the fact that Judge Garaufis on the record accurately described Daskal as "clearly a sick man" (*see* Exhibit 1, Amended Complaint ¶ 90), I am certain that he and his supporters would use any and all information they obtain about me to malign, humiliate and destroy me.

28.      In view of these factors, I request that the Court impose a protective order which, at a minimum, (i) explicitly restricts Daskal and anyone acting on his behalf from utilizing any and all information about me for any purpose other than this litigation, (ii) prevents Daskal and anyone acting on his behalf from disclosing interrogatory responses or information derived from my deposition testimony to anyone, and (iii) restrains Daskal and anyone acting on his behalf from communicating information with respect to me to anyone except as may be essential to Daskal's defense of this action.

## Trial for Compensatory and Punitive Damages

29.      I understand that Judge Reyes has recently granted summary judgment in my favor and against Daskal as to Daskal's liability under Count 1 of the Amended Complaint.

30.      This case has placed an enormous strain on me, yet I very much desire my day in Court.

31.      As reluctant as I am to relive the ordeal of Daskal's abuse of me, I urge the Court to bifurcate this action in order to enable me to have a trial at which the jury will be instructed that Daskal has been found liable under Count 1 and the jury is to decide the damages, both compensatory and punitive, I have sustained as a result of Daskal's liability under Count 1.

Dated: March 26, 2026

RIVKA MANDEL

# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

RIVKA MANDEL,

                              Plaintiff,

      - against -

JACOB DASKAL; BELLA DASKAL; PEARL
DEMBITZER; LEIBY DEMBITZER; CHAYA
BORNSTEIN; SHULEM BORNSTEIN; CHAIM
DASKAL; ESTHER BRODY; ROSE
TEITELBAUM; BENZION DASKAL; SOLOMON
DASKAL; BARRY DASKAL; CHAVI FISCHBEIN;
ISAAC FISCHBEIN; BORO PARK SHOMRIM;
BAIS YAAKOV HIGH SCHOOL OF CHICAGO;
CRAINDELL Z. MANNES; RABBI BEN ZION
HALBERSTAM; CHAIM S. HALBERSTAM;
CONGREGATION SHAAREI ZION OF BOBOV;
RABBINICAL COLLEGE BOBOVER YESHIVA
BNEI ZION; LIPA "NUSSY" BRAUNER;
MUTTY BRAUNER; YAD EPHRAIM a/k/a
EZRAS CHOLIM YAD EPHRAIM; PESACH
GREENBERG; YACHAD D'BOBOV; and CHAIM
FLEISCHER,

                           Defendants.

------------------------------------------------------------------x

1:23-cv-07352 (RER) (VMS)

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT

      Plaintiff Rivka Mandel, by and through her attorney, Paul Batista, P.C., for her

Amended Complaint against defendant Jacob Daskal and the other defendants identified in this

Amended Complaint respectfully alleges as follows:

### Preliminary Statement

1.      This action involves heinous sexual, emotional and physical abuse of a minor woman by Jacob Daskal ("Daskal"), a convicted felon who, at the age of 65, was sentenced on October 11, 2023, in this Court (Hon. Nicholas Garaufis, *U.S.D.J.*) to 17.5 years in federal prison as a result of his guilty plea and conviction on a federal indictment resulting from Daskal's reprehensible crimes against plaintiff Rivka Mandel.

2.      As this Complaint will articulate in detail, Ms. Mandel, beginning when she was 15 years old, was consistently, viciously and remorselessly raped, sodomized, sexually harassed, and criminally intimidated and threatened by Daskal, who for decades has proclaimed himself to be a highly prominent member of a religious and social community in a position of alleged trust, honor and reverence in that community.  His criminally despicable acts against a child took place in a stunning variety of places – in his own homes with his wife, children and others present yet voicing no objection, attempting no intervention, and communicating no concerns to law enforcement or other Governmental authority, in various locations in New York, as well as in other states to which Daskal transported Ms. Mandel with the assistance, cooperation and aiding and abetting of other defendants.

3.      The wanton devastation of Ms. Mandel, who is now 22, is a case of repeated rape, sodomy, physical, mental and emotional abuse of a child.

4.      Moreover, Daskal's crimes were aided and abetted, facilitated, and concealed by the other defendants identified in this Amended Complaint, as Judge Garaufis specifically and eloquently described at the October 11, 2023, sentencing of Daskal.  As Judge Garaufis explained, the other named defendants and others whose identities will be revealed through the use of federal disclosure procedures provided collective communal assistance to

Daskal by defendants' criminal acts (i) to deter Ms. Mandel from seeking vindication for the crimes she suffered and to silence her through attempts of bribery and threats and acts of violence against her, and (ii) corruptly to deter her from providing information as to Daskal's pattern, practice, and history of sexual assault and abuse of many other young women to whom defendants and other community members provided access to him to groom those children in order to achieve Daskal's sexual abuse and exploitation of them.

5.      Daskal's crimes are not a matter of conjecture or speculation.  Instead, his crimes are conclusively determined.  In connection with a highly publicized and serious federal indictment of him, he pleaded guilty on July 14, 2023, to grave offenses against Ms. Mandel before Judge Garaufis.  During the July 14, 2023 guilty plea, Daskal provided some, but by no means complete, admissions of his repeated criminal activity against Ms. Mandel.  Daskal corruptly provided no information as to the identities and criminal conduct of others who facilitated his crimes and to whom he transferred millions of dollars of his assets in an effort to avoid compensation to Ms. Mandel.

6.      In addition, at his October 11, 2023, sentencing, defendant Daskal under oath made definitive admissions of the criminal acts he committed against Ms. Mandel and unequivocally conceded that he had severely harmed Ms. Mandel economically and emotionally. Collectively, Daskal's sworn statements, although not complete or fully candid, conclusively establish his liability to her for the civil and criminal violations alleged in this Amended Complaint and for the enormous financial damage he has inflicted on her for which this civil action demands full recovery from him, the other defendants and others, as well as the punitive damages to which express federal legislation entitles her.

3

7. Moreover, as to the other defendants and others whose identities will be revealed through federal disclosure laws, Judge Garaufis at the October 11, 2023, sentencing made clear that the other defendants identified in this Amended Complaint and others bear responsibility for creating and maintaining a regime of terror and intimidation which is wholly consistent with the operation of gangland enterprises that generate fear, a code of *omerta*, and a system of revenge and intimidation identical in many respects to the operation of drug cartels, organized crime syndicates, and terrorist organizations.

8. Extraordinary financial compensation to Ms. Mandel is essential. The interests of justice and human decency require that Daskal, an immensely wealthy man who has admittedly, although incompletely and deceptively, conceded the transfer of millions of assets he owns or controls to friends, family members, putative charities, religious institutions, business associates, shell companies, "straw" owners, the other defendants identified in this Amended Complaint, and others whose identities will be revealed through discovery and non-party disclosure provisions of federal law, be compelled to compensate Ms. Mandel by the entry of substantial financial judgments against him, the other named defendants, and others, and the transfer from Daskal, the other named defendants, and others whose identities will be revealed through federal disclosure procedures of Daskal's secreted assets to Ms. Mandel.

## The Parties

9. Ms. Mandel is a citizen and resident of the State of New York.

10. Defendant Daskal is a citizen of the United States and resident of the City of New York at 1220 46th Street, Brooklyn, New York 11219. Daskal is now in the custody of the United States Bureau of Prisons bearing Register Number 32907-508.

4

11.     Defendant Bella Daskal ("B. Daskal") is a United States citizen and resident of the City of New York at 1220 46th Street, Brooklyn, New York 11219. Defendant B. Daskal is the wife of defendant Daskal and, upon information and belief, had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets transferred to her for the purpose of avoiding compensation to Ms. Mandel.

12.     Defendant Pearl Dembitzer ("P. Dembitzer") is a citizen of the United States and resident of the City of New York at 1426 46th Street, Brooklyn, New York 11219. She is a daughter of defendant Daskal and, upon information and belief, had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets of defendant Daskal transferred to her for the purpose of avoiding compensation to Ms. Mandel.

13.     Defendant Leiby Dembitzer ("L. Dembitzer") is a United States citizen and a resident of the City of New York at 1426 46th Street, Brooklyn, New York 11219. L. Dembitzer is the son-in-law of defendant Daskal and married to defendant P. Dembitzer. Upon information and belief, L. Dembitzer had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets of defendant Daskal transferred to him for the purpose of avoiding compensation to Ms. Mandel.

14.     Defendant Chaya Bornstein ("C. Bornstein") is a United States citizen residing at 314 Foster Avenue, Brooklyn, New York 11230. C. Bornstein is the daughter of defendant Daskal and, upon information and belief, had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient

of substantial assets of defendant Daskal transferred to her for the purpose of avoiding compensation to Ms. Mandel.

15.     Defendant Shulem Bornstein ("S. Bornstein") is a United States citizen and a resident of the City of New York at 314 Foster Avenue, Brooklyn, New York 11230. Defendant S. Bornstein is the son-in-law of defendant Daskal and the husband of C. Bornstein. Defendant S. Bornstein, upon information and belief, had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets of defendant Daskal transferred to him for the purpose of avoiding compensation to Ms. Mandel.

16.     Defendant Chaim Daskal ("C. Daskal") is a United States citizen and resident of the City of New York at 1680 47th Street, Brooklyn, New York 11204. Defendant C. Daskal is the son of defendant Daskal and, upon information and belief, had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets transferred to him for the purpose of avoiding compensation to Ms. Mandel.

17.     Defendant Esther Brody ("E. Brody") is a United States citizen residing at 4701 12th Avenue, Apartment A-4, Brooklyn, New York 11219. Defendant E. Brody is the daughter of defendant Daskal and, upon information and belief, had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets of defendant Daskal transferred to her for the purpose of avoiding compensation to Ms. Mandel.

18.     Defendant Rose Teitelbaum ("R. Teitelbaum") is a United States citizen and a resident of the City of New York at 1225 48th Street, Brooklyn, New York 11204. Defendant

6

R. Teitelbaum is a daughter of defendant Daskal and, as described later upon information and belief, had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets of defendant Daskal transferred to her for the purpose of avoiding compensation to Ms. Mandel.

19.    Defendant Benzion Daskal is a United States citizen and a resident of the City of New York at 5427 19th Avenue, Brooklyn, New York 11204. Defendant Benzion Daskal is the son of defendant Daskal and, upon information and belief, had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets transferred to him for the purpose of avoiding compensation to Ms. Mandel.

20.    Defendant Solomon Daskal ("S. Daskal") is a United States citizen residing at 2202 Dewitt Terrace, Linden, New Jersey 07036. He is the son of defendant Daskal. As alleged upon information and belief, S. Daskal had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets transferred to him for the purpose of avoiding compensation to Ms. Mandel.

