

May 1, 2026

Hon. Vera M. Scanlon, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

By Electronic Filing.

**Re:** **Mandel v. Daskal, 23-cv-07352**

Dear Judge Scanlon:

My firm and co-counsel are in the process of being retained by Ms. Mandel in the case above, after the conference last week. I write, pursuant to the Court's Individual Practice § III(b) to move for sanctions, and pending that motion, for a TRO restraining prior counsel from directly contacting Ms. Mandel.[1]

This comes in the wake of an unexplained, snide, and improper communication directly to Ms. Mandel from prior counsel, despite multiple requests to cease contacting a represented party directly. Basic ethical norms like this should not need to be addressed by the Court, but at this stage, there does not appear to be another option.

## Background.

As previous letters explain (ECF Nos. 141 and 144), my firm took over representing Ms. Mandel on April 17, 2026. In notice to prior counsel, I was clear: "we can facilitate any further communication with Ms. Mandel that needs to happen about the case if there is any." Ms. Mandel also, on April 17, directly said: "Dear Allen[,] I wanted to give you a heads up that I've decided to retain new counsel for this case." Despite that, Mr. Lowy responded, asserting an unethical lien: "You do know that Paul retains a 33% attorney's lien on any settlement/ recovery." *But see Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 458 (1989). Then, on April 20, Ms. Mandel received both a phone call and further written direct communication from Mr. Lowy.

So, I sent a third, perfectly clear direction: "You may not have further direct communications with Ms. Mandel." At the same time, we also became aware that Mr. Lowy was trying to be something that could generously be called clever about things, having written to Mr. Batista (and apparently BCC'd Ms. Mandel):

---

[1] In light of the in line images below, which I have used for easier review, I ask the Court to excuse the fact that this letter is slightly overlength. Using exhibits, it would be under length, but I believe the in-line images make things clearer and the motion seeks emergent relief.



From: **Lowy, Allen** <amlowy@amllaw.com>
Date: Mon, Apr 20, 2026 at 11:12 AM
Subject: Mandel vs. Daskal et al
To: Paul Batista <Batista007@aol.com>

Paul, good morning,
A few things re Rivka's case:
1. While you heard from Rivka's purported new counsel Remy Green, I believe Rivka, as the client, needs to advise you directly that she is terminating you.
2. As you instructed, I will not request a transcript copy of last week's conference with Judge Scanlon.
I hope Rivka's new counsel immediately requests the file (documents, photos, etc.) from the US Attorney's office. This is especially important since the defendant's counsel agreed (albeit reluctantly) on the record to support the request when we cornered them. In fact, the transcript will indicate they consented at least three times.
They are extremely worried about the disclosure because I highly doubt the defendant will "allow" the file to be made public. After all, the only reason he agreed to plead to the one count and avoid trial is because he was terrified of the information (including, sadly, the lewd photos and texts he sent to Rivka) becoming public.

The transcript will also indicate all rapidly approaching deadlines.

Regards -
Allen

That is, Mr. Lowy was refusing to acknowledge the messages he received as terminating him, and apparently acting as if, until Ms. Mandel said not to contact her personally, he was free to do so. So, as a ***fourth*** notice, Ms. Mandel said: "***Please communicate with me through counsel.***" Despite that, Mr. Lowy has elected to continue communicating directly:

Today

Good luck getting anything after par 2f in the proposed order 3:18 PM

I'm sorry, I have no idea what you're talking about. 3:23 PM

Read your lawyer's proposed protective order he/she/they/them/MX agreed to. D will never settle now. 3:29 PM

Disaster (sorry) 3:38 PM



That is, after being terminated, Mr. Lowy — puzzlingly, given that all that was agreed to was that *either party* may designate sexually explicit material confidential and challenge that designation, with no comment about "getting anything" — continued to attack new counsel.  And on top of that, he added comments that on their face violate Rule 8.4(g).[2]

Obviously, as the Court observed at the last conference, given the traumatic nature of the case, raising things — pointless things — for her to worry about is, put gently, not exactly trauma-informed lawyering.  Attacking the progress of the case and describing it as a "disaster" triggers a traumatized reaction.  And Mr. Lowy knew — or should have known — that was exactly what he was doing.

Before making this motion, I raised Mr. Lowy's messages and asked him if there was some explanation for his conduct.  I have not received a response.

### Discussion.

The Court should sanction Mr. Lowy under Rules 4.2 and 8.4(g).  And pending decision on that motion, it should enter a TRO barring him from further unethical contact with Ms. Mandel.

### I.  Mr. Lowy's Contact is Unethical.

As noted above, Mr. Lowy has been unethically contacting Ms. Mandel directly for some time, and after at least four rounds of notice.  He has used that unethical contact to mislead her about what the nature of a lien is, specifically to deter her from retaining new counsel — and apparently counsel better able to engage in trauma-informed lawyering.

