**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RIVKA MANDEL,<br><br>         *Plaintiff,*<br>    v.<br><br><br>JACOB DASKAL,<br><br>         *Defendant* | Case No.: 23-cv-7352-RER-VMS |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER**
**MOTION REQUESTING THE COURT DETERMINE AND SETTLE**
**PRIOR COUNSEL'S CHARGING LIEN**

J. Remy Green
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood (Queens), New York 11385
t : (929) 888-9480
f : (929) 888-9457
e : remy@femmelaw.com

June 4, 2026

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iv

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

LEGAL ARGUMENT...................................................................................................... 5

I.    THE GENERAL METHODOLOGY FOR FIXING A CHARGING LIEN......................... 5

    A.    A Court should fix the charging lien at the time of discharge when possible. ................... 5

    B.    Charging liens under state law are enforced by Federal Courts. ....................................... 5

    C.    Charging liens reflect an equitable valuation of an attorney's services, and are not calculated using the terms of any retainer.................................................................................. 6

    D.    A charging lien may not ethically force a client to pay more than a third of a personal injury recovery in total............................................................................................................... 7

    E.    The lodestar method is a reasonable approach to calculate the *quantum meruit* value of an attorney's services............................................................................................................ 8

    F.    An attorney is not entitled to any fee if they are discharged for cause, and determining whether an attorney was discharged for cause generally requires a hearing. ........................... 9

II.    THE COURT SHOULD SEVER THE RELEVANT PART OF THE CLAIM AND ENTER JUDGMENT ON ATTORNEYS' FEES DUE TO PRIOR COUNSEL. ...................................... 9

III.    A HEARING WOULD LIKELY BE REQUIRED TO FIX A *QUANTUM MERUIT* LODESTAR LIEN.......................................................................................................... 11

IV.    IF THE COURT DOES NOT SEVER THE FEE ENTITLEMENT AND RELATED CLAIM, THE COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER THERE IS ANY LIEN AND THE AMOUNT OF THE LIEN. ............................................................... 12

A.   If the Court credits Prior Counsel's statement he terminated his own representation he has no entitlement to any lien............................................................................................... 12

B.   A hearing would be required to determine whether Prior Counsel was terminated for cause.......................................................................................................................... 14

C.   To the extent the Court allows a contingency-based lien despite Prior Counsel's failure to make that election, it should (1) clarify that it will not entertain an unethical lien and (2) otherwise await resolution of the case to determine the amount of any lien based on the work actually done at that point. ...................................................................................... 15

CONCLUSION............................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonmarchi v. Consol. Edison of N.Y.*,
  678 F. Supp. 2d 235 (S.D.N.Y. 2010) ..................................................................................... 9

*Baker v Granite City*,
  112 Ill App 3d 1096, 68 Ill Dec 625, 446 NE2d 531 (1983)................................................ 15

*Brennan v. New York Law Sch.*,
  No. 10 Civ. 0338, 2012 U.S. Dist. LEXIS 135095 (S.D.N.Y. Aug. 15, 2012) ...................... 6, 8

*Doe v Musselman*,
  2025 US Dist LEXIS 196883, at *3 ...................................................................................... 10

*Fracasse v Brent*,
  6 Cal 3d 784 (1972) ............................................................................................................. 15

*Hampshire Grp. Ltd. v. Scott James Co., L.L.C.*,
  2015 U.S. Dist. LEXIS 121393, 2015 WL 5306232 (S.D.N.Y. July 27, 2015)........................ 9

*Holcombe v US Airways Group, Inc.*,
  2017 US Dist LEXIS 214656, at *31 (EDNY July 31, 2017).................................................. 14

*In re Sather*,
  3 P3d 403 (Col 2000) ........................................................................................................... 15

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
  140 F.3d 442 (2d Cir. 1998) .................................................................................................... 6

*Joffe v Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C.*,
  827 F App'x 35 (2d Cir 2020) ............................................................................................... 13

*Kovach v. City Univ. of N.Y.*,
  2015 U.S. Dist. LEXIS 73176, *9-10, 2015 WL 3540798 (S.D.N.Y. June 4, 2015)............. 6, 9

*Lai Ling Cheng v Modansky Leasing Co.*,
  73 NY2d 454 (1989)........................................................................................................*passim*

*Lombardo v. JPMorgan Chase Bank, N.A.*,
  2026 U.S. Dist. LEXIS 85152 (S.D.N.Y. April 8, 2026) ......................................................... 5

*Mason v. City of New York*,
  67 A.D.3d 475, 889 N.Y.S.2d 24 (1st Dep't 2009).................................................................. 9

*M.B. v Landgraf,*
  2020 US Dist LEXIS 166378, at *2 (ED Tex Sep. 11, 2020) .................................................. 10

*Merrill Lynch Commer. Fin. Corp. v RCI Jewelry Corp.,*
  2011 US Dist LEXIS 17028, at *16 (EDNY Feb. 22, 2011) ................................................... 10

