UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

RIVKA MANDEL,

                         Plaintiff,

              - against –

JACOB DASKAL,

                       Defendant.

--------------------------------------------------------------x

Case No. 1:23-cv-07352 (RER) (VMS)

## MEMORANDUM IN OPPOSITION TO MOVANTS' APPLICATION TO "DETERMINE AND SETTLE" PRIOR COUNSEL'S LIEN

Paul Batista, a Member of the Bar of this Court since March 1975, respectfully submits this memorandum in opposition to the application (*see* Doc. Nos. 161 and 162) of the firms named Cohen&Green P.L.L.C. and Massimi Law PLLC ("movants") to abrogate or render meaningless Mr. Batista's charging lien under New York Judiciary Law § 475. For the reasons delineated in the balance of this memorandum, movants' application should be denied in all respects.

### Statement of Facts

The facts germane to the opposition to movants' application are set forth in Mr. Batista' accompanying declaration.

Briefly described, the undisputed facts are as follows. In March 2023, plaintiff Rivka Mandel ("Mandel") executed a conventional retainer agreement and Statement of Client's Rights pursuant to which Mandel retained Mr. Batista to pursue a civil action against Jacob Daskal ("Daskal"), who in 2021 was named as the defendant in a federal indictment returned in the United States District Court for the Eastern District of New York charging him with criminal sexual conduct against Mandel (*see* Batista Decl. ¶¶ 4 - 6).

The retainer agreement executed by Mandel contained a traditional provision common to virtually all contingent fee agreements pursuant to which Mandel obligated herself to pay Mr. Batista one-third of any funds recovered as a result of the civil action Mr. Batista undertook to file on her behalf (*see* Batista Decl. ¶ 6).

As the complete docket sheet in this action reveals (*see* Exhibit 1 annexed to the Batista Decl.), Mr. Batista devoted two-and-one-half years to the effective representation of Mandel. Indeed, on March 18, 2026, Mr. Batista secured an order from United States District Judge Ramón Reyes granting summary judgment against Daskal as to liability on the most significant aspect of the Amended Complaint – specifically, Daskal's liability under Count I of the Amended Complaint grounded on 18 U.S.C. § 2255.

### Argument

### MR. BATISTA IS ENTITLED TO ENFORCEMENT OF THE FULL CHARGING LIEN UNDER NEW YORK JUDICIARY LAW § 475

Movants, of course, proceed as though New York Judiciary Law § 475 did *not* exist and did not solidify Mr. Batista's rights. § 475, which is clear and unambiguous, provides in full as follows:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

2

As courts applying Judiciary Law § 475 have repeatedly made clear, the statute exists for the purpose of protecting the holder of the charging lien, not for the purpose of facilitating the client or any successor counsel to evade or negate the original charging lien. *See, e.g., Klein* v. *Eubank*, 87 N.Y. 2d 459, 640 N.Y.S. 2d 443 (1996); *Haser* v. *Haser*, 271 A.D. 2d 253, 707 N.Y.S. 2d 47 (1st Dept. 2000).

The retainer agreement between Mandel and Mr. Batista remains in full force and effect. Significantly, movants were well aware of the existence and terms of the retainer agreement. While movants have not disclosed their retainer agreement with Mandel, it is obvious that it, too, provides that movants are allegedly entitled to one-third of any recovery.

It was movants, *and not Mr. Batista*, who created the possibility that lawyers for Mandel might obtain, in the event of a settlement or other fund, two thirds of any recovery. Mandel agreed to pay Mr. Batista one third of any recovery. Now, through movants, Mandel seeks to eliminate the protection Mr. Batista has under New York law.

This is exactly the kind of chicanery the Judiciary Law was enacted to prevent. Mandel did not agree to pay Mr. Batista an hourly fee. Nor did Mandel agree that Mr. Batista's fee should be based on *quantum meruit*. And Mandel did not relegate Mr. Batista to a hearing on what, if any, fees he should receive.

\*     \*     \*

Some concluding observations are in order. *First*, there is no reason why the issue of Mr. Batista's fees needs to be resolved at this point. This is because there has been no settlement of this case, even if one were viable. Stated differently, there are simply no funds from which Mr. Batista can be paid and no reason at this point to impose any arbitrary limit.

3

*Second*, there is no indication that movants are aggressively pursuing the merits of Mandel's case. Movants and Mandel have the tremendous advantage created for Mandel by Mr. Batista's success in March 2026 of obtaining summary judgment against Daskal as to liability on Count I of the Amended Complaint. Yet movants appear to have done nothing to pursue the damages phase of the action.

*Third*, there is no inherent reason why this Court needs to adjudicate at this time any issue of fees. The charging lien was created by New York State law and it can be determined by the New York Supreme Court at an appropriate time.

*Fourth*, a pragmatic issue counsels in favor of denial of movants' application. And it is this. Movants, although they appear exceptionally pleased with themselves to have recently become involved in an action Mr. Batista initiated and prosecuted in October 2023, *may not* be Mandel's lawyers in the future. There are clients who are "serial litigants" who, on their own whim, move from lawyer to lawyer.

Without making any comment on Mandel, who is to say that movants are her last lawyers in this case? If Mandel so desires, she can retain one, two, three, four or more lawyers, offering each of them a one-third contingency. This could well create a situation in which an unlimited number of lawyers are making claims to percentages of any settlement or judgment fund which may come into existence. It is mathematically impossible, of course, to award one-third of a pie to ten lawyers.

**Conclusion**

For all the foregoing reasons, Paul Batista respectfully requests that the Court deny movants' application at this time in its entirety.

Dated: New York, New York
June 24, 2026

PAUL BATISTA, P.C.

By: _____
Paul Batista
26 Broadway, Suite 1900
New York, New York 10004
631 377 0111
Batista007@aol.com

5