

Remy J. Stocks
*Partner*
rjs@mss-pllc.com
Fax: 212-655-3535

June 26, 2026

**VIA ECF**
Chief United States Magistrate Judge Vera M. Scanlon
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Courtroom 13A North
Brooklyn, New York 11201

**Re:  <u>*Rivka Mandel v. Jacob Daskal*</u>, Case No. 23-cv-07352**

Dear Judge Scanlon:

We represent defendant Jacob Daskal. We write in response to the June 23, 2026 letter motion filed by Jessica Massimi, Esq., counsel for plaintiff Rivka Mandel ("Plaintiff"), seeking leave to amend her January 25, 2024 Amended Complaint in this action. *See* ECF 169. For the reasons that follow, Mr. Daskal respectfully requests that the Court deny Plaintiff's motion.

As an initial matter, Plaintiff claims that she was "explicitly given until July 17th to amend her pleading," and maintains that her motion was filed "within the current deadline to amend." *See* Ltr., pp. 2, 3. These statements are not accurate. On September 12, 2025, the Court entered a Minute Order directing the parties to seek leave to add additional claims or parties by November 12, 2025, specifically noting that, "after this date, no further amendments or joinder will be permitted." While the Court's June 1, 2026 Minute Order requires Plaintiff to file any motion seeking leave to amend by July 17, 2026, nothing in the Order remotely suggests that the November 12, 2025 amendment deadline was extended.

The distinction matters. Nearly three years after commencing this action, and 29 months after filing the operative Amended Complaint in this action, Plaintiff seeks leave to amend her pleading for the second time more than 7 months after the amendment deadline has passed. While Ms. Massimi's letter relies heavily on Rule 15(a)(2)'s permissive standard for *timely* amendments, it is well-settled that a party seeking leave to amend after the deadline under a scheduling order must demonstrate "good cause" for the belated amendment under Rule 16(b)(4). *See, e.g., J.M. v. Sessions*, 162 F.4th 364, 377 (2d Cir. 2025) ("Where, as here, a party moves to amend after the deadline imposed by the court's scheduling order, the moving party must show 'good cause' for the amendment."); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014) ("When a party files a motion to amend after the pleading deadline set forth in the scheduling order, as plaintiffs have done here, 'the lenient standard under Rule 15(a) ... must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.''") (quoting *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009)).

To assess whether a party has met its burden to establish good cause, courts in the Second Circuit primarily look to "the diligence of the party seeking to amend." *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1415621, at *2 (S.D.N.Y. Apr. 13, 2012); *see also Parker v. Columbia Pictures, Inc.*, 204 F.3d 326, 340 (2d Cir. 2000) (same)). The Court may consider other factors, "including, in particular, whether allowing the amendment…will prejudice" the non-moving party. For purposes of this analysis, "[i]n determining what constitutes 'prejudice,' [courts] consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Anwar*, 2012 WL 1415621, at *2 (citing *Block v. First Blood Assocs.*, 988 F,2d 344, 350 (2d Cir. 2003)).

Plaintiff makes no attempt to show "good cause" for the belated amendment. Indeed, there is not a single reference to Rule 16 anywhere in Ms. Massimi's letter.  Rather, Plaintiff admits that her motion was prompted by two events: (1) her retention of new counsel; and (2) a January 29, 2026 amendment to New York City's Gender Motivated Violence Act ("GMVA"), N.Y.C. Admin. Code §10-1104.1 (the "2026 GMVA Amendment").

Neither of these reasons amounts "good cause" under Rule 16(b), particularly because all of Plaintiff's proposed new claims could have been asserted in either her original Complaint filed on October 2, 2023 or in the operative Amended Complaint filed on January 25, 2024. Plaintiff cites no authority holding that a party's unilateral decision to retain new counsel constitutes the requisite "good cause" to permit a belated amendment and the only authority we could find reached the opposite conclusion. *See Nat'l Prods., Inc. v. Scanstrut, Inc.*, No. 3:19-CV-1322(VLB), 2021 WL 1197624, at *4 (D. Conn. Mar. 29, 2021) ("A party's choice to change counsel or change its legal strategy does not constitute good cause for a late amendment.") (citing *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2020 WL 3047989, at *3 (D. Del. June 8, 2020)). While we understand that incoming counsel would have approached the case differently, Plaintiff has not identified any separate relief or different damages she is seeking under her proposed new claims that is not available under her existing claim for violation of 18 U.S.C. §2255, for which she has already obtained summary judgment as to liability. Respectfully, Mr. Daskal should not have to bear the consequences – after 3 years of litigation – of what Plaintiff now contends are the poor litigation decisions of her former counsel.[1]

