**PAUL BATISTA, P.C.**
**Attorney-at-Law**
**26 Broadway – Suite 1900**
**New York, New York 10004**
**(631) 377-0111**

**e-mail: Batista007@aol.com**                    **Facsimile: (212) 344-7677**

## MEMORANDUM

TO:        Eli J. Esakoff, Esq. [eje@msf-law.com]
           Mitchell Schuster, Esq. [ms@msf-law.com]
           and Stacey Ashby, Esq. [sma@msf-law.com]

FROM:      Paul Batista, Esq.

DATE:      November 5, 2025

**Re:    Mandel v. Daskal**

Enclosed are Ms. Mandel's First Set of Interrogatories and her First Demand for

Production of Documents.

_____
PAUL BATISTA

Enclosure

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

RIVKA MANDEL,

                                 Plaintiff,

              - against –

JACOB DASKAL,

                             Defendant.

-------------------------------------------------------------------x

            1:23-cv-07352 (RER) (VMS)

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT JACOB DASKAL

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, plaintiff Rivka Mandel, by her counsel, Paul Batista, P.C., hereby serves her First Set of Interrogatories to defendant Jacob Daskal ("Daskal"), to be answered separately and fully under oath within the time period required by law.

### Definitions

1.     "Amended Complaint" means the Amended Complaint filed in this action on January 25, 2024.

2.     The term "communication" when used in an interrogatory means any utterance or written notation, or written or verbal statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, conversations, dialogues, discussions, interviews, consultations, negotiations, correspondence, agreements, and other understandings between or among two or more persons exchanged through, including but not limited to, in person conversations, correspondence, telephone calls, text messages and private messaging services, such as iMessage, WhatsApp, Viber, Telegram, Wire, Threema, Wickr Me, Silence, Signal, or direct messages via Social Media.

1

3.      "Contact Information" means information to enable the subject to be contacted, including the full legal name, address, telephone number, and email address.

4.      The term "document(s)" when used in an interrogatory shall be read in the broadest possible sense and in accordance with the use of the term in Rules 26 and 34 of the Federal Rules of Civil Procedure.  Among other things, it shall mean writings of every kind, source, and authorship, both originals and all non-identical copies thereof, such as those bearing marginal comments, alterations, or other notations not present on the original document as originally written, typed or otherwise prepared, in Daskal's possession, custody, or control, or known by him to exist, irrespective of whether the writing is one intended for or transmitted by Daskal or intended for or transmitted to any other person or entity, including, without limitation, any governmental agency, department, administrative entity or personnel.  The term shall include handwritten, typewritten, printed, photocopied, photographic, electronic or recorded information.  It shall also include all "electronically stored information" ("ESI") as that term is used in Rules 26 and 34 of the Federal Rules of Civil Procedure.  It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming, instructions and other materials necessary to understand and use such systems.  For purposes of illustration only, the term shall include: correspondence; emails; transcripts of testimony; letters; notes; notebooks; diaries; reports; papers; files; books; magazines; records; contracts; agreements; videotapes; photographs; telegrams; teletypes; and other communications sent or received; diaries; calendars; logs; notes; or memoranda of telephonic or face-to-face conversations; drafts; work papers; invoices; bills; statements; agendas; bulletins; notices; circulars; announcements; instructions; schedules; minutes; summaries; and other records of obligations and expenditures;

canceled checks; vouchers; receipts; and other records of payments; ledgers; journals; balance sheets; profit and loss statements; and other sources of financial data; analyses; statements; interviews; affidavits; printed matter (including articles and newspaper clippings); press releases; charts; drawings; specifications; manuals; brochures; and memoranda of all kinds to and from any persons, agencies, or entities. Documents, information recorded or microfilmed, microfiche, tapes, discs, data processing discs or tapes and computer-produced interpretations thereof, x-rays, instructions, announcements, sound recordings and transcripts thereof, or other data that exists in electronic or magnetic form must be produced in a form which permits the undersigned attorney to examine it without aid or special equipment.

5.      "Identify" shall have the following meanings:

(a)     when used in reference to an individual, to state her/his/their full name and present or last known address, telephone number, the full name and present or last known address of her/his/their employer or business, the individual's position with said employer or business, and the individual's contact information;

(b)     when used in reference to an organization or entity, to state its full name and present or last known address, telephone number, contact information, and a full description of the business or activity in which the organization or entity is engaged;

(c)     when used in reference to a document, to state the date, author, recipients, type of document (*e.g.*, letter, memorandum, photograph, telegram, tape recording, etc.), subject matter, and its present or last known location and custodian. If any such document was, but is no longer, in your possession or custody or subject to your control, state what disposition was made of it; and

(d)     when used in reference to a statement, representation, or communication, to provide the date, persons involved, form of the statement, representation or communication (*e.g.*, whether in person, in writing, by telephone), and subject matters discussed.

