MEISTER SEELIG & SCHUSTER

Stacey M. Ashby
*Partner*
sma@mss-pllc.com
Direct (212) 655-3562

October 21, 2026

**VIA ECF**

Hon. Vera M. Scanlon
Chief United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 13 A South
Brooklyn, New York 11201

**Re: Mandel v. Daskal, No. 1:23-CV-07352 (RER) (VMS)**
**Defendant's Opposition to Plaintiff's Motion to Quash (ECF No. 185)**

Dear Judge Scanlon:

We represent defendant Jacob Daskal ("Defendant") in the above-referenced matter. We write in opposition to Plaintiff's October 14, 2026, letter motion to quash (ECF No. 185) (the "Motion") five subpoenas *duces tecum* (the "Subpoenas") directed to (1) Allen Lowy, (2) Shulim Leifer, (3) Asher Lovy, and (4) Za'akah.[1] In four pages, Plaintiff asks this Court to quash all five Subpoenas: two on the strength of unsupported labels—"consulting expert" and "former lawyer"—and the rest on her unsworn representation that her own document production is complete and therefore the subpoenas are unduly burdensome—an objection that belongs to the recipients, not to her. Plaintiff has not shown that either label fits. Moreover, her burdensome objection is wrong on the merits and one for which she lacks standing to bring in the first instance under applicable caselaw. Plaintiff's Motion should be denied.

**1. The Lowy Subpoena.**
Plaintiff's sole ground to quash the Lowy Subpoena—that he "was previously Plaintiff's lawyer"—is foreclosed by Lowy's own statements to this Court, both on the record and in writing. When asked directly by Your Honor during the May 26, 2026 conference to clarify his role in the case (in connection with the fee dispute between Plaintiff's prior record of counsel, Paul Batista and her current counsel of record), Lowy answered: "I have no files. I never had any files. I was not counsel to Ms. Mandel";[2] *see also* Order of Hon. Vera M. Scanlon, entered Jun 15, 2026 (recording that "Mr. Lowy stated on the record . . . that he was never Plaintiff's counsel and that

[1] For ease of reference, Defendant will retain the Motion's naming convention of "[Recipient Name] Subpoena" when referring to a particular subpoena.

[2] It bears reminding the Court that Plaintiff's current counsel themselves have questioned Lowy's role in this case, when the Court inquired about filing formal substations of counsel. In their April 20, 2026, letter to Judge Eshkenazi, Mx. Green said: "It is not clear whether Allen Lowry [*sic*] is counsel such that he needs to also be substituted. While in correspondence with us, he stated 'I am not counsel of record,' my understanding is that he appeared in Court last week as 'co-counsel,' and spoke theoretically on Plaintiff's behalf. If he was not acting as counsel, there may be some deeper issues on that front." ECF No. 140.

[he] does not and never did have any files pertaining to this case"). In his May 5, 2026, letter to the Court, Lowy explained that he and his wife had "been very close with Ms. Mandel for several years, 'adopting' her into [their] family and supporting her following the terrible trauma" allegedly caused by Defendant. Lowy "acted as a mentor" to Plaintiff, who "often sought [his] input on personal . . . matters . . . ." Lowy's denial of representation could not be clearer: "I did not provide Ms. Mandel with any legal advice." And he told Plaintiff herself as much, responding to a message from her: "I will not advise you of course." Lowy never appeared in this action. He first surfaced at the April 16, 2026, conference before Your Honor—two and a half years into the case—which, by his own account, he attended not in a representative capacity but because Plaintiff "had asked that [he] accompany her."