21.    Defendant Barry Daskal is a United States citizen residing at 450 Westminster Road, Brooklyn, New York 11218. Barry Daskal is the brother of defendant Daskal. As alleged upon information and belief, Barry Daskal had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets transferred to him for the purpose of avoiding compensation to Ms. Mandel.

22.    Defendant Chavi Fischbein ("C. Fischbein") is a United States citizen residing at 16385 Biscayne Boulevard, Unit 1902, Aventura, Florida 33160. As alleged upon

7

information and belief, defendant C. Fischbein had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal inflicted on Ms. Mandel.

23.    Defendant Isaac Fischbein ("I. Fischbein") is a United States citizen residing at 16385 Biscayne Boulevard, Unit 1902, Aventura, Florida 33160. Upon information and belief, defendant I. Fischbein had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal inflicted on Ms. Mandel.

24.    Defendant Boro Park Shomrim a/k/a Boro Park Shomrim Patrol ("Boro Park Shomrim") is an organization located at 3618 14th Avenue, Brooklyn, New York 11218. Defendant Daskal was an organizer, founder, leader and controlling person of Boro Park Shomrim. Defendant Boro Park Shomrim had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets of defendant Daskal transferred to Boro Park Shomrim for the purpose of avoiding compensation to Ms. Mandel.

25.    Moreover, defendant Boro Park Shomrim remains, as set forth upon information and belief, a target, subject or entity of interest in a continuing criminal investigation by the United States Department of Justice into the trafficking in and sexual exploitation of more than a dozen women in addition to Ms. Mandel who were sexually abused by defendant Daskal.

26.    Defendant Bais Yaakov High School of Chicago ("Bais Yaakov") is a putative school located at 5800 North Kimball Avenue, Chicago, Illinois 60659. As alleged upon information and belief, defendant Bais Yaakov had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of assets of defendant Daskal transferred to Bais Yaakov for the purpose of avoiding defendant Daskal's obligation to pay compensation to Ms. Mandel.

27. Defendant Craindell Z. Mannes ("Mannes") is a United States citizen residing at 6027 North Central Park Avenue, Chicago, Illinois 60659. As alleged upon information and belief, Mannes had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct inflicted by defendant Daskal on Ms. Mandel.

28. Rabbi Ben Zion Halberstam ("Rabbi Halberstam") is a United States citizen residing at 4803 15th Avenue, Brooklyn, New York 11219. As alleged upon information and belief, defendant Rabbi Halberstam had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of assets of defendant Daskal transferred to him for the purpose of avoiding compensation to Ms. Mandel.

29. Defendant Chaim S. Halberstam ("C. Halberstam") is a United States citizen residing at 5416 14th Avenue, Brooklyn, New York 11219. He is the son of defendant Rabbi Halberstam. As alleged upon information and belief, defendant C. Halberstam had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct inflicted by defendant Daskal on Ms. Mandel.

30. Defendant Congregation Shaarei Zion of Bobov ("Shaarei Zion") is located at 4803 15th Avenue, Brooklyn, New York 11219. Defendant Rabbi Halberstam is the Head of defendant Shaarei Zion. Defendant Shaarei Zion had knowledge of, facilitated, aided and abetted, and concealed the criminal conduct of defendant Daskal and was the recipient of substantial assets of defendant Daskal for the purpose of avoiding compensation to Ms. Mandel.

31. Like defendant Boro Park Shomrim, defendant Shaarei Zion is, upon information and belief, the target of, subject of, or entity of interest in a continuing criminal investigation by the United States Department of Justice into the trafficking in and sexual

exploitation of more than a dozen women in addition to Ms. Mandel who were sexually abused by defendant Daskal.

32.     Defendant Rabbinical College Bobover Yeshiva Bnei Zion ("Bobover") is located at 1533 48th Street, Brooklyn, New York 11219.  As alleged upon information and belief, defendant Bobover had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets transferred by defendant Daskal to avoid compensation to Ms. Mandel.

33.     Defendant Lipa "Nussy" Brauner ("L. Brauner") resides at 284 Wallabout Street, Brooklyn, New York 11206.  As alleged upon information and belief, defendant L. Brauner had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of substantial assets from defendant Daskal to avoid compensation to Ms. Mandel.

34.     Indeed, as alleged upon information and belief, defendant L. Brauner was, among other things, one of the principal architects and organizers of efforts (i) to conceal defendant Daskal's criminal activities, (ii) to attempt to intimidate Ms. Mandel into silence regarding Daskal's criminal activity, (iii) to seek to bribe her into silence, and (iv) to obstruct justice by assaults on her property and threats to her safety in an effort to secure her silence and withdrawal of cooperation from prosecuting authorities.

35.     Defendant Mutty Brauner resides at 1009 Willowbrook Road, Staten Island, New York 10314.  As alleged upon information and belief, defendant Mutty Brauner had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal.

36.     Defendant Yad Ephraim a/k/a Ezras Cholim Yad Ephraim ("Yad Ephraim") is located at 5017 10th Avenue, Brooklyn, New York 11219, and 1274 49th Street, Brooklyn, New York 11219.  As alleged upon information and belief, defendant Yad Ephraim had knowledge of, facilitated, aided and abetted, and concealed the extensive criminal conduct of defendant Daskal and was the recipient of assets transferred to it for the purpose of avoiding compensation to Ms. Mandel.

37.     Defendant Pesach Greenberg is a United States citizen residing at 5017 10th Avenue, Brooklyn, New York 11219.  He is the founder of defendant Yad Ephraim.

38.     Defendant Yachad D'Bobov is located at 5014 16th Avenue, #296, Brooklyn, New York 11204.  As alleged upon information and belief, defendant Yachad D'Bobov had knowledge of, facilitated, aided and abetted, and concealed defendant Daskal's extensive criminal conduct.

39.     Defendant Chaim Fleischer ("Fleischer") resides at 5014 16th Avenue, #296, Brooklyn, New York 11204.  Defendant Fleischer is the Executive Director of defendant Yachad D'Bobov.  Upon information and belief, defendant Fleischer had knowledge of, facilitated and concealed the extensive criminal conduct of defendant Daskal.

### Jurisdiction and Venue

40.     This Court has federal question jurisdiction pursuant to 18 U.S.C. §2255, 18 U.S.C. §1595, 28 U.S.C. §1331 and 28 U.S.C. §1367.

41.     Venue is proper in this District pursuant to 28 U.S.C. §1391 and 18 U.S.C. §2255(c).

11

## Statement of Facts Common to All Counts

*A. Overview: Defendant Daskal's Criminal Conduct*

42.    In an article dated July 16, 2023, the Associated Press and the *Times of Israel* published an article entitled *Ex-Leader of Shomrim Patrol in Brooklyn Pleads Guilty to Sexual Abuse of Teen Girl* (https://www.timesofisrael.com/ex-leader-of-shomrim-patrol-in-brooklyn-pleads-guilty-to-sexual-abuse-of-teen-girl/):

> The former leader of a U.S. safety patrol in Brooklyn's ultra-Orthodox Jewish community pleaded guilty on Friday [*i.e.*, July 14, 2023] to charges he sexually abused a teenage girl.
>
> Jacob Daskal, who founded the Shomrim group of Borough Park some 30 years ago, was charged in March 2021 with coercing a minor to engage in illicit sexual conduct, transportation of a minor with intent to engage in illicit sexual activity and traveling with intent to engage in illicit sexual conduct, according to the U.S. Attorney's Office for the Eastern District of New York.
>
> The [guilty] plea allows Daskal to avoid a trial in a case that alleged he groomed a 15-year-old girl for sex. Authorities said Daskal subjected the girl to sexual acts over a three-month period in 2017. He was arrested in 2018 on state level charges....
>
> According to the original indictment against him, Daskal assaulted the victim in his Brooklyn home as well as at his summer home in South Fallsburg, New York in August 2017. Two months later, the victim [*i.e.*, Ms. Mandel] moved to Chicago to attend a new school and live with another family. While she was there, Daskal contacted the victim – also from a Haredi community – and coerced her into video chatting naked and sending him nude photos. In November of that year, Daskal traveled to Chicago to visit the victim, bringing her to his hotel room and raping her.
>
> *"Daskal, who was almost 60 years old when these crimes were committed, exploited the vulnerability of a young teenager by grooming her for sex and enticing her into having sexual relations with him,"* said Seth DuCharme, the acting US [A]ttorney for the [E]astern [D]istrict of New York....
>
> *"The defendant had admitted he abused his power, trust and position in the community by committing deplorable acts against a child in his care,"* said US Attorney Breon Peace.

12

Daskal faces a minimum prison sentence of 14 years.

Daskal headed the Boro Park Shomrim Society, an Orthodox Jewish crime-patrol group associated with the New York Police Department.

The organization...patrols Borough Park in marked cars, and is considered a powerful force in the neighborhood. [https://www.timesofisrael.com/ex-leader-of-shomrim-patrol-in-brooklyn-pleads-guilty-to-sexual-abuse-of-teen-girl/ (emphasis supplied).]

## B. *The Findings of United States District Judge Garaufis*

43.    The publicity surrounding Daskal's criminal conduct does not fully capture the background, the scope and the heinous nature of his conduct and the devastation of Ms. Mandel's life. In a highly detailed 54-page Memorandum and Order filed on June 9, 2023, Judge Garaufis stressed the broader factual context:

- From approximately August 2017 through November 2017, Daskal initiated and pursued a pervasive campaign of sexual abuse of Ms. Mandel.

- Among other things, as Judge Garaufis determined, "Daskal is the founder and chief of the Boro Park Shomrim Society, a private, Orthodox Jewish crime-patrol group."

- Judge Garaufis further determined that Daskal, in or about June 2017, "offered to have [Ms. Mandel] stay with his family at his summer home in South Fallsburg, New York...[and Ms. Mandel] moved in shortly thereafter."

- In "August 2017...Daskal began to sexually abuse [Ms. Mandel]" and the "abuse continued...over the summer...."

- Daskal also consistently coerced Ms. Mandel, who was 15, into silence. As Judge Garaufis emphasized, "Daskal also told [Ms. Mandel] that 'no one should see what we do' and that she should not tell anyone about the abuse because 'it's just going to ruin your life.' Daskal and [Ms. Mandel] later returned to Brooklyn where he continued to engage in sexual activity with [Ms. Mandel] and sent her text messages describing his sexual fantasies."

13

- As Judge Garaufis also noted, Daskal's illegal conduct was not confined to locations in New York only. More specifically, in October 2017, Ms. Mandel, "with the assistance of Daskal," enrolled in a high school in Chicago, Illinois.

- While Ms. Mandel was in Chicago, Daskal and she "shared sexually explicit text messages and Skype video chats while apart."

- Daskal's activities were not limited to text messages and Skype video chats. In November 2017 Daskal also "traveled" to meet Ms. Mandel in Chicago, "when they again engaged in sexual activity."