As the New York City bar has directly explained, "when a lawyer knows that the former client has secured new counsel, *Rule 4.2 prohibits direct contact regarding any matter within the scope of the representation* — even where the lawyer is acting pro se — unless the lawyer obtains the prior consent of successor counsel."  N.Y.C. Bar Ass'n Comm. on Prof'; Ethics, Formal Op. 2011-01 (emphasis added).  And while some contact may be permitted for reasons not applicable here, like non-payment of bills, there is no question that commenting on what is a "disaster" (above) in the litigation is "within the scope of the representation." *Id.*

A "federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v NASCO, Inc.*, 501 US 32, 43 (1991).  And "[a]lthough violations of the Rules do not always warrant disqualification" — not at issue here — the Rules provide helpful guidance to a court in exercising its inherent authority." *Northwestern Natl. Ins. Co. v Insco, Ltd.*, 2011 US Dist LEXIS 132107, at *13, n 34 (SDNY Nov. 15, 2011).  While, thankfully, similar cases involving *attorneys* are exceptionally rare, courts analyzing similar issues seem to agree there is authority to govern this sort of conduct. *Murphy v Wilhelm*, 2021 US Dist LEXIS 38783, at *7, n 4

---

[2] I have raised the correct way to refer to me in communications with Mr. Lowy before.  His kitchen sink approach to referring to me is both disrespectful and unethical for an attorney.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



(D Or Mar. 2, 2021) (prohibiting even a pro se litigant from directly contacting represented parties, relying on Rule 5.2).

Mr. Lowy appeared, and has not been discharged. Indeed, there is a pending motion to compel him to transfer the files he is retaining. Accordingly, the Court should sanction him for plainly unethical conduct,[3] and it should — to prevent further harm in the interim — issue a TRO prohibiting further contact, like the order required to manage a pro se litigant in *Murphy,* above.

## II. The Court Should Also Sanction Mr. Lowy for His Violation of Rule 8.4(g).

It is clear that bias-based mocking is sanctionable. "[D]iscriminatory conduct on the part of an attorney is inherently and palpably adverse to the goals of justice and the legal profession." *Principe v. Assay Partners*, 154 Misc. 2d 702, 705 (Sup. Ct., N.Y. County, 1992) (sanctioning attorney for sexist conduct). "[A]n attorney's conduct that projects offensive and invidious discriminatory distinctions based on race or gender is especially offensive." *Laddcap Value Partners, LP v. Lowenstein Sandler P.C.*, 18 Misc. 3d 1130(A), 2007 WL 4901555, at *6 (Sup. Ct., N.Y. County, 2007). And Rule 8.4 of New York's Rules of Professional Conduct bars discrimination based on "gender identity or gender expression," while Model Rule 8.4(g) was amended specifically to add those categories to its requirement that attorneys respect the dignity of all people they serve (or oppose in court).[4] Deliberate misgendering alone is unethical, because it is discriminatory.[5]

Particularly because it was involved in an already unethical communication — and accordingly ***could*** not raise any First Amendment issues, because there is no right for him to speak at all in this context — Mr. Lowy's choice to mock the gender of another member of the bar is both disappointing and sanctionable. Sadly, I have had occasion to deal with similar kitchen sink approaches before, and Courts have called it "ill-advised bullying behavior," even without a sanctions request. *Aitcheson-Valentin v Act Up/N.Y., Inc.*, 2025 NY Slip Op 33762[U], n 1 (Sup Ct, NY County 2025).

---

[3] Whether, having appeared as Mr. Batista's "associate," Mr. Lowy's unethical conduct waives any lien Mr. Batista has is an issue for another day.

[4] See 22 N.Y.C.R.R. 1200, Rule 8.4(g); Professional Ethics Committee of the New York City Bar, *Formal Opinion 2020-4: Unlawful Discrimination in the Practice of Law* (Dec. 1, 2020) ("even though gender identity is not within the list of protected categories, a lawyer who discriminates against a transgender employee violates Rule 8.4(g)"); American Bar Association, *Model Rules of Professional Conduct*, Rule 8.4(g).

[5] *See, e.g.,* New York City Admin. Code. N.Y.C. Admin. Code § 8-102(23) ("Examples of Violations," [a] "[i]ntentional or repeated refusal to use a person's name, pronouns, or title. For example, repeatedly calling a transgender woman 'him' or 'Mr.' after she has made clear that she uses she/her and Ms." and [b] "[r]efusal to use a person's name, pronouns, or title because they do not conform to gender stereotypes. For example, insisting on calling a nonbinary person 'Mr.' after they have requested to be called 'Mx.'"); *accord In re Tutu Wells Contamination Litigation*, No. 1989-107, 1994 WL 16894452 (D.V.I. 2004) (sanctioning counsel for masturbatory gesture towards female opposing counsel); *EN v. Gallagher's Bar and Lounge*, 2021 HRTO 240 (Human Rights Tribunal of Ontario, 2021), ¶¶ 31 ("mis-gendering or the use of incorrect pronouns is adverse treatment with respect to the applicants' employment").

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Here, however, given that the *goal* of the mocking was seemingly to imply a non-binary person would *never* be fit to practice law — why else send it to a former client? — the mocking was more than mere bullying.  And the kitchen sink approach, after notice, necessarily implies intent: Because it includes every possible option, it both ensures that *some* misgendering happens, and it conveys directly the sentiment that being asked to offer basic respect for a transgender colleague is distasteful.

As always, we thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____

J. Remy Green
    *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com