*Milner v. City of New York,*
  No. 10 Civ. 9384, 2012 U.S. Dist. LEXIS 108317, 2012 WL 3138110 (S.D.N.Y. Aug. 2, 2012) ............................................................................................................................... 9

*Minott v. Google LLC,*
  2024 U.S. Dist. LEXIS 131125, 2024 WL 3518525 (S.D.N.Y. Jul. 24, 2024) ..................... 6, 8

*Sequa Corp. v. GBJ Corp.,*
  156 F.3d 136 (2d Cir. 1998) ........................................................................................... 8, 9, 11

*Stair v. Calhoun,*
  722 F. Supp. 2d 258 (E.D.N.Y. 2010) ............................................................................ 6, 8, 11

*Sutton v. N.Y. City Transit Auth.,*
  462 F.3d 157 (2d Cir. 2006) ...................................................................................................... 6

*Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.,*
  370 F.3d 259 (2d Cir. 2004) ......................................................................................... 9, 11, 12, 14

*Winkfield v. Kirschenbaum & Phillips, P.C.,*
  2013 U.S. Dist. LEXIS 12093 (S.D.N.Y. Jan. 29, 2013) .................................................... 5, 6, 9

**Statutes and Rules**

18 U.S.C. § 2255 ........................................................................................................................ 9, 10

22 N.Y.C.R.R. 1015.15 .................................................................................................................. 7, 8

N.Y. Jud. L. § 475 .......................................................................................................................... 5, 6

Fed. R. Civ. P. 21 ........................................................................................................................... 10

**Other Authorities**

A.B.A. MODEL RULES, R. 1.5 ...................................................................................................... 5, 7

Am. Bar Assoc.,
  *Establishing a Trauma-Informed Lawyer-Client Relationship* (Oct. 1, 2014) ........................ 14

*Fee Division with Client's Prior Counsel*,
   ABA Formal Op. 487 (June 18, 2019) ........................................................................ 5, 7, 16

Brenda Star Adams & Sarah Abraham,
   *Trauma-informed lawyering is our professional responsibility*, Cal. Lawyer Daily J. (Mar 10, 2023) ................................................................................................................................ 13

Lynette M. Parker,
   *Increasing Law Students' Effectiveness When Representing Traumatized Clients: A Case Study of the Katherine & George Alexander Community Law Center*,
   21 Geo. Immig. L.J. 163 (2007) ........................................................................................ 13

Rachel White-Domain,
   TRAUMA-INFORMED LEGAL ADVOCACY: PRACTICE SCENARIOS (2014).................................... 13

## PRELIMINARY STATEMENT

Plaintiff, Rivka Mandel, respectfully requests the Court issue an Order setting the fee of her prior attorneys Paul Batista and Allen Lowy ("Prior Counsel"[1]). From the outset of this attorney transition, Remy Green and Jessica Massimi (Plaintiff's "Current Counsel") have requested Mr. Batista state whether he would like to take compensation for any charging lien based on a presently fixed dollar amount based upon *quantum meruit* or elect a contingent percentage fee based on the proportionate share of the work performed on the whole case, citing the governing cases. *See, e.g., Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 458 (1989).

Mr. Batista has repeatedly declined to make the "elect[ion]" (*id.*) or otherwise state the basis or amount of the lien he claims, other than claiming he is entitled to all attorneys' fees ever received from the case, regardless of Current Counsel's work. For the reasons set forth below and discussed at the May 26, 2026 Court conference, Plaintiff respectfully requests the Court set Mr. Batista's fee now, and outlines the three possibilities for setting that fee below — with the first being the option that Plaintiff believes is most efficient and equitable, since it avoids the need to litigate over whether discharge was for cause. Those options are:

1. The Court sever so much of the judgment already granted as covers the mandatory, statutory award of attorneys' fees covering fees through the date of substitution, and allow Prior Counsel to make a fee application and recover those fees from Defendant based on the lodestar;

2. The Court hold a hearing on whether counsel terminated his own representation or was discharged for cause and if neither, either:

   a. At the same hearing, fix — using a lodestar — a present dollar value based in *quantum meruit* for Prior Counsel's fees, and set that as the charging lien going forward; or

   b. Rule it will allow a "contingent percentage fee based on the proportionate share

---

[1] Mr. Lowy worked on the case as Mr. Batista's "associate" (2026-04-16 Tr. at 2:5-8) but apparently did only minimal work. This motion addresses any lien he may have together with any lien Mr. Batista has, but since the primary relevant person is Mr. Batista, this memo uses "he" and "him" as the relevant pronouns for "Prior Counsel."

1

of the work performed on the whole case," and therefore delay resolving this issue until "the conclusion of the case" (*Lai Ling Cheng*, 73 NY2d at 458), while clarifying that the lien **will** be calculated based on "the proportionate share of the work performed on the whole case" (*id.*), not an unethical demand the client pay more than 1/3 of her recovery in total.