Similarly, Plaintiff's reliance on the 2026 GMVA Amendment to establish the requisite "good cause" is misplaced. The GMVA was enacted on December 19, 2000 in the wake of the Supreme Court's decision in *U.S. v. Morrison*, 529 U.S. 598 (2000) striking down as unconstitutional a provision of the federal Violence Against Women Act that created a private right of action permitting survivors of gender-motivated violence to sue their abusers for money damages in

---

[1]    *See Wu v. JJW Enterprises, Inc.*, 2024 WL 5497136, ("Whether prior counsel was negligent in failing to name an additional corporate defendant[s]… or whether such additions simply reflect new counsel's strategy, neither scenario establishes good cause under this Circuit's case law…new counsel's diverging views on how this case should be structured is not a basis to amend after the deadline.); *see also Kontarines v. Mortg. Elec. Registration Sys., Inc.*, No. 15-CV-2206, 2016 WL 3821310, at *4 (E.D.N.Y. July 12, 2016) ("[T]he timing of plaintiff's belated application is the product of his retention of new counsel and resulting change in strategy—factors that do not constitute good cause under Rule 16(b)."); *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 15-CV-2457, 2019 WL 1245013, at *1, *5 (S.D.N.Y. Mar. 18, 2019), aff'd, 850 F. App'x 38 (2d Cir. 2021) ("[Plaintiff's] retention of new counsel does not provide it with the opportunity to restart this litigation.").

federal court, holding that Congress exceeded its authority and intruded on an area of law traditionally reserved for the states. In response, a number of states and cities enacted legislation affording survivors a similar remedy at the state or local level, including the New York City Council. *See* N.Y.C. Admin Code. §10-1101, *et seq*. Under the GMVA, where a plaintiff was a minor when the alleged gender-motivated violence took place, he or she has nine years after reaching the age of majority to file a GMVA claim against the responsible parties. *Id*. at §10-1105.

The GMVA has been amended twice since its enactment. In 2022, it was amended to revive ***otherwise time-barred*** GMVA claims filed between March 1, 2023 and March 1, 2025.[2] However, a number of courts subsequently held that the GMVA does not apply retroactively in the absence of any express authorization in the statute. *See, e.g., S.S. v. Rockefeller Univ. Hospital*, 239 A.D.3d 424 (N.Y. App. Div. 2025) (holding the GMVA did not apply retroactively in the absence of express legislative authorization rebutting the presumption of prospective application); *Doe v. Schlesinger*, 238 N.Y.S.3d 900, 903 (N.Y. Sup. Ct., Kings Cnty Jun. 25, 2025) (same). In consequence, on January 29, 2026, the New York City Council passed the 2026 GMVA Amendment, again reviving ***otherwise time-barred*** GMVA claims arising out of gender-motivated violence that took place at any time, provided such claims are filed within 18-months of its enactment. N.Y.C. Admin. Code §10-1104.1. Thus, while the 2026 GMVA Amendment was recently enacted, it is not a change in controlling law that would excuse Plaintiff's lack of diligence. See *Callahan v. County of Suffolk*, 96 F.4th 362, 370 (2d Cir. 2024) ("[H]ere, there was no change in controlling law that impacted plaintiffs' ability to raise their postposed claim at the start of this litigation.").

Because Plaintiff has thus far declined to respond to Mr. Daskal's discovery requests and has neither produced any documents nor provided authorizations to obtain her medical records, we do not know her exact date of birth. According to the proposed Second Amended Complaint ("SAC"), Plaintiff is currently 24 years old. *See* ECF 169-2, ¶ 4, 42. Plaintiff therefore turned 18 roughly in 2020. Plaintiff therefore could have asserted a GMVA claim against Mr. Daskal in her October 2, 2023 original Complaint or her January 25, 2024 Amended Complaint. Because Plaintiff could have asserted her proposed new claims in an earlier pleading (or a new pleading filed before the amendment deadline), she cannot possibly demonstrate good cause for the late amendment. *Callahan,* 96 F.4th at 370-371 ("Because plaintiffs sought long after this litigation commenced to amend their complaint to add a claim that was available at the beginning of it, we agree with the district court that they did not move with diligence needed to satisfy the good cause standard of Rule 16(b)."); *Sessions*, 162 F.4th at 377 (district court was well within its discretion in denying leave to amend where the plaintiff knew or had reason to know of the involvement of proposed new party and the facts underlying proposed new claim).