6.      The term "person" and "persons" means (1) any natural individual, corporation, proprietorship, partnership, joint venture, limited liability entity, and all other organizations, associations, groups, companies, institutions, firms, governmental bodies, and entities; (2) any

3

parent, subsidiary, division, affiliate or department thereof; and (3) any agent, employee, officer, director, or other representative thereof.

7.     The terms "regarding," "relating to," "pertaining to," and "concerning" shall have the broadest meaning possible, which includes but is not limited to: referring to, containing, alluding to, responding to, reporting on, commenting upon, discussing, supporting, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, contradicting, setting forth, describing, summarizing, prepared in connection or conjunction with, or characterizing either directly or indirectly, in whole or in part.

8.     "Social Media" shall mean all websites and applications that enable users to create and share content online or to participate in social networking, and it shall include, but not be limited to, the following: Facebook, Instagram, X (formerly Twitter), Snapchat, YouTube, Reddit, WhatsApp, Telegram, Tumblr, LinkedIn, Meetup, Myspace, Pinterest, Tagged, Twitch, TikTok, Vimeo, Flickr, and Skype.

9.     "You" shall mean defendant Jacob Daskal, his agents, representatives, attorneys, and anyone else acting on his behalf in any capacity.

### Instructions

1.     These Interrogatories are continuing so as to require the supplementation of answers if additional or other information is obtained that renders the initial responses to these requests less than complete and/or less than accurate between the date of the response hereto and trial of this case.

2.     The response to these Interrogatories must include all information known to (or in the possession, custody or control of) Daskal and Daskal's agents, including attorneys and all persons acting on Daskal's behalf or under his control.

4

3.      Answer each and every Interrogatory.  If the answer to an Interrogatory is "none" or "unknown," write such statement as the response.  If any of these Interrogatories cannot be answered in full, a response to the extent possible is required, specifying the reasons for the inability to answer the remainder and stating what information, knowledge or belief the responder has concerning the unanswered portion.  The fact that an investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to respond to each Interrogatory as fully as possible.  The omission of any name, fact, or other item of information from the responses shall be deemed a representation that such name, fact, or item was not known to the responder, responder's counsel, or other representatives at the time of service of the responses.

4.      Unless otherwise stated, the applicable time period for each Interrogatory is from January 1, 2014, to the present.

## Interrogatories

1.      State defendant's current physical location and address.

2.      State the name, address, and Contact Information of all individuals with whom Daskal has resided or shared a residence during the relevant time period of January 1, 2014 to the present.

3.      Identify all individuals with whom Daskal has had physical or sexual or intimate contact during the relevant time period and provide Contact Information as to all such individuals.

4.      State (i) whether Daskal has had physical contact with plaintiff Rivka Mandel, including sexual intercourse with Ms. Mandel's vagina, contact between his penis and Ms. Mandel's vaginal area, and contact between his hands or mouth and Ms. Mandel's vagina and vaginal area during the relevant period and (ii) in each instance, identify the dates and geographic locations of such contacts.

5

5. State (i) whether Daskal had physical contact with any individuals aged 18 or under during the relevant time period, (ii) identify all such individuals, and (iii) provide the dates, places, and nature of such contacts, together with Contact Information as to each individual.

6. State whether the statements identified in ¶45(i)-(xx) of the Amended Complaint are accurate descriptions of the facts and, to the extent defendant disputes the accuracy of such descriptions, identify with specificity the reasons for any such alleged inaccuracy.

7. State whether the statements made by Daskal to the District Court identified at ¶59 of the Amended Complaint are accurate, and to the extent Daskal disputes the accuracy of such descriptions, identify with specificity the reasons for any such alleged inaccuracy.

8. State whether the statements made by Daskal to the District Court on October 11, 2023 as identified at ¶61 of the Amended Complaint are accurate, and to the extent Daskal disputes the accuracy of such descriptions, identify with specificity the reasons for any such alleged inaccuracy.

9. Did Daskal rape Ms. Mandel and, if so, identify with specificity the dates, locations and circumstances of each such rape?