The privilege attaches only to confidential communications "between a client and his or her attorney," made "for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The communications qualify only if they "relat[e] to th[e] purpose" of obtaining "legal advice . . . from a professional legal advisor in his capacity as such." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997). It "does not apply if the lawyer is acting as a friend, relative, accountant or agent . . . ." *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049 (LJL), 2025 WL 2606904, at *3 (S.D.N.Y. Sept. 9, 2025) (citations and internal quotation marks omitted). The burden establishing every element is Plaintiff's," and it is not "discharged by mere conclusory or ipse dixit assertions." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) (citation omitted); *see also Lively*, 2025 WL 2606904, at *4 (no privilege where proponent offered "no affidavit . . . that an attorney-client relationship existed," "no engagement letter, and no evidence that any advice was provided"). Plaintiff's answer is that Lowy's statements are "false," and that three things prove it: memoranda "labeled 'privileged;" an April 17, 2026, email in which Lowy described himself "co-counsel" while ordering a transcript;[3] and Mr. Batista's hope that the case would end up "rewarding . . . you and myself," which, Plaintiff reasons, must mean that Lowy was a lawyer on the case "if the arrangement was ethical." A label does not make a communication privileged; ordering a transcript is neither legal advice to a client nor a representation to the Court; and Rule 1.5(g), which governs fee splitting, cuts the other way. A fee may be divided only if the client agrees "after full disclosure . . . including the share each lawyer will received," confirmed in writing. N.Y. R. Prof. Conduct 1.5(g)(2). If that arrangement existed, Plaintiff holds a non-privileged writing naming Lowy and his share of the fee. She has never produced, logged, or even mentioned one. Judge Reyes's June 15, 2026, remarks were directed to Mr. Batista, Plaintiff's counsel of record, and the resulting injunction is likewise directed to him alone.[4]

Plaintiff's request to quash the Lowy Subpoena rests little on more than the unsworn, conclusory assertions of her counsel, which Plaintiff asks the Court to credit while asking it to discredit what Lowy himself has stated. Even if Lowy's April 17, 2026, email could be read as inconsistent with what he later told the Court, Plaintiff cannot resolve that inconsistency by withholding every relevant document and asking the Court to take her word for it. The fact that Lowy "is a lawyer does not automatically insulate him" from discovery; what matters is his "role in connection with

[3] A transcript of the conference at which he stated that he was not and never was counsel to Plaintiff.

[4] Defendant objects to Plaintiff's reliance on this transcript. Defendant was not permitted at this conference and does not have a copy of the transcript, although Plaintiff has it and committed to "proposing any required reactions in the time set by the Rules." The Court should give the quoted remarks no weight on this Motion as Defendant cannot appropriately respond to them.

the matter on which discovery is sought." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003). The Court asked him what his role was, and he answered: that of a family friend, mentor, and confidant over a period of years[5]—in other words, he is an ordinary fact witness. If some subset of his communications or documents was made while he was acting as a lawyer giving Plaintiff legal advice, the remedy is a Local Civil Rule 26.2 log (and no log has been provided)—not quashing a subpoena that also reaches plainly nonprivileged material, such as press communications (Request No. 7) and communications with Plaintiff in the non-legal role he describes.

**2. <u>The Leifer Subpoena</u>.**
Plaintiff argues that the Court should quash Defendant's subpoena to Shulim Leifer under FRCP 26(b)(4)(D), because he was purportedly engaged as a non-testifying expert by Plaintiff's former counsel, Paul Batista. *See* Ltr. at 3. Plaintiff has not produced any of her communications with Leifer, nor has has she provided Defendant or the Court with a privilege log disclosing that such communications exist and are being withheld or any of the other information necessary to assess her claim of privilege. Rather, relying on an October 23, 2023 two-sentence "engagement letter" and Leifer's self-serving affidavit proclaiming to be a non-testifying expert but not disclosing any qualifications, specialized training or expertise that in any way justifies the retention. Leifer does not say whether any state or federal court has been asked to determine his qualification as an expert under Rule 702 – on any subject. In fact, Defendant's counsel was unable to locate any record of Leifer ever serving as either an expert witness or a court-recognized victim advocate in any state or federal lawsuit.

Moreover, unlike most expert retainers, Leifer's engagement letter does not specify the services Leifer is obligated to perform, nor any compensation payable to him for doing so. *See, e.g., In re Asbestos Prod. Liab. Litig. (No. IV)*, 256 F.R.D. 151, 156 (E.D. Pa. 2009) (Where, as here, "there is no evidence of the scope and nature of the expert's services as pertaining to the litigation or work done unrelated to litigation, an individual will likely not be considered a non-testifying litigation consultant and the consulting expert privilege will not attach.") Absent from Leifer's engagement letter is any reference to "sexual assault related trauma," "abuse within the Chasidic community," "the relevant community dynamics at play," or "trauma-informed advocacy – Leifer's alleged areas of expertise. Leifer repeatedly attests that he relied on the engagement letter's assurance of privilege in communicating with Plaintiff. This is misleading, at best. By its plain language, the engagement letter only purported to protect communications with Plaintiff's counsel, not with Plaintiff herself. *See* ECF 185-4. Notably, Defendant's subpoena seeks Leifer's communications with Plaintiff, not her counsel. Finally, without a privilege log, Defendant has no idea what documents exist and are being withheld on patently frivolous claims of privilege. Accordingly, to the extent Leifer withholds communications between himself, Mr. Batista and Mr. Lowy as privileged, he should produce a proper privilege log providing Defendant with the necessary info to assess his claim of privilege.