- When Ms. Mandel disclosed Daskal's conduct to a classmate at the school in Chicago, Ms. Mandel was "expelled" from the school and "sent back to Brooklyn."

- When Ms. Mandel was "sent to live in Israel, Daskal continued to communicate with [Ms. Mandel] over social media."

- In yet another aspect of his reprehensible conduct, Daskal demanded that Ms. Mandel "write a letter stating that they engaged in sex as part of 'therapy' and that she loved him, hoping that this letter would exonerate him if his abuse was discovered."

- In yet another brazen effort at exploitation and intimidation, "Daskal also repeatedly told [Ms. Mandel] about his connections to police, stature in the Jewish community, and that he would deny any allegations that she made against him."

C. *The State Indictment of Daskal*

44.    Defendant Daskal was originally indicted on May 11, 2018, in the Supreme Court of the State of New York, Kings County (the "State Indictment").

45.    The State Indictment discloses in vivid detail by reference to dates, conduct and locations certain aspects of Daskal's criminal activity against Ms. Mandel as identified by the Grand Jury. More specifically, the State Indictment [Indictment No. 3569-2018] discloses the following:

14

(i)    *First Count*

- Daskal committed the crime of "Rape in the Third Degree [PL 130.25(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 6, 2017 and August 27, 2017, in the County of Kings, being twenty-one years old or more, engaged in sexual intercourse with an individual known to the Grand Jury [Ms. Mandel], a person less than seventeen years old."

(ii)    *Second Count*

- Daskal committed the crime of "Criminal Sexual Act in the Third Degree [PL 130.40(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 6, 2017 and August 27, 2017, in the County of Kings, being twenty-one years old or more, engaged in oral sexual conduct, namely: contact between the penis of the defendant and the mouth of an individual known to the Grand Jury [Ms. Mandel], a person less than seventeen years old."

(iii)    *Third Count*

- Daskal committed the crime of "Criminal Sexual Act in the Third Degree [PL 130.40(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 6, 2017 and August 27, 2017, in the County of Kings, being twenty-one years old or more, engaged in oral sexual conduct, namely: contact between the mouth of the defendant and the vagina of an individual known to the Grand Jury [Ms. Mandel], a person less than seventeen years old."

(iv)    *Fourth Count*

- Daskal committed the crime of "Sexual Misconduct [PL 130.20(1)]...as follows: The Defendant Jacob Daskal, on or about and between August 6, 2017 and August 27, 2017, in the County of Kings, engaged in sexual intercourse with [Ms. Mandel], an individual known to the Grand Jury, without such person's consent."

15

(v)   *Fifth Count*

- Daskal committed the crime of "Sexual Misconduct [PL 130.20(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 6, 2017 and August 27, 2017, in the County of Kings, engaged in oral sexual conduct with another person [Ms. Mandel], namely: contact between the penis of the defendant and the mouth of [Ms. Mandel]...."

(vi)   *Sixth Count*

- Daskal committed the crime of "Sexual Misconduct with [Ms. Mandel], namely: contact between the penis of the defendant and the mouth of [Ms. Mandel]...."

(vii)   *Seventh Count*

- Daskal committed the crime of "Sexual Abuse in the Third Degree [PL 130.55]...as follows: The Defendant Jacob Daskal, on or about and between August 6, 2017 and August 27, 2017...subjected [Ms. Mandel] to sexual contact by touching the defendant's penis to the vagina of [Ms. Mandel]...."

(viii)   *Eighth Count*

- Daskal committed the crime of "Sexual Abuse in the Third Degree [PL 130.55]...as follows: The Defendant Jacob Daskal, on or about and between August 6, 2017 and August 27, 2017...subjected [Ms. Mandel] to sexual contact by touching the defendant's penis to the mouth of [Ms. Mandel]...."

(ix)   *Ninth Count*

- Daskal committed the crime of "Sexual Abuse in the Third Degree [PL 130.55]...as follows: The Defendant Jacob Daskal, on or about and between August 6, 2017 and August 27, 2017...subjected [Ms. Mandel] to sexual contact by touching the defendant's mouth to the vagina of [Ms. Mandel]...."

16

(x)    *Tenth Count*

- Daskal committed the crime of "Rape in the Third Degree [PL 130.25(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...engaged in sexual intercourse with [Ms. Mandel]...."

(xi)    *Eleventh Count*

- Daskal committed the crime of "Criminal Sexual Act in the Third Degree [PL 130.40(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...engaged in oral sexual conduct, namely: contact between the penis of the defendant and the mouth of [Ms. Mandel]...."

(xii)    *Twelfth Count*

- Daskal committed the crime of "Criminal Sexual Act in the Third Degree [PL 130.40(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...engaged in oral sexual conduct, namely: contact between the mouth of the defendant and the vagina of [Ms. Mandel]...."

(xiii)    *Thirteenth Count*

- Daskal committed the crime of "Sexual Misconduct [PL 130.20(1)]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...engaged in sexual intercourse with [Ms. Mandel]...."

(xiv)    *Fourteenth Count*

- Daskal committed the crime of "Sexual Misconduct [PL 130.20(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...engaged in oral sexual conduct with [Ms. Mandel], namely: contact between the penis of the defendant and the mouth of [Ms. Mandel]...."

(xv)  *Fifteenth Count*

- Daskal committed the crime of "Sexual Misconduct [PL 130.20(2)]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...engaged in oral sexual conduct with [Ms. Mandel], namely: contact between the mouth of the defendant and the vagina of [Ms. Mandel]...."

(xvi)  *Sixteenth Count*

- Daskal committed the crime of "Sexual Abuse in the Third Degree [PL 130.55]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...subjected [Ms. Mandel] to sexual contact by touching the defendant's penis to the vagina of [Ms. Mandel]...."

(xvii)  *Seventeenth Count*

- Daskal committed the crime of "Sexual Abuse in the Third Degree [PL 130.55]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...subjected [Ms. Mandel] to sexual contact by touching the defendant's penis to the mouth of [Ms. Mandel]...."

(xviii)  *Eighteenth Count*

- Daskal committed the crime of "Sexual Abuse in the Third Degree [PL 130.55]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...subjected [Ms. Mandel] to sexual contact by touching the defendant's mouth to the vagina of [Ms. Mandel]...."

(xix)  *Nineteenth Count*

- Daskal committed the crime of "Endangering the Welfare of a Child [PL 260.10(1)]...as follows: The Defendant Jacob Daskal, on or about and between August 9, 2017 and August 30, 2017...knowingly acted in a manner likely to be injurious to the physical, mental or moral welfare of [Ms. Mandel], a child less than seventeen years old."

18

    *(xx)*   *Twentieth Count*

- Daskal committed the crime of "Endangering the Welfare of a Child [PL 260.10(1)]…as follows: The Defendant Jacob Daskal, on or about and between September 1, 2017 and October 19, 2017…knowingly acted in a manner likely to be injurious to the physical, mental or moral welfare of [Ms. Mandel], a child less than seventeen years old."

### D. The Federal Indictment of Daskal

46. In the wake of the State Indictment of Daskal, federal investigators opened an investigation into Daskal in November 2018 (the "Federal Investigation").

47. The Federal Investigation resulted, among other things, in the initial federal indictment of Daskal on February 26, 2021 (the "Initial United States Indictment").

48. Daskal was criminally charged in the Initial United States Indictment with:

    (i)    Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. §§2444(b) and 3551;

    (ii)   Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. §§2423(b) and 3551; and

    (iii)  Travel with Intent to Engage in Illicit Sexual Activity, in violation of 18 U.S.C. §§2423(b) and 3551.

49. Among other things, the Initial United States Indictment explicitly charged Daskal with "violations of New York Penal Law Sections 130.25 (2) (Rape in the Third Degree) and 130.40 (2) (Criminal Sex Act in the Third Degree), in that DASKAL engaged in sexual intercourse and oral sexual conduct with [Ms. Mandel], who had not yet attained the age of 17 years…using one or more facilities and means of interstate commerce."

50. While under federal indictment, Daskal, upon information and belief, recruited individuals to coerce, threaten, bribe and intimidate Ms. Mandel into ceasing to cooperate with federal agents and prosecutors. In other words, Daskal and others, including those identified

as defendants earlier in this Amended Complaint, orchestrated a multi-pronged campaign to "silence" Ms. Mandel.

51.    Through the acts of the individuals and entities Daskal recruited while under indictment and awaiting trial scheduled for July 17, 2023, Daskal and other defendants identified earlier in this Amended Complaint sought to eviscerate the Government's prosecution of him by coercing, intimidating, and attempting to bribe Ms. Mandel into silence and withdrawal of assistance from the prosecution. Among other things, the individuals recruited by Daskal slashed the tires of Ms. Mandel's car and sought to have her meet with a New York lawyer named Arthur L. Aidala and receive as a bribe significant sums of money to dissuade her from testifying against Daskal.

52.    Ms. Mandel, although she was placed in fear by the acts of the individuals recruited by Daskal and those associated with him, never wavered in her complete cooperation with federal agents and prosecutors and continued to prepare for the trial scheduled for July 17, 2023.

E.  The Conviction

53.    On July 14, 2023, three days before the jury selection scheduled for July 17, 2023, Breon Peace, the United States Attorney for the Eastern District of New York, filed a letter dated July 14, 2023 (the "U.S. Attorney's letter") with Judge Garaufis to "inform the Court" that the United States and defendant Daskal had "agreed that [Daskal] would plead guilty to the superseding indictment [filed on June 16, 2023] for transporting a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. §2423(a), and be sentenced to a sentence within the Guidelines range of 168 to 210 months' imprisonment, followed by a period of supervised release of five years."

54.     In summarizing the "[p]rocedural [p]osture" of the prosecution, the U.S. Attorney's letter explained that Daskal "is charged on a two-count superseding indictment for using an interstate facility to engage in illicit sexual conduct, in violation of 18 U.S.C. §2423(b)…and transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. §2423(a)…for sexually abusing a 15-year-old girl in his care when he was 58 years old."

55.     According to the U.S. Attorney's letter, the "agreed-upon range of 168-210 [*i.e.*, 14 years to 17.5 years] months' imprisonment followed by a 5-year term of supervised release appropriately balances [Daskal's] criminal history and the seriousness of [Daskal's] conduct…."

56.     Moreover, the U.S. Attorney's letter stressed that Daskal's conviction by guilty plea "carries a 10-year mandatory minimum…and the…plea accounts for this statutory mandatory minimum and ensures that [Daskal] appropriately faces punishment for the serious crimes he committed."

57.     The U.S. Attorney's letter also emphasized "the need for a severe sentence for a very serious crime" against Ms. Mandel.