For obvious reasons, particularly given the amount of the case still left to litigate and the need to know the nature of a lien to intelligently discuss settlement,[2] it would be far better to fix as much as possible of the charging lien immediately. And given that a *quantum meruit* lien calculated the traditional way would be substantively identical to a fee application in fixing the reasonable entitlement (since both are calculated using a lodestar method), it would appear far more efficient and presumably even preferable for Prior Counsel to be paid out now — and would effectively be the same substantive result as a lodestar *quantum meruit* lien, since there is a judgment on a fee statute, and with a lodestar *quantum meruit* lien Plaintiff would simply increase her demand/viable settlement calculations to include that fixed amount anyway.

## STATEMENT OF FACTS

On May 19, 2026, Plaintiff Rivka Mandel's Prior Counsel filed a stipulation signed by him and Substitution Counsel reflecting their agreement to the change in Plaintiff's attorney. On May 26, 2026, the Court granted Plaintiff's request to change attorney. 2026-05-26 Tr. at 17:24-18:21.

On April 17, 2026, Remy Green emailed Prior Counsel, Paul Batista notifying him that Mx. Green and their firm, Cohen & Green PLLC, were in the process of being retained by Ms. Mandel. In that email, Mx. Green requested transfer of the file and confirmed their firm would pay any retaining lien. At this time, Mr. Batista and his associate Allen Lowy informed Ms. Mandel that despite impending substitution of counsel, that they would nonetheless still be entitled to 1/3

---

[2] As further explored below, though the caselaw appears clearthe lien it appears Prior Counsel is asserting — a full 1/3 of any recovery to Prior Counsel with Current Counsel required to take any further payment out of the client's share — is unethical and impermissible, the shadow of that threat would make any settlement discussion more difficult.

2

of any future recovery by Plaintiff. In the April 17, 2026 email, Mx. Green raised this issue explaining Plaintiff's position that the contingency fee amongst all attorneys could not exceed 1/3. Mx. Green attempted to resolve this issue in this email and several subsequent emails, proposing resolutions for Mr. Batista to set the amount of his fee. On April 20, 2026, Prior Counsel, Paul Batista, filed a motion to withdraw as Plaintiff's attorney. ECF No. 139.

On May 26, 2026, all parties including Prior Counsel appeared for a hearing and conference before Judge Scanlon. During this conference, the Court asked Mr. Batista how he would like to assess his fee. Specifically, the Court and Mr. Batista had the following exchanges where Mr. Batista refused to state what lien he was claiming:

"THE COURT: All right, but are you claiming -- okay. What about your charging lien?

MR. BATISTA: I am not giving that up.

THE COURT: Have you clarified with your still current client[] even if you're not communicating what the amount of that is, what you understand that to be?

MR. BATISTA: Have not discussed it with the client or her new counsel.

THE COURT: How do you propose that that issue be clarified so that going forward the plaintiff and possible new counsel can be clear as to what the financial arrangements are both between you and the plaintiff and proposed incoming counsel and the plaintiff and between you all? So hypothetically, if this case were to be decided in plaintiff's favor, say it went all the way to trial and plaintiff were to succeed, whatever the terms were of your October 23rd agreement might entitle [you] to part of that money. And one question I would immediately have would be what would be the basis if you had some sort of arrangement for a proportion of that amount? You know, there's lots of different ways these things get resolved. Sometimes it's a quantum meruit claim, sometimes it's a quasi-fee application, a little different from quantum meruit but mostly taking the idea of the amount of work that you've done. What are you proposing here?

MR. BATISTA: Issues such as this get resolved either through compromise or through litigation. My position today remains I am not relinquishing the 1charging lien I have under New York law. I'm not negotiating it today, I'm not litigating it today. It's an issue that will get resolved in due course, not today.

THE COURT: Okay. To be clear, I'm determining what's happening here because you might end up staying in this case. So you either want out and you're clear about what your financial arrangements are with your client and with incoming counsel, not necessarily here

3

in public. … don't need to know the particulars right now. But we're not going forward with ambiguity unless everyone involved is clear as to what is happening. … So what have you done to make clear to the client and proposed counsel what the basis for any proposed lien or claim that you have on the file?

MR. BATISTA: I have made absolutely clear that under my retainer agreement and under New York law I'm entitled to one-third of whatever she recovers if in fact she recovers anything. And my views on that are my views. There may be no issue. If she doesn't recover anything, then I get zero.

THE COURT: I'm going to ask proposed new counsel what you suggest. I doubt you're working for free and you're optimistic because there might be some recovery for the plaintiff. So –

MR. BATISTA: I have no optimism whatsoever.

THE COURT: I'm not asking you, I'm asking the proposed new counsel.

MR. BATISTA: I have no optimism whatsoever.

THE COURT: I'm not talking to you. I'm talking to the proposed new counsel.