---

[2]    On March 23, 2026, the Second Circuit certified the question of whether the 2-year revival window created under the 2022 GMVA Amendment is preempted by the earlier revival periods set forth in New York State's sexual assault revival statutes, the Child Victims Act (the "CVA") and Adult Survivor Act (the "ASA") to the New York Court of Appeals. *See Parker v. Alexander*, 171 F.4th 146, 154 (2d Cir. 2026). The district court in *Parker* concluded that the 2022 GMVA Amendment was preempted by the ASA while a different judge in the Southern District reached the opposite conclusion in another matter. *Parker v. Alexander*, 779 F. Supp.3d 361 (S.D.N.Y. 2025); *Doe v. Black*, 2024 WL 4335453 (S.D.N.Y. Sep. 27, 2024). Presumably, if the Court of appeals determines that the CVA and the ASA preempt the 2022 GMVA Amendment, the 2026 GMVA Amendment will also be deemed preempted. Neither amendment is relevant to the Court's assessment of Plaintiff's diligence.

Similarly, Plaintiff's proposed new claims seeking unspecified damages and attorneys' fees under the New York Uniform Voidable Transactions Act ("UVTA") could have been asserted in either of her earlier pleadings. Apart from numbering the 16 members of Mr. Daskal's family that Plaintiff proposes to add as defendants (the "New Defendants") as "Transferee Does 1 through 16," the SAC does not contain a single new allegation supporting Plaintiff's Proposed UVTA Claims - nor does it identify the dates, amounts, source of funds, means of transmission, or any other details of any of the alleged transfers. Rather, Plaintiff rests entirely on the same conclusory allegation that each of the New Defendants was purportedly "the recipient" of unspecified "assets" of Mr. Daskal, allegedly "for the purpose of avoiding compensation to Ms. Mandel" that appear in the operative Amended Complaint filed 29 months ago – to support four new causes of action against Mr. Daskal and the Proposed New Defendants. *See e.g.,* SAC, ¶¶11, 13, 15s, 16, 26-29.[3]

In addition to Plaintiff's failure to demonstrate good cause, the prejudice to Mr. Daskal if Plaintiff's motion is granted could not be more glaring. On May 1, 2026, in accordance with Judge Reyes' Individual Rules, Mr. Daskal filed a pre-motion letter requesting a conference to discuss his forthcoming motion for summary judgment dismissing Plaintiff's claims for assault, battery and intentional infliction of emotional distress (collectively, the "State Law Claims") together with a Local Rule 56.1 Statement demonstrating that there can be no dispute that Plaintiff's State Law Claims were not revived under the ASA because she was a minor when the predicate sexual offenses occurred. *See* ECF 148. Had Mr. Daskal's pre-motion letter been treated the same as Plaintiff's pre-motion letter filed two months earlier seeking summary judgment as to Mr. Daskal's liability under her First Claim for violation of 18 U.S.C. §2255, Judge Reyes would have held a conference and granted Mr. Daskal's motion from the bench within a matter of days, leaving the issue of Plaintiff's damages under her § 2255 claim as the sole open issue for discovery. *See* ECF 125-126; March 18, 2026 Minute Order, ECF 130.

Instead, Mr. Daskal's letter got caught up in a flurry of filings in the epic battle between Plaintiff's incoming and outgoing counsel and his pre-motion letter was inexplicably denied without prejudice to refiling after the May 26, 2026 conference before Your Honor under Judge Reyes' May 7, 2026 Minute Order (even though it was unrelated to the matters to be addressed at the conference). *See* ECF 147, 149, 150, 152, 155, 156. Further, at the May 26, 2026 conference, Your Honor made clear that Mr. Daskal should give incoming and outgoing counsel breathing room to resolve their dispute before attempting to advance this litigation. *See, e.g.,* ECF 167, at 48:19-50:19.

Allowing Plaintiff to add 6 new causes of action as well as 16 New Defendants after Mr. Daskal filed a dispositive motion that would have substantially narrowed the open issues will unquestionably require Mr. Daskal to "expend significant additional resources to conduct discovery and prepare for trial" and will "significantly delay the resolution" of this action. See parker. *Anwar*, 2012 WL 1415621, at *2. Moreover, nothing precludes Plaintiff from bringing her purely state and city law claims against the New Defendants in a separate action in state court, while Mr. Daskal's liability to Plaintiff for civil damages is adjudicated in this action (or if a judgment is entered based on the statutory liquidated damages provision of 18 U.S.C. §2252). *Id*. Accordingly, because Mr. Daskal would be severely prejudiced by the proposed amendment, Plaintiff's motion should be denied in its entirety.

---

[3]    Plaintiff's UVTA claims are futile as they are not plead with the requisite particularity. *See Gaetano Development Corp. v. Lee*, 121 A.D.3d 838 (N.Y. App. Div. 2014); *see also* CPLR 3016(b).

Respectfully submitted,

*/s/Remy J. Stocks*

Remy J. Stocks

cc:      All counsel of record