10. Did Daskal engage in "sexual abuse" of Ms. Mandel (*see* Amended Complaint at ¶¶98-100) and, if so, identify with specificity the dates, locations and circumstances of each act of sexual abuse?

11. Did Daskal assault Ms. Mandel (*see* Amended Complaint at ¶¶101-103)?

12. Did Daskal commit acts of battery (*see* ¶¶104-106 of the Amended Complaint) against Ms. Mandel and, if so, identify with specificity the dates, locations and circumstances of each act of battery?

13. Did Daskal inflict emotional distress (*see* ¶¶107-109 of the Amended Complaint) on Ms. Mandel?

14. Describe in detail the factual basis for Daskal's statement (*see* ¶84 of the Amended Complaint) that the "first thing I want to say to [Ms. Mandel], I cannot express how sorry I am for what I did."

15. Describe in detail the factual basis for Daskal's statement (*see* ¶84 of the Amended Complaint) that "I do not know [how] I can ever re-pay her for the terrible damage I caused her."

16. Describe in detail the factual basis for Daskal's statement (*see* ¶84 of the Amended Complaint) that "[f]or a young girl, the harm that she has to deal with for the rest of her life, words cannot capture…the overwhelming regret and shame for what I did.…[W]hatever I feel is nothing compared to the awful pain I caused [Ms. Mandel].…I'm here to accept responsibility for my crime. I took advantage of my position in Shomrim to do something unspeakable."

17. Does Daskal dispute the accuracy of the District Court's statement (*see* ¶89 of the Amended Complaint) that Daskal had "substantial wealth?"

18. Does Daskal dispute the accuracy of the District Court's statement (*see* ¶89 of the Amended Complaint) that Daskal "placed over $10 million in assets…for the benefit of his children and grandchildren. He was a wealthy man."?

7

Dated: New York, New York
November 5, 2025

PAUL BATISTA, P.C.

By: _____

Paul Batista
*Attorney for Plaintiff*
*Rivka Mandel*
26 Broadway, Suite 1900
New York, New York 10004
(T) 631 377 0111
Batista007@aol.com

TO:    MEISTER SEELIG & FEIN PLLC
*Attorneys for Defendant*
*Jacob Daskal*
125 Park Avenue, 7th Floor
New York, New York 10017
(T) 212 655 3500

8



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
RIVKA MANDEL,                                            :
                                                        :    1:23-cv-07352 (RER) (VMS)
                                    Plaintiff,           :
                                                        :
                    - against –                         :
                                                        :
JACOB DASKAL,                                            :
                                                        :
                                    Defendant.           :
-------------------------------------------------------------------x

## PLAINTIFF RIVKA MANDEL'S FIRST DEMAND FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JACOB DASKAL

Pursuant to Fed. R. Civ. P. 26 and 34, plaintiff, by her undersigned counsel, Paul Batista, P.C., hereby serves her First Demand for Production of Documents to defendant Jacob Daskal ("Daskal"), and demands that defendant produce the requested materials to Paul Batista, P.C., within thirty (30) days after service of the Demand.

### Definitions

1.    "Amended Complaint" means the Amended Complaint filed in this action on January 25, 2024.

2.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these document demands all responses that might otherwise be construed to be outside of their scope.

3.    The term "communication" means any utterance or written notation, or written or verbal statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, conversations, dialogues, discussions, interviews, consultations, negotiations, correspondence, agreements, and other understandings between or among two or more persons exchanged through, including but not limited to, in person conversations, correspondence, telephone calls, text

1

messages and private messaging services, such as iMessage, WhatsApp, Viber, Telegram, Wire, Threema, Wickr Me, Silence, Signal, or direct messages via Social Media.

4.      "Contact Information" means information to enable the subject to be contacted, including the full legal name, address, telephone number, and email address.

5.      The term "document(s)" shall be read in its broadest possible sense in meaning and scope.  Any response to a document request that identifies or refers to a document should also identify or refer to all drafts or non-identical copies thereof.  It shall include, but not be limited to, writings of every kind, source, and authorship, both originals and all non-identical copies thereof, such as those bearing marginal comments, alterations, or other notations not present on the original document as originally written, typed or otherwise prepared, in Daskal's possession, custody, or control, or known by him to exist, irrespective of whether the writing is one intended for or transmitted by Daskal or intended for or transmitted to any other person or entity, including, without limitation, any governmental agency, department, administrative entity or personnel.  The term shall include handwritten, typewritten, printed, photocopied, photographic, electronic or recorded information.  It shall also include all "electronically stored information" ("ESI") as that term is used in the Federal Rules of Civil Procedure.  Among other things, it shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming, instructions and other materials necessary to understand and use such systems.  For purposes of illustration only, the term shall include: correspondence; emails; transcripts of testimony; letters; notes; notebooks; diaries; reports; papers; files; books; magazines; records; contracts; agreements; videotapes; photographs; telegrams; teletypes; and other communications sent or received; diaries; calendars; logs; notes; or