**3. <u>The Lovy and Za'akah Subpoenas</u>.**
Plaintiff claims no privilege or personal right in the files of Lovy or Za'akah. Her sole ground to quash these subpoenas is that they "impose an undue burden" on their recipients, because Plaintiff "has produced all communications between her and Lovy . . . and between her and any member of

[5] The Lowy Subpoena covers January 1, 2015, to the present. Plaintiff does not contend that Lowy acted as her lawyer throughout that period, and she identifies no date on which any alleged representation began or ended.

Za'akah . . . ." This argument fails at the threshold, because Plaintiff does not have standing to assert it; it belongs to the recipients. "In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975).[6] "[C]ourts have consistently rejected the position that a party who is not the recipient of a subpoena can nonetheless challenge that subpoena because it creates an undue burden." *In re Rule 45 Subpoena Issued To JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 139 (S.D.N.Y. 2016) (citation omitted). Likewise, a non-recipient "lacks standing to object to [the recipient's] compliance simply because in his view, [the issuing party] could also have obtained the records elsewhere." *Id.*[7]

Plaintiff's authorities do not help her. *Alcon Vision, LLC v. Allied Vision Group, Inc.*, No. 19 Misc. 384 (AT), 2019 WL 4242040 (S.D.N.Y. Sept. 6, 2019) and *Torre v. Charter Commc'ns, Inc.*, No. 19-cv-5708 (JMF), 2020 WL 7705940 (S.D.N.Y. Dec. 28, 2020) both involved motions to quash brought by non-party recipients of the subpoenas. And whether the information sought can be obtained from the parties themselves is just one of the considerations "in evaluating whether discovery on a nonparty constitutes an 'undue burden,'" and "there is no absolute rule that party sources must be exhausted before calling upon third parties where there would not otherwise be an undue burden on the nonparty seeking to quash the subpoena." *Ray v. Stichting Pensioenfonds PGB*, No. 26-MC-278 (LJL), 2026 WL 1893739, at *5 (S.D.N.Y. July 1, 2026), *reconsideration denied,* No. 26-MC-278 (LJL), 2026 WL 2169917 (S.D.N.Y. July 28, 2026) (citations omitted).

The argument fails on the merits. The subpoenas seek Lovy's and Za'akah's files, including: communications "with or involving" Plaintiff concerning Defendant,[8] the organization's internal communications about her; communications with the press about her and this action; and documents concerning allegations that Plaintiff has made. Plaintiff cannot have "already produced" another organization's internal records or its press correspondence. Her completeness representation is reasonably questionable given she produced two pages of messages with Lovy and says that no communications with anyone at Za'akah—whose members attend the court appearances in this case as acknowledged by Plaintiff—exist. Testing that representation against the other side of the communications is not "speculation;" it is one of the purposes of a non-party subpoena, and Plaintiff does not dispute that the material is relevant. *See, e.g.*, *Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160 (PAE), 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019) ("[T]hat Fractus may be able to seek discovery (some likely overlapping) on these subjects from the Carrier Defendants does not preclude Fractus from seeking such discovery from Amphenol. . . . [I]t is appropriate for Fractus to 'test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists.'") (citation omitted).

Accordingly, Defendant respectfully requests that the Court deny the Motion in its entirety.

---

[6] *See also Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 293 (E.D.N.Y. 2024) ("only the recipient of a subpoena may move to quash on the grounds of relevancy and undue burden"); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 Civ. 1590 (LTS) (HBP), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) (denying motion to quash where movant made no attempt to establish any proprietary or confidentiality-related interest it may have in the requested documents).

[7] *See also Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023) ("The recipient of a subpoena may move to quash a subpoena that poses an undue burden . . . . By contrast, a non-recipient 'lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden.'") (citations omitted);

[8] And other subjects and categories of documents identified in Request Nos. 1 through 8.

Very truly yours,

MEISTER SEELIG & SCHUSTER PLLC

By: __/s/__________________________
Stacey M. Ashby