*F.  Daskal's Guilty Plea*

58.     On July 14, 2023, defendant Daskal entered a plea of guilty and Judge Garaufis accepted the plea.  Judge Garaufis also set October 11, 2023, as the date for the sentencing of Daskal.

59.     More specifically, as the full transcript of the July 14, 2023, guilty plea reveals, defendant Daskal admitted under oath to horrendous acts of criminal abuse of Ms. Mandel. Although Daskal's admissions were not full and completely candid, the transcript contains the following information confirming Daskal's criminal acts:

THE COURT [Judge Garaufis]: Mr. Daskal, do you understand, having been sworn to tell the truth, you must do so. If you were to deliberately lie in response to any question I ask you, you would face further criminal charges for perjury.

Do you understand that?

THE DEFENDANT: Yes.

\*   \*   \*

THE COURT: Is your mind clear as you sit here today?

THE DEFENDANT: Yes.

THE COURT: …Quote, Count 2: Transportation of a minor with intent to engage in criminal sexual activity. In or about August 2017 within the Eastern District of New York and elsewhere, the defendant, Jacob Daskal, did knowingly and intentionally transport [Ms. Mandel], an individual who had not yet attained the age of 18 years, in interstate commerce, to wit: From South Fallsburg, New York, through New Jersey, to Brooklyn, New York, with the intent that such individual [Ms. Mandel] engage in sexual activity for which a person [*i.e.*, Daskal] can be charged with a criminal offense, to wit: Violations of New York Penal Law Sections 130.25(2) (rape in the third degree), and 130.40(2) (criminal sexual act in the third degree) in that Daskal transported [Ms. Mandel]…from South Fallsburg, New York, through New Jersey to Brooklyn, New York…for the purpose of engaging in sexual intercourse and oral sexual conduct with [Ms. Mandel]….

\*   \*   \*

THE COURT: Mr. Daskal, do you understand the elements of the crime that the Government would have to prove to a jury, beyond a reasonable doubt, and unanimously, in order to convict you of this crime, if you decided to go to trial?

THE DEFENDANT: Yes, Your Honor.

60.     Furthermore, Judge Garaufis conducted a detailed allocution from Daskal.

As the Court clearly expressed the situation:

THE COURT: But I need to hear what he [*i.e.*, Daskal] has to say.

You know, I am not going to a store and buying something without seeing what it is. I need to see what he is going to allocute to and how....And then once I have satisfied that he has properly allocuted to it, I will accept his allocution and I will accept the plea subject to 11(c)(1)(C) and that will be the end of it.

\* \* \*

THE COURT: I am not going to wait beyond today. It is going to happen today or we are going to trial...

So, are you ready to plead, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: ...Mr. Daskal, how do you plead to the charge contained in...the superseding indictment charging you with the transportation of a minor with intent to engage in criminal sexual activity[:] guilty or not guilty?

THE DEFENDANT: Guilty.

\* \* \*

THE COURT: ...At this time I would like you to tell me, in your own words, what you did to commit the crime charged [in] the superseding indictment.

THE DEFENDANT: In August 2017, I transported [Ms. Mandel], who I knew to be 15 years old, from South Fallsburg, New York to Brooklyn, New York through New Jersey, with intent to engage in oral sex with [Ms. Mandel]. I was 58 years old at the time.

## G. *The Events at the Sentencing*

### (i) *Overview of the Sentencing*

61.    Viewed in perspective, the October 11, 2023, sentencing of Daskal was a spectacle which shed deplorable light on Daskal and the literally dozens of individuals who attended the sentencing as a macabre cheering section for Daskal.

62.    In contrast, only the victim – Ms. Mandel herself – was present to bear witness to the truth and the interests of justice not just for herself but for multiple other women victims of Daskal and the callous community of his supporters and enablers. Significantly, several of the defendants identified in this Amended Complaint submitted letters as part of Daskal's sentencing memorandum. Among the additional defendants who submitted statements in support of Daskal were defendants C. Bornstein, E. Brody, Barry Daskal, B. Daskal, Benzion Daskal, C. Daskal, S. Daskal, P. Dembitzer, R. Teitelbaum, C. Fleischer on behalf of himself and defendant Yad Ephraim, Rabbi Pesach Greenberg (the founder of defendant Ezras Cholim Yad Ephraim), C. Halberstam, and defendant Ben Zion Halberstam (who described himself as the Grand Rabbi of the "Bobov Hassidic Dynasty and communities").

63.    As Judge Garaufis perceptively emphasized during the course of the lengthy sentencing, not a single person among the legions of supporters of Daskal – a convicted felon – uttered a single word of empathy, sympathy or concern for Ms. Mandel.

*(ii)    The Attempt of the Bobover Community to Intervene in the Sentencing*

64.    Even as the sentencing proceedings began, the self-described "Bobover" community attempted to intervene in, and to delay, the sentencing of Daskal. In words that were highly revealing of the complicity of the defendants identified in this Amended Complaint in Daskal's conduct, an attorney retained on the very evening before the sentencing made these comments to Judge Garaufis (*see* sentencing transcript ("Tr.") at 6):

> Last evening, myself [*sic*] and [another lawyer] was [*sic*] approached by members of *the Bobover community*, and they *wanted to have an opportunity, as a community, to have their position heard as it relates to sentencing and Your Honor's obligation to take everything into consideration to arrive at a fair and just sentence.*
>
> Letters have been given, but not by the community as a whole, and I think it would be incumbent on Your Honor to get the

24

> position of the community…and to get input from…the membership in order for Your Honor to arrive at his decision… [Tr. 6-7 (emphasis supplied).]

65.     Judge Garaufis rejected this gambit by the "Bobover community" to inject itself into the sentencing process and to delay the sentencing.

66.     Furthermore, the members of the "Bobover community" who sought to intervene in and delay the sentencing included, among others, defendant B. Daskal, defendant P. Dembitzer, defendant L. Dembitzer, defendant C. Bornstein, defendant S. Bornstein, defendant C. Daskal, defendant E. Brody, defendant R. Teitelbaum, defendant Benzion Daskal, defendant S. Daskal, defendant Barry Daskal, defendant C. Fischbein, defendant I. Fischbein, defendant Boro Park Shomrim, defendant Bais Yaakov, defendant Mannes, defendant Rabbi Halberstam, defendant C. Halberstam, defendant Shaarei Zion, defendant Bobover, defendant L. Brauner, defendant Mutty Brauner, defendant Yad Ephraim, defendant Pesach Greenberg, defendant Yachad D'Bobov, and defendant Fleischer.

### (iii)   The Court's Calculation of the Guideline Range

67.     After rejecting the "Bobover community's" attempt to intervene in and delay the sentencing, Judge Garaufis then turned the Court's attention to the proper calculation of the sentencing "guideline calculation" (Tr. at 8).  Over substantial and unjustified opposition from Daskal's attorneys to the proper calculation, Judge Garaufis stressed the factors involving Daskal's crimes against Ms. Mandel (and possibly other victims) which bear special relevance to Ms. Mandel's action.

68.     As Judge Garaufis stressed:

THE COURT: [Daskal] pleaded guilty pursuant to an agreement, and under that agreement, the Government agreed to a specific sentence within the guideline range of 168 to 210 months....

The Court has accepted the plea pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure....This Court does not normally accept such pleas because it constrains the Court's ability to properly sentence an individual who pleads guilty or is found guilty of certain crimes....

So notwithstanding that, the Court must still ascertain the proper guideline, because the Court has an obligation under federal law to provide the guideline calculation, and there is a disagreement, I think, about what the appropriate guideline is in this case, so I'm going to go over the guideline calculation.... [Tr. at 8.]

69.     After commenting on the general point that Daskal disagreed with significant aspects of the Government's guideline calculation, Judge Garaufis commented that Daskal had "pleaded guilty...to the superseding indictment charging transportation of a minor with intent to engage in criminal sexual activity. This count carries a ten-year minimum sentence...so we start off with a 120 month sentence under the statute...Now, according to the Presentence Report, the base offense is a 28...." (Tr. at 9.)

70.     Moreover, because of the nature of Daskal's crimes, Judge Garaufis noted: "Then there is a specific offense characteristic in paragraph 20 [of the Presentence Report]: Since the minor-victim in this case [i.e., Ms. Mandel] was otherwise in the care and supervisory control of the defendant, the offense level is increased by two levels." (Tr. at 10.)

71.     When Judge Garaufis mentioned that a further two-level enhancement should be added because of "the specific offense characteristic" that Daskal "unduly influenced the minor to engage in prohibited sexual conduct" (Tr. at 10), Daskal objected to that enhancement.

72.     In response to that objection, the prosecution cogently stressed that "there are numerous additional facts to the defendant's influence over [Ms. Mandel], including [Daskal's]

26

position of power in their shared community, his relationships with law enforcement through the Shomrim, and their 44-year age difference...." (Tr. at 11.)

73.    Judge Garaufis rejected Daskal's objection to the two-level enhancement, concluding that Daskal's *"status in his community activities with the police department and his status in the Borough Park Shomrim Society*, and the incredibly large age differential between a 15-year-old and a 59-year-old add up to sufficient grounds for including" the additional two-level enhancement. (Tr. at 11; emphasis supplied.)

74.    Moreover, Daskal objected to a further two-level enhancement based on the fact that the "offense involved the use of a computer or an interactive computer service to provide, persuade, induce, entice, or coerce the minor [Ms. Mandel] to engage in prohibited sexual conduct." (Tr. at 12.)

75.    As the prosecution succinctly expressed in responding to Daskal's objection, Daskal "used text messages, Skype, social media, to communicate with and groom [Ms. Mandel] before she lived with him, [and] during the time she lived with him, and afterwards, including when [Daskal] moved [Ms. Mandel] to Chicago." [Tr. at 13.]

76.    In response to pertinent questioning from Judge Garaufis, the prosecution also stressed that through computer and other interactive devices Daskal "asked [Ms. Mandel] to pose nude for him and send him nude images over Skype...." [Tr. at 13.]

77.    As with other objections by Daskal to enhancements, Judge Garaufis overruled Daskal's objections based on computer usage. The Court accordingly added a further two-level enhancement. (Tr. at 14.)

27

78.     Moreover, as alleged elsewhere on information and belief in this Amended Complaint, Daskal's crimes against Ms. Mandel were part of a pattern and practice of similar criminal behavior toward other women.

79.     Specifically, Judge Garaufis, in referring specifically to the Presentence Investigation Report, cited the fact that the "offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct [and] therefore *[Daskal] is a repeat and dangerous sex offender against minors.*" (Tr. at 14; emphasis supplied.)

80.     As the prosecution again successfully demonstrated, "there were multiple instances that could support the pattern enhancement." (Tr. at 18.)