2026-05-26 Tr. at 6:18-10:22.

The form or amount of the lien was thus not resolved at the conference and the Court suggested that Plaintiff's Current Counsel consider initiating motion practice regarding this issue to resolve the fee issue now, so that it would not impede any future potential settlement of this case. *See, e.g.,* 2026-05-26 Tr. at 13:9-18:11 (the Court noting, among other things, "to the extent that you are trying to negotiate something, which I'm not saying we're there yet or that you're there yet, but a settlement that deals with an unknown amount seems very difficult to achieve" and "I think it makes sense to be addressing [the amount and form of any lien] sooner rather than later to the extent that there can be  negotiations about how this case might get resolved short of a trial.").

The Court made clear "it's up to current counsel to resolve this," and "sooner rather than later" was the best timeframe for a motion. *Id.* And Plaintiff agrees that this issue is best resolved now.  Moreover, based on statements made by Mr. Batista and Mr. Lowy, Ms. Mandel is concerned that her Prior Counsel may sue her to recover more than is required by the New York Judiciary

4

law.   While such litigation would be baseless and not supported by the law, Ms. Mandel is nonetheless concerned that litigation with her prior counsel would persist beyond resolution of this matter and would like to avoid this.  She is also, like the Court, concerned about and unwilling to have an unknown lien hanging over this litigation when resolution is possible.

## LEGAL ARGUMENT

I.   **THE GENERAL METHODOLOGY FOR FIXING A CHARGING LIEN.**

A.   **A Court should fix the charging lien at the time of discharge when possible.**

"The charging lien should be fixed at the . . . fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit.*" *Winkfield v. Kirschenbaum & Phillips, P.C.,* No. 12 Civ. 7424, 2013 U.S. Dist. LEXIS 12093, 2013 WL 371673, at *2 (S.D.N.Y. Jan. 29, 2013).

As the ABA — citing the Model Rules of Professional Conduct — has explained, this need for prompt determination is because "'[a]n understanding as to fees . . . must be promptly established.'"  *Fee Division with Client's Prior Counsel*, ABA Formal Opinion 487 (June 18, 2019) ("ABA Form. Op. 487")*,* quoting MODEL RULES R. 1.5 cmt. 2.

B.   **Charging liens under state law are enforced by Federal Courts.**

"A charging lien is an equitable interest in a client's cause of action." *Lombardo v. JPMorgan Chase Bank, N.A.,* 2026 U.S. Dist. LEXIS 85152 (S.D.N.Y. April 8, 2026). Section 475 of New York's Judiciary Law, which governs attorneys' charging liens provides:

> "From the commencement of an action . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien."

5

N.Y. Jud. L. § 475.

A lien created by Section 475 "is enforceable in federal courts in accordance with its interpretation by New York courts." *Minott v. Google LLC,* 2024 U.S. Dist. LEXIS 131125, 2024 WL 3518525, at *2 (S.D.N.Y. Jul. 24, 2024) (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448-49 (2d Cir. 1998)). "Federal courts have supplemental jurisdiction over motions to fix charging liens under [Section] 475." *Id.* It is within the sound discretion of the trial court to determine the reasonable value of an attorney's services. *Winkfield v. Kirschenbaum & Phillips, P.C.,* 2013 U.S. Dist. LEXIS 12093, 2013 WL 371673, at *2 (S.D.N.Y. Jan. 29, 2013).

### C.    Charging liens reflect an equitable valuation of an attorney's services, and are not calculated using the terms of any retainer.

The amount of fees the lawyer may recover from a charging lien is based on *quantum meruit* rather than the fee agreement between lawyer and client. *Kovach v. City Univ. of N.Y.*, 2015 U.S. Dist. LEXIS 73176, *9-10, 2015 WL 3540798 (S.D.N.Y. June 4, 2015). "A charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair.'" *Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted).

That is, "[t]he theory of *quantum meruit*, ***rather than the retainer agreement***, is the basis for determining the amount at which to fix the charging lien." *Stair v. Calhoun*, 722 F. Supp. 2d 258, 268-69 (E.D.N.Y. 2010) (emphasis added); *see also Brennan v. New York Law Sch.*, No. 10 Civ. 0338, 2012 U.S. Dist. LEXIS 135095, 2012 WL 4177736, at *2 (S.D.N.Y. Aug. 15, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 135083, 2012 WL 4195826 (S.D.N.Y. Sept. 20, 2012) ("An attorney discharged without cause is entitled to a charging lien for the reasonable value of his services even where, as here, the initial retention was on a contingent basis.").