2

memoranda of telephonic or face-to-face conversations; drafts; work papers; invoices; bills; statements; agendas; bulletins; notices; circulars; announcements; instructions; schedules; minutes; summaries; and other records of obligations and expenditures; canceled checks; vouchers; receipts; and other records of payments; ledgers; journals; balance sheets; profit and loss statements; and other sources of financial data; analyses; statements; interviews; affidavits; printed matter (including newspaper clippings); press releases; charts; drawings; specifications; manuals; brochures; and memoranda of all kinds to and from any persons, agencies, or entities. Documents, information recorded or microfilmed, microfiche, tapes, discs, data processing discs or tapes and computer-produced interpretations thereof, x-rays, instructions, announcements, sound recordings and transcripts thereof, or other data that exists in electronic or magnetic form must be produced in a form which permits the undersigned attorney to examine it without aid or special equipment.

6.      "Identify" shall have the following meanings:

(a)      when used in reference to an individual, to state her/his/their full name and present or last known address, telephone number, contact information, the full name and present or last known address of her/his/their employer or business, and the individual's position with said employer or business;

(b)      when used in reference to an organization or entity, to state its full name and present or last known address, telephone number, contact information, and a full description of the business or activity in which the organization or entity is engaged;

(c)      when used in reference to a document, to state the date, author, recipients, type of document (*e.g.*, letter, memorandum, photograph, telegram, tape recording, etc.), subject matter, and its present or last known location and custodian. If any such document was, but is no longer, in your possession or custody or subject to your control, state what disposition was made of it; and

(d)      when used in reference to a statement, representation, or communication, to provide the date, persons involved, form of the statement, representation or communication (*e.g.*, whether in person, in writing, by telephone), and subject matters discussed.

3

7.     The term "person" and "persons" means (1) any natural individual, corporation, proprietorship, partnership, joint venture, limited liability entity, and all other organizations, associations, groups, companies, institutions, firms, governmental bodies, and entities; (2) any parent, subsidiary, division, affiliate or department thereof; and (3) any agent, employee, officer, director, or other representative thereof.

8.     The terms "regarding," "relating to," "pertaining to," and "concerning" shall have the broadest meaning possible, which includes but is not limited to: referring to, containing, alluding to, responding to, reporting on, commenting upon, discussing, supporting, showing, disclosing, explaining, mentioning, analyzing, constituting, comprising, contradicting, setting forth, describing, summarizing, prepared in connection or conjunction with, or characterizing either directly or indirectly, in whole or in part.

9.     "Social Media" shall mean all websites and applications that enable users to create and share content online or to participate in social networking, and it shall include, but not be limited to, the following: Facebook, Instagram, X (formerly Twitter), Snapchat, YouTube, Reddit, WhatsApp, Telegram, Tumblr, LinkedIn, Meetup, Myspace, Pinterest, Tagged, Twitch, TikTok, Vimeo, Flickr, and Skype.

10.     "Daskal" shall mean defendant Jacob Daskal, as well as attorneys, agents, representatives, and anyone else acting on his behalf in any capacity.

**Instructions**

1.     Defendant is required, in responding to these demands, to obtain and furnish all documents available to defendant and any of his representatives, agents, servants, attorneys, or accountants and all documents that are in defendant's possession, custody or control, or in the

4

possession, custody or control of any of his present or former representatives, agents, servants, attorneys, or accountants.

2.     If any document is withheld under any claim or privilege, including, without limitation, the work product doctrine or the attorney-client privilege, defendant is to provide a description of the documents and the basis for withholding it.  An objection or claim of privilege, immunity, or protection directed to part of a request does not constitute an excuse for failure to respond to the parts of a request for which no objection or claim of privilege, immunity or protection is or can be made.

3.     These requests or continuing in nature.  Any responsive documents that are unavailable to defendant on the date of responding hereto but which subsequently become available shall be produced promptly after its discovery or creation.

4.     A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures or attachments to the document, in addition to the document itself.