81.     Yet again Judge Garaufis rejected Daskal's objection.  As the Court observed, *"I'm of the view that the widespread nature of the misbehavior should make it clear that this enhancement [regarding practice and pattern] is appropriate."* [Tr. at 18; emphasis supplied.] The Court thus imposed an additional five-level enhancement.  *Id.*

   (iv)   *Ms. Mandel's Victim Impact Statement*

82.     Ms. Mandel, when invited to do so, provided a detailed and moving Victim Impact Statement at the sentencing.  The impact statement, which provides the most salient aspects of this Amended Complaint and contains stunning details as to the conduct not only of Daskal but the additional defendants identified in this Amended Complaint, was as follows:

> I ended up leaving home at the age of 15.  I was taken to Jacob Daskal's home, and he was the leader of the Brooklyn Shomrim patrol group.  He offered to help me and I started feeling immense gratitude towards Mr. Daskal.  I viewed him as my savior and father figure.  Mr. Daskal kept in touch with me and eventually offered that I come live with his family.  I was thrilled and unsuspectingly accepted his offer.
>
> I lived with Mr. Daskal and his wife for a couple of months. At the start, he was extremely nice and won my total trust, a process which I now know is called grooming.

When he explained why it is in my benefit to be touched, I believed and trusted him. The words "sex," "molestation" or "rape" had never entered my vocabulary. His initial physical affection quickly turned into full-fledged rape. While Mr. Daskal's nightly rape sessions caused a considerable amount of confusion and anguish, I insisted that I wanted to attend an out-of-town high school and Mr. Daskal reluctantly helped me transition to the Chicago community.

The weeks I spent in Chicago were the best weeks I have ever experienced in my life. I enjoyed school and was doing great in my studies. After a few short weeks Mr. Daskal came to visit me to check up on me. I am still not sure what the family I was boarding at thought of his visit and why they allowed it, but I soon found myself in the hotel room being raped all over again. When I returned home, a curious friend started probing me about our relationship. Since my friend was more educated than myself in areas of sexual relationships, she knew what questions to ask and after a lot of probing figured out some of what was happening between Mr. Daskal and me. My friend tattled on me to the principal of our school and to my horror, I was promptly kicked out for the religious violation of having sex. I still cannot fathom why no one reported this to the authorities.

I finally started to process what had happened to me. In an act of self-desperation, I tried to block Mr. Daskal out of my life. I enrolled in an online high school and focused on my studies. I completed my studies and received my high school diploma....

Mr. Daskal harassed me and was stalking me whenever I ventured outside. I turned to Amudim, an organization dedicated to helping people who are struggling with any type of abuse. The staff at Amudim was extremely supportive and walked me through the process of reporting the abuse and pressing charges against Mr. Daskal. Mr. Daskal was arrested the very next day. A silver lining in my difficult journey has been the knowledge that my reporting was a crucial step in removing a dangerous predator off the streets....

Although I am trying very hard to move forward in my life...it is something that I live with every day. What affected me the most was the fact that I was entrusted to Jacob Daskal's care as a minor and I trusted him to protect me and he violated that trust in the worst ways possible. This is something that has a major effect on my every relationship to this very day. I live with the trauma of what he has done to me physically and emotionally every day. My life will never be the same again. This horrendous experience has

29

shaped me in so many ways. The guilt and shame I live with are the worst feelings that eat at me day and night. And I know that what happened wasn't my fault. However, to live with the pain of knowing that you were stripped of your youth in such a vile and degrading way is something that stays with you forever.

I don't know how a man takes pleasure in raping and sexually abusing a young child as myself who knew nothing about sexual relations. Jacob Daskal is a very sick man. The pain he has caused me cannot adequately be put into words. When I look at my future, I do not see myself ever being able to be in a healthy trusting relationship with a man. I pray to God that it changes over time because I don't want to be stay alone for the rest of my life. This is all a result of the damage inflicted on me by Jacob Daskal. He wanted me to believe that I belonged to him and that he was going to control my entire life and that I was never going to be able to break free from his grasp. I thank our law enforcement for helping me get away from this man. But the repercussions are something I live with every day. The abuse was a lot more than just sexual abuse. He abused me mentally, emotionally, and sexually all the time fully aware of the fact that he was taking advantage of a vulnerable child. The crimes he committed against me are something that can never be undone. I will live with the pain of this trauma forever. [Tr. 20-24.]

### (v)   Daskal's Further Admissions of Liability and Pleas for "Mercy"

83.   At the October 11 sentencing, Judge Garaufis gave Daskal himself the opportunity to address the Court before the imposition of the sentence. Daskal accepted that opportunity and, although pleading for "mercy," made unequivocal admissions of liability and responsibility for financial damage to Ms. Mandel.

84.   Among other things, Daskal stated under oath at sentencing:

THE DEFENDANT: …[The]first thing I want to say to the victim [*i.e.*, Ms. Mandel], I cannot express how sorry I am for what I did. I do not know [how] I can ever repay her for the terrible damage that I caused her. For a young girl, the harm that she has to deal with the rest of her life, words cannot capture…the overwhelming regret and shame for what I did.…*[W]hatever I feel is nothing compared to the awful pain I caused [Ms. Mandel].* Your Honor, I'm here to accept responsibility for my crime. *I took advantage of my position in Shomrim to do something unspeakable.* (Tr. 35-36; emphasis supplied.)

85.    After these preliminary admissions, Daskal turned to a litany of self-justifying statements about the condition of his "elderly mother" (Tr. at 36), his allegedly ill wife (Tr. at 37), his conversations with his Rabbi (Tr. at 37), and his desire for forgiveness from God (Tr. at 37).

*(vi)    The Court's View of the Failure of the Responsibility of the Community*

86.    After listening to Daskal's statement in full, Judge Garaufis directed highly courageous and pertinent comments to the large group of Daskal's "community" supporters in the courtroom and elsewhere.

87.    In salient part, Judge Garaufis stated:

> THE COURT: Let me start by stating that we would not be here today but for the courage of the victim [Ms. Mandel]. Had she not come forward, [Daskal's] crimes may never have come to light and he may have had the opportunity to prey on other young women in the community. It's horrible and unfair that the victim was forced into this position. She bore the immense burden for coming forward and disclosing the harm she suffered at the hands of a prominent member of her community. But bear this burden she did. The Court commends the victim for her remarkable strength and resilience. (Tr. at 38.)

88.    Judge Garaufis' statement included the following:

> The Court agreed to accept this plea because the victim would be spared the need to testify in open court about what was done to her. And, in a sense – in a very great sense – the victim provided to the defendant the mercy the defense asks me to provide to the defendant. It is not my mercy that we must deal with here. It is the mercy that [Ms. Mandel] gave the defendant, because had this defendant gone to trial…his sentence could have been as long as life in prison [Tr. at 38.]

*(vii)    Daskal's Wealth and the Complicity of the "Community"*

89.    The Court's observations also encompassed other crucial issues of great relevance to Ms. Mandel's Amended Complaint: (i) Daskal's illicit transfer of wealth and (ii) the complicity of the "community" of which Daskal was a key leader:

THE COURT: [Daskal] was a men with intense power in his community. He was the leader of the Borough Park Shomrim Society, a crime patrol group with close ties to the New York City Police Department. *He managed a successful real estate company that brought him substantial wealth. He had a vast network of friends and family.* He was known and respected by many.

*I would point out that he placed over $10 million in assets...for the benefit of his children and grandchildren. He was a wealthy man....*

And what did the defendant do with this power? He abused it to take advantage of a vulnerable young child in his community who was in great need of support because of her special circumstances in her own family and he did so in the most heinous manner imaginable. At every stage of this crime, [Daskal] abused his power. The victim was a 15-year-old and was brought to the defendant because he was an influential member of the community. She trusted him to provide her safe haven and support, looking to him as a father figure. Rather than providing this safe haven, the defendant abused her trust and groomed her for sex. [Tr. at 38-39; emphasis added.]

90.    Significantly, Judge Garaufis made crucial observations about the role of the so-called "community" as a whole:

THE COURT: ...While the abuse was ongoing, he attempted to create a paper trail to protect himself, and when the victim finally realized what had been done to her, the defendant used his position of power to threaten and silence her.

I have read the sentencing memoranda....I've also read the more than 20 letters submitted in support of Mr. Daskal. They paint a picture of the defendant as a pillar for his...community....

I find myself wondering how something like this could happen. *How the defendant's hideous crimes could go on for so long without someone stepping in to stop him and to help the victim? How could he inflict such damage believing he could get away with it?*

The defendant is clearly a sick man....*He did not commit his crimes in a vacuum. Those who knew or suspected and did nothing, including family, friends, and clergy alike are also morally at fault.* Those who did not believe the victim or chose to look away, including educators, among others, are morally at fault....Those

32

who enabled Mr. Daskal are morally at fault. Those who punished the victim when she came forward are morally at fault.

*This is a community and the community has to take responsibility and not hide from responsibility.* The purpose of fostering community cohesion should be working to support and protect the weak and the vulnerable, not to empower and enable wrongdoers who take advantage of those who need our help the most.

The Court hopes that any community members who in any way allowed this to happen or who helped the defendant evade responsibility for so long are listening today and that they repent for their role in these events. The Court hopes that this community makes sure that we never have to find ourselves wondering how something like this could happen to a girl who courageously came forward to protect herself and to hold the defendant accountable at such a vulnerable stage in her life. [Tr. at 40-41; emphasis supplied.]

91.    Upon information and belief, the members of the "community" identified by Judge Garaufis as bearing "responsibility" include, among others to be located through discovery proceedings, defendants B. Daskal, P. Dembitzer, L. Dembitzer, C. Bornstein, S. Bornstein, C. Daskal, E. Brody, R. Teitelbaum, Benzion Daskal, S. Daskal, Barry Daskal, C. Fischbein, I. Fischbein, Boro Park Shomrim, Bais Yaakov, Mannes, Rabbi Halberstam, C. Halberstam, Shaarei Zion, Bobover, L. Brauner, Mutty Brauner, Yad Ephraim, Pesach Greenberg, Yachad D'Bobov, and Fleischer.

## COUNT I
### [Violation of 18 U.S.C. §2255]

92.    Plaintiff repeats and realleges each and every allegation of ¶¶1-91, *supra*.

93.    Defendant Daskal has violated the provisions of 18 U.S.C. §2255 and is thus liable to Ms. Mandel for compensatory damages and "punitive damages" in an amount to be determined by trial but believed to exceed $150 million.

94.    The additional defendants identified in this Amended Complaint are individually liable under 18 U.S.C. §2255 as a consequence of their knowledge of, aiding and

abetting, enabling and concealing the conduct of defendant Daskal for compensatory damages and "punitive damages" in favor of Ms. Mandel in an amount to be determined at trial but believed to exceed $150 million.

## COUNT II
### [Repeated Instances of Rape of a Minor]

95.    Plaintiff repeats and realleges each and every allegation of ¶¶1-94, *supra*.

96.    Defendant Daskal repeatedly raped and injured Ms. Mandel in violation of New York State law and United States law.