6

**D.        A charging lien may not ethically force a client to pay more than a third of a personal injury recovery in total.**

As the ABA has explained, "[a]lthough Rules 1.5(b) and 1.5(c) do not specifically address obligations when one counsel replaces another, both rules are designed to ensure that the client has a clear understanding of the total legal fee, how it is to be computed, when it is to be paid, and by whom." ABA Form. Op. 487.  And, indeed, "'[a]n understanding as to fees . . . must be promptly established.'"  *Id.,* quoting MODEL RULES R. 1.5 cmt. 2.  Accordingly, the ABA has found an ethical duty for successor counsel to ensure the client is aware that the "right to terminate a lawyer's representation at any time," "does not necessarily extinguish an obligation to pay prior counsel for the value of the work performed – the *quantum meruit* claim – or in some cases a termination amount specified in the predecessor counsel's fee agreement."  *Id.*

But as the ABA also explains, the black letter rule is simple: "***A client cannot be exposed to more than one contingent fee*** when switching attorneys, given that under the Rule 1.5(a) factors, each counsel did not perform all of the services required to achieve the result. Thus, neither the predecessor nor the successor counsel ordinarily would be entitled to a full contingent fee."  *Id.* (emphasis added).  And thus, "Rule 1.5(a) requires that any fee be reasonable, ***including the total fees of predecessor and successor counsel***, and client consent is required for all disbursements, including all fees payable to predecessor and successor counsel."  *Id.* (emphasis added).

The basic rule is clear:  the lawyers in a case may ask for "[a] percentage not exceeding 33 1/3 percent of the sum recovered," and "retention or sharing of compensation which is in excess of such scheduled fees shall constitute the exaction of unreasonable and unconscionable compensation in violation of the applicable provisions of the Rules of Professional Conduct."  22

7

N.Y.C.R.R. 1015.15.[3]  And the fact that there are multiple attorneys does not allow an attorney to assert a lien that ensures a client will need to pay "unreasonable and unconscionable compensation in violation of the applicable provisions of the Rules of Professional Conduct."  *Id.*

**E.      The lodestar method is a reasonable approach to calculate the *quantum meruit* value of an attorney's services.**

As far as calculation, the Second Circuit has stated that the "lodestar approach is sufficiently congruent with the criteria applicable under New York law to justify such a choice of calculation methodology" in assessing the amount of a charging lien. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 149 (2d Cir. 1998); *see also Brennan*, 2012 U.S. Dist. LEXIS 135095, 2012 WL 4177736, at *3 (applying "lodestar" method in computing amount of charging lien).

Therefore, a Court looks to the familiar *Johnson* factors, as it would for any other lodestar fee calculation.  *See, e.g., Stair v Calhoun*, 722 F Supp 2d 258, 269 (EDNY 2010). "Among the factors to be considered in such an analysis are the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)."  *Sequa*, 156 F.3d at 148-49; *accord Stair*, 722 F Supp 2d at 269.

In addition, courts should "consider the rate a reasonable, paying client would pay and use that rate to calculate the presumptively reasonable fee." *Minott v. Google LLC*, 2024 U.S. Dist. LEXIS 131125, 2024 WL 3518525, at *4. "Hours that the court finds excessive, redundant, or vague are to be excluded, and courts have discretion to simply deduct a percentage of hours from the fee application." *Id.*

---

[3] There is an exception that "[i]n the event that claimant's or plaintiff's attorney believes in good faith that schedule A, in subdivision (b) of this section, because of extraordinary circumstances, will not give the attorney adequate compensation, application for greater compensation may be made upon affidavit with written notice and an opportunity to be heard to the client and other persons holding liens or assignments on the recovery." 22 N.Y.C.R.R. 1015.15(d).  There has been no such motion, or any suggestion that a full lodestar recovery would not be adequate compensation.

After analyzing the *quantum meruit* factors, courts may use a "lodestar analysis to reach a specific dollar figure." *Sequa,* 156 F.3d at 148. Lodestar analysis "results in a presumptively reasonable fee, which is calculated by multiplying the number of hours reasonably billed by the appropriate hourly rate." *Hampshire Grp. Ltd. v. Scott James Co., L.L.C.,* 2015 U.S. Dist. LEXIS 121393, 2015 WL 5306232, at *16 (S.D.N.Y. July 27, 2015) (report and recommendation).

**F.    An attorney is not entitled to any fee if they are discharged for cause, and determining whether an attorney was discharged for cause generally requires a hearing.**

Enforcement of a charging lien depends on whether the attorney was discharged for cause because if "a lawyer is discharged for cause, he or she is not entitled to legal fees." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004). And given that, the fact of a "for cause" discharge prohibits any charging lien. *Antonmarchi v. Consol. Edison of N.Y.*, 678 F. Supp. 2d 235, 241 (S.D.N.Y. 2010).