5.     A request for any document shall be deemed to include a request for all drafts thereof and all revisions or modifications thereto, in addition to the document itself.

6.     If any document responsive to these requests is not in Daskal's possession, custody, or control, or has been lost, destroyed, or otherwise disposed of, such document is to be identified as to sender(s); copied recipients (indicated or blind); date prepared or received; date of disposal (approximate, if precise date is not known); manner of disposition; person(s) currently in possession of the document; person(s) disposing of the document; and any document retention or destruction policy under which such document was destroyed or disposed of and all persons who participated in, or were involved in, the formulation of any such policy.

5

7. Unless otherwise stated, the applicable time period for each Document Demand is from January 1, 2014 until the present.

### Document Demands

1. All documents and communications between defendant and any of the following individuals:

    a. Bella Daskal;

    b. Pearl Dembitzer;

    c. Leiby Dembitzer;

    d. Chaya Bornstein;

    e. Shulem Bornstein;

    f. Chaim Daskal;

    g. Esther Brody;

    h. Rose Teitelbaum;

    i. Benzion Daskal;

    j. Solomon Daskal;

    k. Barry Daskal;

    l. Lipa "Nussy" Brauner;

    m. Pesach Greenberg;

    n. Mutty Brauner; and

    o. Chaim Fleischer.

2. All documents and communications with any representative, agent, employee, or staff member of the following entities:

    (i) Boro Park Shomrim;

6

(ii)     Congregation Shaarei Zion of Bobov;

(iii)    Rabbinical College Bobover Yeshiva Bnei Zion;

(iv)    Yad Ephraim; and

(v)     Yachad D'Bobov.

3.      All documents and communications with law enforcement personnel, including representatives of any office of the District Attorneys in New York and representatives of any office of any U.S. Attorney or the United States Justice Department during the relevant period, including documents and communications exchanged by attorneys for Daskal with law enforcement personnel.

4.      Documents contained in the files of any and all attorneys representing Daskal in the relevant period.

5.      Documents provided by Daskal and his attorneys to government officials in the course of the government's preparation of the Pre-Sentence Investigation Report ("PSR") after Daskal's plea of guilty on July 14, 2023.

6.      Documents reflecting, embodying, or identifying transfers by sale, gift, bailment or other form of transfer to the individuals and entities identified in ¶¶1 and 2, *supra*, and to any other individual and entity.

7.      Documents concerning, relating to or identifying Daskal's conduct that, according to the District Court (*see* ¶89 of the Amended Complaint), Daskal "was a man with intense power in his community.  He was the leader of the Borough Park Shomrim Society, a crime control group with close ties to the New York City Police Department."

8.      Documents contradicting or questioning the statement by the District Court quoted in Demand 7, *supra*.

7

9. All tax returns, both state and federal, filed by Daskal during the relevant period.

10. All police reports, incident reports, 911 calls, body cam recordings, dispatch logs, or other documents or communications concerning or relating to any investigation of Daskal, including investigations relating to Ms. Mandel and any other woman or man.

11. Documents evidencing, identifying or relating to all real property owned or controlled, directly or indirectly, by Daskal during the relevant time period.

12. All bank account, brokerage statements or other documents identifying financial transactions in which Daskal engaged during the relevant time period.

13. All documents sent to, received from, or otherwise relating to any person whom defendant intends to call as a witness at trial, either in person, through deposition testimony, or through an affidavit.

14. All documents relating to each expert whom defendant intends to call as a witness at trial, including but not limited to, all documents sent to or received from each expert, including resumes, curriculum vitae, reports, retainers and billing records.

15. Financial statements, profit and loss statements or similar documents reflecting Daskal's financial condition during the relevant period.

16. Documents embodying, identifying or relating to payments to all attorneys, including Arthur Aidala, representing Daskal during the relevant period.

17. All non-privileged documents and communications that defendant relied upon or referenced in responding to any Interrogatory in this action.

Dated: New York, New York
       November 5, 2025

                                     PAUL BATISTA, P.C.

By: _____
                                       Paul Batista
                                       *Attorney for Plaintiff*
                                        *Rivka Mandel*
                                       26 Broadway, Suite 1900
                                       New York, New York 10004
                                     (T) 631 377 0111
                                     Batista007@aol.com

TO:    MEISTER SEELIG & FEIN PLLC
        *Attorneys for Defendant*
           *Jacob Daskal*
        125 Park Avenue, 7th Floor
        New York, New York 10017
        (T) 212 655 3500

9