97.    As a direct result of his repeated rapes of Ms. Mandel, defendant Daskal has damaged Ms. Mandel in an amount to be determined at jury trial but believed to exceed $150 million.

## COUNT III
### [Repeated Acts of Sexual Abuse]

98.    Plaintiff repeats and realleges each and every allegation of ¶¶1-97, *supra*.

99.    Defendant Daskal committed multiple acts of sexual abuse against Ms. Mandel in violation of New York State law and United States law.

100.    As a direct result of his repeated sexual abuse of Ms. Mandel, defendant Daskal has damaged Ms. Mandel in an amount to be determined at jury trial but believed to exceed $150 million.

## COUNT IV
### [Repeated Acts of Assault]

101.    Plaintiff repeats and realleges each and every allegation of ¶¶1-100, *supra*.

102.    Defendant Daskal committed multiple acts of assault against Ms. Mandel in violation of New York State law and United States law.

103.    As a direct result of his repeated assaults on Ms. Mandel, defendant Daskal has damaged Ms. Mandel in an amount to be determined at jury trial but believed to exceed $150 million.

## COUNT V
### [Repeated Acts of Battery]

104.    Plaintiff repeats and realleges each and every allegation of ¶¶1-103, *supra*.

105.    Defendant Daskal committed repeated acts of battery against Ms. Mandel in violation of state and federal law.

106.    As a direct result of his acts of battery against Ms. Mandel, defendant Daskal has damaged Ms. Mandel in an amount to be determined at jury trial but believed to exceed $150 million.

## COUNT VI
### [Intentional Infliction of Emotional Distress]

107.    Plaintiff repeats and realleges each and every allegation of ¶¶1-106, *supra*.

108.    Defendant Daskal's conduct caused severe emotional distress to Ms. Mandel.

109.    As a direct result of Daskal's conduct, Daskal has damaged Ms. Mandel in an amount to be determined at jury trial but believed to exceed $150 million.

WHEREFORE, plaintiff Rivka Mandel demands judgment as follows:

A.      On Count I, in an amount to be determined at trial but believed to exceed $150 million;

B.      On Count II, in an amount to be determined at trial but believed to exceed $150 million;

C.      On Count III, in an amount to be determined at trial but believed to exceed $150 million;

D.      On Count IV, in an amount to be determined at trial but believed to exceed $150 million;

E.      On Count V, in an amount to be determined at trial but believed to exceed $150 million;

F.      On Count VI, in an amount to be determined at trial but believed to exceed $150 million;

G.      Punitive damages in the amount of $200 million;

H.      Injunctive and other equitable relief directing the additional defendants to disgorge and transfer to Ms. Mandel all assets transferred to the additional defendants by defendant Daskal, in an amount to be determined by the Court but believed to exceed $150 million; and

I.      Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      January 24, 2024

PAUL BATISTA, P.C.

By:

Paul Batista
Attorney for Plaintiff
RIVKA MANDEL
26 Broadway, Suite 1900
New York, New York 10004
(631) 377-0111
Batista007@aol.com

37

# CIVIL MINUTE CALENDAR

**Before EDNY (Brooklyn), U.S. District Judge Ramón E. Reyes, Jr.**

**Courtroom 2E North**

**Date: March 18, 2026**                           **Time in Court: 30 minutes**

**Docket Number: 23-CV-07352**

**Case Title: Mandel v. Daskal**

**Court Reporter: Andronikh Barna**              **Time Log:** N/A

**Law Clerk: KP**

**Plaintiff(s)/Petitioner represented by: Paul A. Batista**

**Defendant(s)/Respondent represented by: Mitchell Schuster; Stacey Ashby**

**Type of Hearing Held: premotion hearing**

**Pending Motion(s): N/A**

**TEXT:**

Paul A. Batista appeared on behalf of Plaintiff. Mitchell Schuster and Stacey Ashby appeared on behalf of Defendant. Case Called. Discussions held. Plaintiff's motion for summary judgment is deemed as made as to all open counts in the [21] amended complaint. The motion is granted only with respect to Count 1 against Defendant Jacob Daskel for 18 U.S.C. § 2255 by way of his guilty plea to 18 U.S.C. § 2423, and denied in all other respects. The parties are directed to meet and confer on an updated discovery schedule with Magistrate Judge Vera M. Scanlon. The parties are encouraged to engage in settlement discussions.

Contact the Court Reporter Andronikh Barna at (718) 613-2178 to order the transcript.

## CIVIL MINUTE CALENDAR

**Before EDNY (Brooklyn), U.S. District Judge Ramón E. Reyes, Jr.**

**Courtroom 2E North**

**Date: March 18, 2026**                          **Time in Court: 30 minutes**

**Docket Number: 23-CV-07352**

**Case Title: Mandel v. Daskal**

**Court Reporter: Andronikh Barna**            **Time Log: N/A**

**Law Clerk: KP**

**Plaintiff(s)/Petitioner represented by: Paul A. Batista**

**Defendant(s)/Respondent represented by: Mitchell Schuster; Stacey Ashby**


**Type of Hearing Held: premotion hearing**

**Pending Motion(s): N/A**

**TEXT:**

Paul A. Batista appeared on behalf of Plaintiff. Mitchell Schuster and Stacey Ashby appeared on behalf of Defendant. Case Called. Discussions held. Plaintiff's motion for summary judgment is deemed as made as to all open counts in the [21] amended complaint.  The motion is granted only with respect to Count 1 against Defendant Jacob Daskel for 18 U.S.C. § 2255 by way of his guilty plea to 18 U.S.C. § 2423, and denied in all other respects. The parties are directed to meet and confer on an updated discovery schedule with Magistrate Judge Vera M. Scanlon. The parties are encouraged to engage in settlement discussions.

Contact the Court Reporter Andronikh Barna at (718) 613-2178 to order the transcript.

# MSF
Meister Seelig & Fein PLLC

Stacey Ashby
*Partner*
Direct (212) 655-3562
Fax (646) 539-3662
*sma@msf-law.com*

March 16, 2026

**VIA ECF**
Hon. Vera M. Scanlon
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    **Rivka Mandel v. Jacob Daskal, 1:23-cv-07352 (RER) (VMS)**

Dear Judge Scanlon:

We represent defendant Jacob Daskal in the above-referenced action. Pursuant to Rule III(b) of Your Honor's Individual Practice Rules, Mr. Daskal hereby respectfully moves, pursuant to Fed. R. Civ. P. 37(a)(3)(B), for an Order compelling plaintiff Rivka Mandel to: (1) provide proper responses to Mr. Daskal's First Set of Interrogatories (the "Interrogatories"); (2) provide proper responses to Mr. Daskal's First Request for the Production of Documents and Things (the "RFPs"); and (3) promptly produce to Mr. Daskal all documents and other evidence that is responsive to Mr. Daskal's RFPs. [1]

A.    **Plaintiff's March 11, 2026 Letter**

As an initial matter, in a March 12, 2026 letter to the Court regarding the parties' telephone meet and confer earlier the same day, Ms. Mandel's counsel, Paul Batista of Paul Batista, P.C., asserts that my letter misrepresents what transpired on the call. On the call, Mr. Batista unequivocally stated that he and Ms. Mandel had "no interest" in taking Mr. Daskal's deposition and he flatly refused to amend or supplement Ms. Mandel's facially deficient responses to Mr. Daskal's discovery requests. To date, Ms. Mandel has not produced a single document responsive to Mr. Daskal's RFPs, notwithstanding her admission in her October 15, 2025 Rule 26(a) initial disclosures that responsive documents exist and are in her possession, custody or control. [2] Mr.

---

[1]    True and accurate copies of Mr. Daskal's Interrogatories and Ms. Mandel's responses thereto are attached as **Exhibits A and B**, respectively.  True and accurate copies of Mr. Daskal's RFPs are attached as **Exhibits C and D**, respectively.

[2]    A true and accurate copy of Ms. Mandel's Rule 26(a) initial disclosures is attached as **Exhibit E**. *See* Ex. E, p. 6, §B ("Ms. Mandel has possession of a limited number of documents that may be discoverable. At present, the

Batista also rejected the notion that Mr. Daskal is entitled to disclosure of the date, time, location or other details concerning the alleged acts of assault and/or battery upon which Ms. Mandel's claims are based. Rather, he insisted that Mr. Daskal's guilty plea was all he needed, and he was proceeding to move for summary judgment on liability on all claims, including Ms. Mandel's New York state law claims for assault and battery and intentional infliction of emotional distress. Apparently, according to Mr. Batista because Mr. Daskal pleaded guilty to a single violation of the Mann Act, 18 U.S.C. § 2423(a) in federal criminal proceeding that constitutes an admission of any criminal conduct Ms. Mandel will see fit to accuse him of (since the specific alleged criminal acts are not identified in Ms. Mandel's Amended Complaint (attached as **Exhibit F**), including conduct unrelated to the offense to which he pleaded guilty, thereby obviating the need for associated discovery. I repeatedly reminded Mr. Batista that we had an obligation to comply with Your Honor's February 23, 2026 Order to file a "detailed final discovery schedule" that day but he refused to engage in substantive dialogue concerning to Ms. Mandel's obviously deficient discovery responses or adjustments to the schedule to accommodate Ms. Mandel's forthcoming motion. I specifically asked Mr. Batista if Ms. Mandel would be moving for a stay of discovery and he very clearly said, "yes."

In disputing my description of the call in my March 9 letter, Mr. Batista attaches his own email communications dated March 10 and 11 – all of which post-date my March 9 letter and none of which take issue with any of the representations therein – in which he backtracks from his positions on the call and acknowledges that Mr. Daskal is entitled to take Ms. Mandel's deposition. Mr. Batista relies heavily on his *response to* my partner, Ms. Stocks' March 10 email and his offer to schedule Ms. Mandel's deposition as purported evidence that he and Ms. Mandel have purportedly "participated fully in discovery." *See* Ltr., p. 3; Ex. 3, pp. 1-2. Mr. Batista is well aware, however, we cannot proceed to schedule Ms. Mandel's deposition when she has yet to produce a single document or respond in earnest to Mr. Daskal's RFPs and Interrogatories. Mr. Batista persisted in this position even though critical details are glaringly absent from Ms. Mandel's pleading, which would prevent us from conducting a meaningful deposition.