Generally, a "hearing is required to determine if [an attorney] was discharged for cause, and, if not, the amount of his fee on a quantum meruit basis." *Id.* at 241 (quoting *Mason v. City of New York*, 67 A.D.3d 475, 889 N.Y.S.2d 24, 25 (1st Dep't 2009)).[4]

**II.    THE COURT SHOULD SEVER THE RELEVANT PART OF THE CLAIM AND ENTER JUDGMENT ON ATTORNEYS' FEES DUE TO PRIOR COUNSEL.**

The Court has already granted Plaintiff summary judgment on liability "with respect to Count 1 against Defendant Jacob Daskel [under] 18 U.S.C. § 2255." ECF No. 130. Liability under

---

[4] With that said, courts do sometimes decline to hold such a hearing if the pre-hearing filings are sufficiently detailed. *See, e.g., Winkfield*, 2013 U.S. Dist. LEXIS 12093, 2013 WL 371673, at *3 (deciding issue of lien on a "careful review of the record"); *Milner v. City of New York*, No. 10 Civ. 9384, 2012 U.S. Dist. LEXIS 108317, 2012 WL 3138110, at *11 (S.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 176151, 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012) (deciding whether attorney was discharged for cause based on written submissions and finding no hearing necessary because none of the purported reasons proffered by Plaintiff were valid reasons to constitute discharge); *Antonmarchi*, 678 F. Supp. 2d at 238; *Kovach v. City Univ. of N.Y.*, 2015 U.S. Dist. LEXIS 73176, *10, 2015 WL 3540798 (S.D.N.Y. June 4, 2015).

18 U.S.C. § 2255 (or "Masha's Law") includes, with mandatory language, that a plaintiff "***shall*** recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, ***including reasonable attorney's fees*** and other litigation costs reasonably incurred." 18 U.S.C. § 2255 (emphasis added). In other words, here, Plaintiff has a judgment — albeit one not entered yet — that entitles her to recover attorneys' fees from Defendant, that covers all of Prior Counsel's work to date.

Just as they do for fixing a charging lien in *quantum meruit*, courts use the lodestar method to calculate fees under Masha's Law. *See, for examples specific to Masha's Law, M.B. v Landgraf*, 2020 US Dist LEXIS 166378, at *2 (ED Tex Sep. 11, 2020); *Doe v Musselman*, 2025 US Dist LEXIS 196883, at *3 CD Ill June 6, 2025).

Meanwhile, under Rule 21, "[o]n motion or on its own, the court may at any time … sever any claim against a party." Fed. R. Civ. P. 21. While Rule 21 — as reflected in its name — is traditionally used to address joinder issues, the Court's authority to sever specific claims is extremely broad. It is also not uncommon to sever attorneys' fees from damages. *See, e.g., Merrill Lynch Commer. Fin. Corp. v RCI Jewelry Corp.*, 2011 US Dist LEXIS 17028, at *16 (EDNY Feb. 22, 2011) (granting a request that "the issue of plaintiff's attorneys' fees (provided for in the loan and guaranty documents) be severed" and resolved separately from damages). And some courts have severed attorneys' fees claims in similar (or at least, analogous) postures. *See, e.g., JPMorgan Chase Bank, N.A. v BVS Acquisition Co. LLC*, 2022 NY Slip Op 30241[U], *3 (Sup Ct, NY County 2022) ("Summary judgment is thus granted as to liability on plaintiffs' claim for attorneys' fees and expenses, which claim is severed for determination by a Special Referee").

Here, severing so much of the already-granted judgment as provides for the "reasonable attorney's fees and other litigation costs reasonably incurred" by Prior Counsel (18 U.S.C. § 2255)

10

serves efficiency.  It resolves the charging lien without any further litigation or need to address whether discharge was for cause, whether Prior Counsel quit before being discharged, and so on. It also makes sure there is no lien — known or unknown — hanging over the case at all.

Moreover, given Prior Counsel's refusal to engage or answer the Court's most basic questions — and unwillingness to make the "elect[ion]" the law requires despite being asked at least four times by the Court and  at least half a dozen more by Current Counsel (*Lai Ling Cheng*, 73 NY2d at 458) — any objection to this methodology can and should be deemed waived.  The Court gave Prior Counsel every opportunity to make an ethical election as to the form of his lien, and he repeatedly refused to do so.  Given the requirement to fix (at least if possible) the line at the "time of the discharge" (*Stair v Calhoun*, 722 F Supp 2d 258, 268 (EDNY 2010)), the refusal and insistence on a *per se* unethical lien can and should have substantive consequences.  Since Prior Counsel has made a strategic decision not to participate in that discussion, the Court should pick the path it thinks is most effective and efficient — and the most useful in making sure there is "clarity along the way" to facilitate "negotiations about how this case might get resolved short of a trial."  2026-05-26 Tr. at 18:8-12.

### III.    A HEARING WOULD LIKELY BE REQUIRED TO FIX A *QUANTUM MERUIT* LODESTAR LIEN.

The most common mode of fixing a lien, as noted above, is to use a lodestar analysis. *Sequa Corp.*, 156 F.3d at 149.  As alluded to above, generally that means a "hearing is required to determine… the amount of [any] fee on a quantum meruit basis." *Universal Acupuncture*, 370 F.3d at 263.  Lodestar is more common among the modes of assessing *quantum meruit*.  But such analysis requires submissions and timesheets from Prior Counsel which have not been provided at this stage to Plaintiff, so — while counsel has stated he worked approximately 150 hours on the

11

case to date — she cannot present any view of what the reasonable fee would be or whether his asserted hourly rate is reasonable.