## B.    Mr. Daskal's Motion to Compel Should Be Granted

In any event, the Court need look no further than Ms. Mandel's responses to Mr. Daskal's Interrogatories and RFPs (each, a "Response," and collectively, the "Responses") to gauge her willingness to participate in discovery. Both Responses begin with boilerplate objections that the Interrogatories and RFPs are purportedly "overly broad and unduly burdensome," seek disclosure that is "not reasonably calculated to lead to the discovery of admissible evidence," were intended to "embarrass, annoy and harass" Ms. Mandel, and seek to impose obligations that "exceed the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court." *See* Ex. B, pp. 1-2, Gen. Obj. 1, 2 and 6; Ex. D, pp. 1-2, Gen. Obj. 1, 2 and 4. It is well-settled that such boilerplate objections are improper. *See, e.g., Thompson v. Glob. Contact Servs., LLC*, No. 20-cv-MKB-SJB, 2020 WL 13825380, at *2 (E.D.N.Y. Dec. 15, 2020) ("The objection that a request is 'vague, ambiguous and overbroad' is vacuous boilerplate."); *Fischer v. Forrest*, No. 14-cv-1304-PAE-AJP (S.D.N.Y. Feb. 28, 2017) ("[Objections] stating that requests are overly broad and

---

documents include (i) copies of pleadings in the state and federal prosecutions of Daskal and (ii) copies of electronic communications, such as text messages, sent to Ms. Mandel by Daskal and to Daskal by Ms. Mandel.")

unduly burdensome' is meaningless boilerplate. Why is it burdensome? How is it overly broad? This language tells the Court nothing.").

### C.   Ms. Mandel's Deficient Interrogatory Responses

Ms. Mandel asserts additional General Objections to the Interrogatories in that they require her "to recall, remember, and depict events which took place when she was 15 and 16 years old," and to the extent that they "subject her to intense emotional reactions which in effect require her to re-life and re-experience extremely traumatic events." *See* Ex. B, pp. 1-2, Gen. Obj. 4 and 5. It is beyond dispute that neither is a valid objection. We are unable to locate a single case where a party was excused from responding to a discovery request on either ground and Ms. Mandel cites no authority in her Responses. Nor is it clear whether either or both improper objections apply to some or all of the Interrogatories, as every single one of Ms. Mandel's Responses states "*see* the General Objections, *supra*" without explanation. This too is improper. *See Fischer*, 2017 WL 773694, at *3 ("First, incorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirement as well as Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection."). If Ms. Mandel is unable to recall the information requested in one or more Interrogatories due to the passage of time, Mr. Daskal is entitled a proper response stating as much.

Moreover, we note that many of Mr. Daskal's Interrogatories seek straightforward, non-sensitive facts routinely sought and disclosed by parties in discovery in civil litigation. *See, e.g.,* Interrog. No. 6 (dates, times, method and substance of relevant communications); No. 7 (witnesses with relevant knowledge); No. 8 (members of law enforcement with whom Ms. Mandel discussed her allegations); No. 9 (individuals with whom Ms. Mandel discussed Mr. Daskal); No. 10 (location and custodians of relevant evidence); No. 12 (medical providers); No. 14 (social media accounts and handles); No. 16 (educational background); No. 17 (employment history); No. 18 (legal guardians); No. 19 (other names, nicknames, or aliases). Mr. Daskal is unquestionably entitled to this information notwithstanding Ms. Mandel's improper boilerplate objections. Mr. Daskal therefore respectfully requests that the Court compel her to provide this disclosure, as well.

Interrogatory Nos. 1-4 seek sensitive information concerning the details of each instance of alleged assault and battery and the emotional injuries allegedly sustained as a result. In her Responses, however, Ms. Mandel merely references paragraphs 45(a)-(xx) of her Amended Complaint, and asserts that Mr. Daskal purportedly "pleaded guilty to criminal acts against Ms. Mandel" without establishing any connection to the offense to which he pleaded guilty. *See* Ex. B, p. 2. However, it is well established that simply referencing a pleading is not a proper response to an interrogatory. *See, e.g., J.J. Delaney Carpet Co. v. Forrest Mills, Inc.*, 34 F.R.D. 152, 153 (S.D.N.Y. 1963) ("Incorporation by reference of portions of a deposition of a witness, much of it discursive, or of allegations of a pleading is not a responsive answer."). In addition, paragraphs 45(a) through (xx) of Ms. Mandel's pleading consist of a verbatim recitation of the unproven allegations of a 20-count state court indictment that were **not** the subject of Mr. Daskal's guilty plea, and were asserted in entirely separate state court proceedings. *See* Ex. F, pp. 14-19. Mr. Daskal respectfully requests that Ms. Mandel be directed to supplement her Responses to disclose this critical information, as well.

**D.**    **Ms. Mandel's Failure and/or Refusal to Produce Responsive Documents**

Ms. Mandel's Responses to the RFPs are facially deficient for a number of reasons. *First,* they contain a lengthy "Preliminary Statement" in which Ms. Mandel asserts that "every document associated with Daskal and the investigation of Daskal" is in the custody of the state and federal law enforcement authorities. Respectfully, this assertion is irreconcilable with the representation in Ms. Mandel's Rule 26(a) initial disclosure served less than 4 months earlier that she possesses relevant, responsive documents and communications. *Id.; Compare* Ex. E, p. 6, §B. Mr. Daskal therefore respectfully requests that Ms. Mandel be directed to produce the documents referenced in her Rule 26(a) disclosures or, at a minimum, provide a sworn statement explaining in detail the abrupt disappearance of critical evidence during pending litigation.

*Second,* Ms. Mandel maintains that even if she possessed responsive documents, producing them would somehow subject her to "severe emotional harm." *See* Ex. D, p. 2. This too is not a valid basis to withhold relevant evidence. Compounding matters, the entirety of Ms. Mandel's Responses to 18 of 27 RFPs is "*see* the General Objections, *supra,* and the Preliminary Statement, *supra.*" *See* Ex. D, Resp. to RFP Nos. 1-9, 13, 14-16, 18, 20-22, 26. A litigant "participating fully" in pre-trial discovery simply does not assert bad faith objections like this in response to properly propounded RFPs. Accordingly, Ms. Mandel should be directed to produce any documents she withheld on the basis of "emotional harm" immediately.

*Third,* Ms. Mandel asserts that Mr. Daskal's guilty plea "establishes the facts associated with the criminal conduct against Ms. Mandel," to which he is bound and, as a result, he purportedly "lacks any basis to contest his civil liability to Ms. Mandel in this action." However, Ms. Mandel does not actually identify the facts or criminal conduct she is referring to, nor does she establish any connection between them and the offense to which Mr. Mandel pled guilty. *See* Ex. D, p. 2. *See Goodridge v. Harvey Group, Inc.,* 728 F.Supp. 275, 278-279 (S.D.N.Y. 1990) ("[J]ust as it is clear that a guilty plea can collaterally estop the relitigation of certain issues in subsequent civil proceedings, it is also clear that the estoppel extends only to those issues that were essential to the plea.") (internal quotation marks omitted); *Emich Motors v. General Motors,* 340 U.S. 558, 569 (1951) ("[E]stoppel extends only to questions distinctly put in issue and directly determined in the criminal prosecution."). Critically, as "the party asserting estoppel based on a guilty plea," Ms. Mandel bears the burden "of establishing precisely which facts the plea establishes." *Goodridge,* 728 F.Supp. at 279. She makes no effort to satisfy this burden. Therefore, Ms. Mandel should be directed to disclose all facts that she maintains Mr. Daskal is estopped from contesting and establish a legitimate connection between them and Mr. Daskal's plea.

Accordingly, Mr. Daskal respectfully requests that his motion to compel be granted in its entirety and that Ms. Mandel be ordered to supplement her discovery responses and produce responsive documents prior to her deposition.

Respectfully submitted,
*/s/ Stacey Ashby*
Stacey Ashby

cc:    All Counsel of Record

# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

RIVKA MANDEL,

                         Plaintiff,

         - against –

JACOB DASKAL,

                        Defendant.

---------------------------------------------------------------x

1:23-cv-07352 (RER) (VMS)

**PLAINTIFF RIVKA MANDEL'S
RESPONSE TO DEFENDANT JACOB DASKAL'S
FIRST SET OF INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 33 and 26, plaintiff Rivka Mandel, by and through her attorney, Paul Batista, P.C., hereby responds to defendant Jacob Daskal's First Set of Interrogatories (the "Daskal Interrogatories") as follows:

**General Objections**

1.    Ms. Mandel generally objects to the Daskal Interrogatories to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence.

2.    Ms. Mandel generally objects to the Daskal Interrogatories to the extent that they are calculated to harass and embarrass Ms. Mandel.

3.    Ms. Mandel generally objects to the definitions and instructions in the Daskal Interrogatories to the extent they purport to exceed the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court.

4.    Ms. Mandel generally objects to the Daskal Interrogatories on the ground that, as framed, they purport to require her to recall, remember, and depict events which took place when she was 15 and 16 years old, and when defendant Jacob Daskal ("Daskal") was more than 55 years old. Ms. Mandel is now 24.

1

5.    By virtue of the heinous conduct to which Daskal has pleaded guilty and been convicted and sentenced to 17.5 years in prison, Ms. Mandel generally objects to the Daskal Interrogatories to the extent that they subject her to intense emotional reactions which in effect require her to re-live and re-experience extremely traumatic events and constitute, in effect, Daskal's re-committing of crimes against Ms. Mandel which took place when she was 15 and 16 years old.  Daskal has pleaded guilty to those crimes.

6.    Ms. Mandel generally objects to the Daskal Interrogatories to the extent they are overly broad, unduly burdensome and ambiguous.

### Specific Responses

### Interrogatory No. 1

Describe every act of Defendant that You contend constitutes a violation of the provisions of 18 U.S.C. §2255, thereby subjecting Defendant to liability to Plaintiff, as alleged in the Amended Complaint, and for each such act, state the date when it occurred, the location where it occurred, and the circumstances surrounding it, and identify any witness to such alleged act.

### Objection to Interrogatory No. 1

See the General Objections, *supra*.  Ms. Mandel, moreover, objects to Interrogatory No. 1 on the ground that, as framed, it is overly broad, unduly burdensome and ambiguous.  Defendant Daskal has in addition pleaded guilty to the criminal acts against Ms. Mandel.

### Response to Interrogatory No. 1

Subject to the foregoing Objections, Ms. Mandel refers to ¶ 45(a) – (xx) of the Amended Complaint filed January 25, 2024 in this action for the responses to Interrogatory No. 1.

### Interrogatory No. 2

Describe every act of Defendant that You contend constitutes assault, thereby subjecting Defendant to liability to Plaintiff, as alleged in the Amended Complaint, and for each such act, state the date when it occurred, the location where it occurred, and the circumstances surrounding it, and identify any witness to such alleged act.

2

## Objection to Interrogatory No. 2

See the General Objections, *supra*, and the Objection to Interrogatory No. 1, *supra*.

## Response to Interrogatory No. 2

Subject to the foregoing Objections, Ms. Mandel refers to the Response to Interrogatory No. 1, *supra*.

## Interrogatory No. 3

Describe every act of Defendant that You contend constitutes battery, thereby subjecting Defendant to liability to Plaintiff, as alleged in the Amended Complaint, and for each such act, state the date when it occurred, the location where it occurred, and the circumstances surrounding it, and identify any witness to such alleged act.