Thus, Plaintiff believes the severance approach in Point II above is far more efficient than the more traditional *quantum meruit* approach, particularly because (1) a lodestar fee calculation is going to be the same for a fee application and a *quantum meruit* analysis anyway, (2) Plaintiff is not in a position to make an appropriate opening submission about reasonable fees, (3) severance makes settlement discussions and knowledge about what happens next far simpler, and (4) that approach avoids the thorniness of dealing with whether termination was for cause or whether counsel withdrew voluntarily without good cause.

**IV.** **IF THE COURT DOES NOT SEVER THE FEE ENTITLEMENT AND RELATED CLAIM, THE COURT SHOULD HOLD A HEARING TO DETERMINE WHETHER THERE IS ANY LIEN AND THE AMOUNT OF THE LIEN.**

As noted above, to the extent the Court does not sever any fee entitlement by Prior Counsel, a "hearing is required to determine if [an attorney] was discharged for cause, and, if not, the amount of his fee on a quantum meruit basis." *Universal Acupuncture*, 370 F.3d at 263.

**A.** **If the Court credits Prior Counsel's statement he terminated his own representation he has no entitlement to any lien.**

Prior Counsel has taken the position that he was not terminated at all, but that he affirmatively withdrew from the case, apparently out of personal offense that a victim of child rape might have an emotional reaction to discussion of how those rapes impacted her. Specifically, he declared "I was never discharged for any reason," then explained "You [e.g., the Court] saw it. I had a client who walked out of this courtroom. That was offensive to me. More important, it was offensive to you. I've not heard a word from her." 2026-05-26 Tr. at 7-12.[5] He also noted, in

---

[5] The Court then clarified "I'm not taking it as offensive. I mean this is an emotionally challenging case." *Id.* at 16:13-15.

writing, ***he*** withdrew because "[g]iven Ms. Mandel's extraordinarily unacceptable conduct, I …

prep[ared a] motion to withdraw based on the obvious complete breakdown of my attorney-client

relationship with her and her outrageous behavior."  ECF No. 152 at 3.

If the Court credits Prior Counsel's statement that he terminated the representation,[6] there

is no lien unless his withdrawal was for good cause.  *Joffe v Javerbaum Wurgaft Hicks Kahn*

*Wikstrom & Sinins, P.C.*, 827 F App'x 35, 37 (2d Cir 2020).  Prior Counsel's declaration he was

offended by a rape victim needing to go cry outside of a courtroom after a difficult conference

addressing her Prior Counsel's failure to follow the discovery rules is not good cause.  Indeed,

when Prior Counsel attempted to suggest the Court was offended, it made clear it was not.[7]  If a

rape victim client having a serious emotional reaction were "good cause" for an attorney to

withdraw, those victims would often be left without attorneys — and in the difficult position of

needing to "unnecessarily repeat the story" of what happened to them (and thus placing themselves

at still more risk of more trauma reactions that would be good cause to withdraw). Lynette M.

Parker, *Increasing Law Students' Effectiveness When Representing Traumatized Clients: A Case*

*Study of the Katherine & George Alexander Community Law Center*, 21 Geo. Immig. L.J. 163,

175 (2007); *see also* Rachel White-Domain, TRAUMA-INFORMED LEGAL ADVOCACY: PRACTICE

SCENARIOS (2014).

Further, "[t]o competently represent such clients, lawyers should understand the science of

trauma, including the unusual ways those impacted store memories of the traumatic event … and

how challenging it can be for them to relive the event through trauma."  Brenda Star Adams &

---

[6] To be clear, Plaintiff believes she terminated the relationship, and did so for cause, as explained below.  However, the Court could avoid that swearing contest and the need for a hearing by taking Prior Counsel at his word.

[7] As explained below, to the extent counsel's personal offense would constitute good cause, the mirror would also necessarily be true:  That is, that Prior Counsel's handling of this issue and the pain — or "offense" — it caused ***to*** Plaintiff would also be good cause for Plaintiff to terminate him.

Sarah Abraham, *Trauma-informed lawyering is our professional responsibility*, CAL. LAWYER DAILY J. (Mar 10, 2023); *see also* Am. Bar Assoc., *Establishing a Trauma-Informed Lawyer-Client Relationship* (Oct. 1, 2014) (noting clients with certain kinds of trauma "often feel overwhelmed by their emotions and simultaneously lack tools for calming themselves down.").[8] And given that, firing a client for a trauma reaction, in a case about that trauma — at hearing that there was no reason to have her to attend anyway — could not be "good cause" either.