## Objection to Interrogatory No. 3

See the General Objections, *supra*, and the Objection to Interrogatory No. 1, *supra*.

## Response to Interrogatory No. 3

Subject to the foregoing Objections, Ms. Mandel refers to the Responses to Interrogatories Nos. 1 and 2, *supra*.

## Interrogatory No. 4

Describe every act of Defendant that You contend constitutes an intentional infliction of emotional distress, thereby subjecting Defendant to liability to Plaintiff, as alleged in the Amended Complaint, and for each such act, state the date when it occurred, the location where it occurred, and the circumstances surrounding it, and identify any witness to such alleged act.

## Objection to Interrogatory No. 4

See the General Objections, *supra*.

## Response to Interrogatory No. 4

Subject to the foregoing Objections, Ms. Mandel refers to the Responses to Interrogatories Nos. 1, 2 and 3, *supra*.

3

**Interrogatory No. 5**

For each act described in response to Interrogatory No. 5 [*sic*], describe the emotional injuries from which You allegedly suffered as a result, and state whether those injuries are continuing in nature.

**Objection to Interrogatory No. 5**

See the General Objections, *supra*.

**Response to Interrogatory No. 5**

Subject to the foregoing Objections, Ms. Mandel, who was sexually and emotionally abused and tormented by defendant Daskal when she was 15 and 16 years old, has sustained and will continue permanently to sustain severe emotional and psychological damage as a result of defendant Daskal's illegal conduct, including, *inter alia*, rape and sodomy, for which he was convicted and sentenced to 17.5 years imprisonment. Ms. Mandel also refers to the victim impact statement she delivered to Judge Garaufis at the sentencing of Daskal (*see* Amended Complaint ¶ 82).

**Interrogatory No. 6**

Describe every Communication between Plaintiff and Defendant, including by stating the date, time, method, and substance of each Communication.

**Objection to Interrogatory No. 6**

See the General Objections, *supra*. Moreover, Ms. Mandel objects to Interrogatory No. 6 on the ground that it is (i) overly broad and unduly burdensome and (ii) purports to require Ms. Mandel to recall hundreds of communications involving Daskal which took place when she was 15 and 16 years old and were sexually abusive and occurred during periods of time when Daskal, a pedophile and rapist, was grooming Ms. Mandel for Daskal's sexual and emotional abuse of her and actually engaging in such abuse.

4

**Response to Interrogatory No. 6**

Subject to the foregoing Objections, Ms. Mandel states that the Office of the District Attorney for Kings County and the Office of the United States Attorney for the Eastern District of New York has for years had possession of electronic communications and all other communications between defendant Daskal and Ms. Mandel. In order to protect her emotional state, Ms. Mandel does not have possession, custody or control of electronic communications or other forms of communication between defendant Daskal and herself since she long ago provided federal and state law enforcement authorities with all such material and retained no copies. Ms. Mandel will not oppose or support any effort defendant Daskal may make to obtain any and all information regarding Daskal and Ms. Mandel from law enforcement authorities.

**Interrogatory No. 7**

Identify all persons likely to have knowledge or information relevant to the allegations in the Amended Complaint, including each person's Contact Information, and for each person so identified, describe the nature of his or her relevant knowledge.

**Objection to Interrogatory No. 7**

See the General Objections, *supra*.

**Response to Interrogatory No. 7**

Subject to the foregoing Objections, Ms. Mandel states that defendant Daskal himself has "knowledge or information" relevant to the allegations of the Amended Complaint. Ms. Mandel in addition states that she has knowledge and information relevant to the allegations of the Amended Complaint.

Moreover, the following individuals are "likely to have knowledge or information" relevant to the allegations of the Amended Complaint:

5

- Bella Daskal;

- Pearl Dembitzer;

- Leiby Dembitzer;

- Chaya Bornstein;

- Chaim Daskal;

- Esther Brody;

- Rose Teitelbaum;

- Benzion Daskal;

- Arthur Aidala;

- Chavi Fischbein;

- Isaac Fischbein;

- Craindell Z. Mannes;

- Rabbi Ben Zion Halberstam;

- Chaim Halberstam;

- Lipa "Nussy" Brauner;

- Mutty Brauner;

- Pesach Greenberg;

- Chaim Fleischer;

- Representatives of Boro Park Shomrim;

- Representatives of Bais Yaakov High School of Chicago;

- Representatives of Congregation Shaarei Zion of Bobov;

- Representatives of Yad Ephraim a/k/a Ezras Cholim Yad Ephraim; and

- Partners, associates and employees of Meister Seelig & Fein.

6

**Interrogatory No. 8**

Identify all members of law enforcement whom You contacted or spoke with concerning the allegations in the Amended Complaint, including each person's Contact Information.

**Objection to Interrogatory No. 8**

See the General Objections, *supra*. In addition, Ms. Mandel objects to Interrogatory No. 8 on the ground that, as framed, it is overly broad and unduly burdensome.

**Response to Interrogatory No. 8**

Subject to the foregoing Objections, Ms. Mandel recalls to the best of her present ability that she had "contact" with the following "members of law enforcement:"

- Detective Aubrey Henry
  New York City Police Department
  Brooklyn Special Victims Squad
  (929) 291-8836
  aubrey.henry@nypd.org;

- Assistant District Attorney Kevin O'Donnell
  Kings County District Attorney's Office
  (347) 486-2817
  odonnellk@brooklynda.org;

- Special Agent Aaron Spivack
  Federal Bureau of Investigation
  (202) 731-9413
  aespivack@fbi.gov;

- Assistant U.S. Attorney Erin Reid
  U.S. Attorney's Office
  (347) 262-7754
  Erin.Reid@usdoj.gov; and

- Assistant U.S. Attorney Genny Ngai
  U.S. Attorney's Office
  Genny.Ngai@usdoj.gov.

**Interrogatory No. 9**

Identify all individuals with whom You have communicated about Defendant, including each individual's Contact Information, and state the date, time, method, and substance of each communication.

7

**Objection to Interrogatory No. 9**

See the General Objections, *supra*. Ms. Mandel, moreover, objects to Interrogatory No. 9 on the ground that it is overly broad and unduly burdensome.

**Response to Interrogatory No. 9**

Subject to the foregoing Objections, *see* the Response to Interrogatory No. 8, *supra*. Ms. Mandel also had communications with Judge Garaufis.

**Interrogatory No. 10**

Identify the location(s) and custodian(s) of all of Plaintiff's documents concerning the allegations in the Amended Complaint.

**Response to Interrogatory No. 10**

All documents germane or relevant to the allegations of the Amended Complaint are in the possession, custody and control of state and federal law enforcement authorities, as well as in the possession of the Clerk of the United States District Court for the Eastern District of New York and the Pre-Trial Services Department of the Eastern District of New York. Ms. Mandel retained no copies of material responsive to this interrogatory.

**Interrogatory No. 11**

Identify all individuals whom Plaintiff intends to call as fact witnesses at the trial of this Action, including each person's Contact Information, and for each such person, provide a description of your understanding of the person's relevant knowledge or anticipated testimony.

**Response to Interrogatory No. 11**

At the present time, Ms. Mandel intends to testify as a fact witness at the trial of this action.

**Interrogatory No. 12**

Identify each medical provider, physician, therapist, psychiatrist, or other person or entity from whom Plaintiff sought or received any treatment as a result of the alleged actions by Defendant, including each person's or entity's Contact Information, and for each person or entity state the time period of Plaintiff's treatment.

**Objection to Interrogatory No. 12**

See the General Objections, *supra*.

**Response to Interrogatory No. 12**

Subject to the foregoing Objections, Ms. Mandel has discussed Daskal and the relevant events with Melissa Green-Jackson, a therapist and Licensed Professional Counselor.

**Interrogatory No. 13**

Describe the circumstances in which Plaintiff and Defendant first met each other, including the date and location.

**Objection to Interrogatory No. 13**

See the General Objections, *supra*.

**Response to Interrogatory No. 13**

Subject to the foregoing Objections, Daskal first "met" Ms. Mandel when she was 15 years old.

**Interrogatory No. 14**

Identify all of Plaintiff's Social Media account names or "handles" used from the time when Plaintiff and Defendant first met each other until the present.

**Objection to Interrogatory No. 14**

See the General Objections, *supra*.  In particular, Ms. Mandel objects to this interrogatory on the ground that (i) it is not reasonably calculated to lead to admissible evidence, (ii) it seeks information to which Daskal's attorneys have full access, and (iii) any "social media" communications are in the possession, custody and control of law enforcement authorities related to the state and federal indictments of Daskal.

**Interrogatory No. 15**

Describe any instance of physical, sexual, or emotional abuse that Plaintiff has ever experienced committed by someone other than Defendant, and for each such instance, identify the person or persons who committed or allegedly committed the abuse, including that person's Contact Information.

**Objection to Interrogatory No. 15**

See the General Objections, *supra.*

**Interrogatory No. 16**

Identify all educational or academic institutions or entities at which Plaintiff has ever been enrolled or registered, and for each such institution or entity, state the dates when Plaintiff was enrolled or registered.

**Objection to Interrogatory No. 16**

See the General Objections, *supra.*

**Interrogatory No. 17**

Identify all employers and employment that Plaintiff has ever had, whether full-time or part-time, regardless of compensation status, including volunteer or charitable engagements, and for each such employer, state the dates when Plaintiff was employed or otherwise engaged.

**Objection to Interrogatory No. 17**

See the General Objections, *supra.*

**Interrogatory No. 18**

Identify every (a) residence at which Plaintiff has ever lived and (b) legal guardian that Plaintiff has ever had.

**Objection to Interrogatory No. 18**

See the General Objections, *supra.*

**Interrogatory No. 19**

State every name, nickname, alias, or identity that Plaintiff has ever used, gone by, been known as, or been associated with.

10

**<u>Objection to Interrogatory No. 19</u>**

See the General Objections, *supra*.

Dated: New York, New York
January 28, 2026

PAUL BATISTA, P.C.

By: _____

Paul Batista
*Attorney for Plaintiff*
*Rivka Mandel*
26 Broadway, Suite 1900
New York, New York 10004
631 377 0111
Batista007@aol.com

Signature as to Objections:

TO:   MEISTER SEELIG & FEIN PLLC
*Attorneys for Defendant*
*Jacob Daskal*
125 Park Avenue, 7th Floor
New York, New York 10017
212 655 3500
ms@msf-law.com
sma@msf-law.com

11

## Certification

RIVKA MANDEL, who is over the age of 18 years, hereby certifies under penalty of perjury that the foregoing response to defendant's interrogatories is true and accurate to the best of her knowledge, information and belief.

RIVKA MANDEL

Dated: January 28, 2026