## B.    A hearing would be required to determine whether Prior Counsel was terminated for cause.

As alluded to in n. 7 above, Plaintiff terminated Prior Counsel for cause, which would terminate any lien. *Universal Acupuncture*, 370 F.3d at 263.

Plaintiff notes for now that Prior Counsel's characterization of Plaintiff's understandable reaction when she left the courtroom is an example of "venting of personal or economic hostility toward the client" that cases find constitutes good cause. *See, e.g., Holcombe v US Airways Group, Inc.*, 2017 US Dist LEXIS 214656, at *31 (EDNY July 31, 2017). Likewise, ████████████ ████████████████████████████ ████████████████████████████ ██████ (████████) and ████████████████████████ ██████████████ is also good cause. This is because it is "indulging in some sort of unprofessional conduct while handling the client's affairs." *Holcombe*, 2017 US Dist LEXIS 214656, at *31. Specifically, ████████████████████████ ████████████████████████████

---

[8] *Available at* https://www.americanbar.org/groups/public_interest/child_law/resources/child_law_practiceonline/child_law_practice/vol-33/october-2014/establishing-a-trauma-informed-lawyer-client-relationship/ .

[9] ████████████████████████████



In the interest of attempting to preserve some potential to resolve this without escalated drama (2026-05-26 Tr. at 49:8-9), Plaintiff leaves this issue there and asks that if the Court intends to hold a hearing, it set dates for the required submissions on both amount and whether the lien exists, and Plaintiff will make a full submission at that time.

C.     **To the extent the Court allows a contingency-based lien despite Prior Counsel's failure to make that election, it should (1) clarify that it will not entertain an unethical lien and (2) otherwise await resolution of the case to determine the amount of any lien based on the work actually done at that point.**

Plaintiff addresses this mode of determining a contingency-based lien last, because it would be the least efficient and causes precisely what the Court said should be avoided  at the last conference.

When a lawyer exercises the "right to elect a contingent percentage fee based on the proportionate share of the work performed" as a lien, "as several courts have recognized, is better determined at the conclusion of the case when such factors as the amount of time spent by each lawyer on the case, the work performed and the amount of recovery can be ascertained." *Lai Ling Cheng*, 73 NY2d at 458.  As explained above, Prior Counsel has ***not*** made that election, because he has not said he is willing to take anything that is "based on the proportionate share of the work performed." *Lai Ling Cheng*, 73 NY2d at 458.

Thus, as shown above, the Court should treat that refusal to make an ethical election as waiver — particularly given the sheer number of times the basic rule has been explained to Prior

15

Counsel and the fact that asserting the lien Prior Counsel is asserting is unethical conduct.  To the extent it does not, however, it should clarify, for now, that the basic ethical rules make clear "[a] client cannot be exposed to more than one contingent fee."  ABA Form. Op. 487.

As far as the "proportionate share of the work performed" (*Lai Ling Cheng*, 73 NY2d at 458), substitution has only just taken place.  New counsel has significant work ahead, and the ultimate "amount of time spent by each lawyer on the case" cannot be determined.  To be sure, the Court could set a formula — something like "the lawyers will collectively be entitled to 33 1/3% of any gross recovery, and each lawyer will be entitled to a *pro rata* share of that based on the total number of reasonable hours they worked" — and Plaintiff would not have any objection to that rule.  But that formula is just as likely as not to lead to a dispute down the line.  That is, presumably there will be some dispute about what hours were reasonable, so the further specificity does little work that would not already be accomplished by the Court clarifying it will enforce the basic ethical rule that "A client cannot be exposed to more than one contingent fee when switching attorneys, given that under the Rule 1.5(a) factors, each counsel did not perform all of the services required to achieve the result," and that "[t]hus, neither the predecessor nor the successor counsel ordinarily would be entitled to a full contingent fee."  ABA Form. Op. 487.

16

## **CONCLUSION**

For the reasons above, the Court should either:

1. Sever so much of the judgment already granted as covers the mandatory, statutory award of attorneys' fees covering fees through the date of substitution, and allow Prior Counsel to make a fee application and recover those fees from Defendant based on the lodestar; or

2. Hold a hearing on whether counsel terminated his own representation or was discharged for cause and if neither, either:

    a. At the same hearing, fix — using a lodestar — a present dollar value based in *quantum meruit* for Prior Counsel's fees, and set that as the charging lien going forward; or

    b. Rule it will allow a "contingent percentage fee based on the proportionate share of the work performed on the whole case," and therefore delay resolving this issue until "the conclusion of the case" (*Lai Ling Cheng*, 73 NY2d at 458), while clarifying that the lien **will** be calculated based on "the proportionate share of the work performed on the whole case" (*id.*), not an unethical demand the client pay more than 1/3 of her recovery in total.

Dated:       June 5, 2026
             Queens, New York


Respectfully Submitted,

        /s/
_____
J. Remy Green
COHEN&GREEN P.L.L.C.
1639 Centre Street, Suite 216
Ridgewood, NY 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com

17