MSS | Meister Seelig & Schuster

Stacey M. Ashby
*Partner*
sma@mss-pllc.com
Direct (212) 655-3562

November 10, 2026

**VIA ECF**

Hon. Vera M. Scanlon
Chief United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 13A, South Wing
Brooklyn, New York 11201

**Re: *Mandel v. Daskal*, No. 1:23-cv-07352-RER-VMS**
**Joint Discovery Status Letter**

Dear Judge Scanlon:

We represent defendant Jacob Daskal ("Defendant") in the above-referenced action. We submit this joint letter concerning the status of discovery following the 1.5-hour in-person meet-and-confer between the parties (the "M&C") as provided for in the Court's October 22, 2026 Order (the "Order").

**Defendant's Position**[1]

In accordance with the Order, counsel for the parties met in person on November 4, 2026, to discuss the discovery issues set out in the parties' October 15, 2026 Joint Discovery Status Letter (ECF No. 186).[2] Unfortunately, before the M&C began, Plaintiff's counsel raised an issue , having nothing to do with Mr. Schuster's absence (due to his son's wedding)[3] which they felt compelled

[1] Drafted entirely by me, with the assistance of Defendant's other counsel of record at my law firm involved in this matter.
[2] Mr. Schuster was not able to attend. Nevertheless, Defendant was represented at the meeting by attorneys of record (1) Stacey Ashby, (2) Remy Stocks, and (3) Eli Esakoff (who attended virtually via Zoom due to having recently tested positive for COVID-19).
[3] It should go without saying that Mr. Schuster's failure to attend the M&C was not intended as a violation of this Court's Order, and it did not interfere with the M&C process, except to the extent that Plaintiff's counsel repeatedly brings it up. Rather than focus on the substantive issues, Plaintiff's counsel continues to engage in baseless attacks against Mr. Schuster and our firm, some of which are *ad hominem* (*e.g.*, mocking my firm for using the free version of Zoom and repeatedly calling Defendant's counsel "clowns").

to draw to the Court's immediate attention to.[4] The issue concerned the question of whether the Zoom meeting set up so that our associate, Mr. Esakoff, who had Covid, could participate virtually, (while myself and Ms. Stocks, both partners who were actively involved in litigating the case and had full authority to negotiate the issues which were the subject of the M&C and were physically present) should record the M&C, given the history of disagreements and apparent misunderstandings between counsel.[5] This, without any connection, caused Plaintiff's counsel to lodge accusations that Mr. Schuster was violating orders by not being present at the M&C. This is not the first time that Plaintiff's counsel has *inaccurately* accused my firm and its members of violating court orders. My firm and Mr. Schuster take such accusations very seriously. Thus, as an initial matter, there was no confusion as to the Order as suggested by Plaintiff below, and Mr. Schuster was not knowingly violating a court order by not participating in the M&C. Rather, I, along with my other colleagues on this case, understood the Court's directive to mean that the attorneys actively handling discovery in this matter for both sides were to participate in the M&C, not literally every attorney on the docket (which would also include my partner Kevin Fritz who has never interacted with Plaintiff's counsel previously and whose attendance did not mean anything to Plaintiff's counsel). As I stated in my contemporaneous email to the Court in response to Mx. Green's email, Ms. Stocks and I, two partners, with the virtual assistance of our able associate, Mr. Esakoff conducted the M&C. To the extent MSS and Mr. Schuster misunderstood a directive, we meant no disrespect to the Court and will be guided by the Court's views should it decide to address this any further.

Another unfortunate outcome of the M&C which took place for nearly 2 hours on November 4, 2026, at my office, was that it did not resolve any discovery issues.

Regarding financial disclosures, Defendant maintains his objection to Plaintiff's requests as overreaching and overly broad in scope, particularly in light of the withdrawal of Plaintiff's Motion to Amend the First Amended Complaint to add claims pertaining to financial transfers and wrongdoing. Defendant remains willing to produce financial records from the last three years, which is the period relevant to this action, and counsel is conducting searches for such records now.

Regarding ESI, Defendant provided Plaintiff a list of search terms to run across her sources of electronic data. Defendant has not yet received an objection to any of those search terms. Plaintiff indicated that, depending on the volume of responsive documents, she may not make a complete production but instead will object "on the total volume of review," unless Defendant pays for her to obtain an eDiscovery review platform. Defendant has advised Plaintiff that he will not provide her an eDiscovery review platform nor pay for her costs incurred in connection therewith and expects fulsome production. Defendant has asked that if Plaintiff has objections to a particular term, she raise it for discussion or provide a counterproposal that addresses her

---

[4] Another baseless assertion by Plaintiff's counsel is that Ms. Ashby made any commentary about anybody's physical appearance; Ms. Ashby merely commented on the expression of confusion on Plaintiff's counsel's face.
[5] At this suggestion and *request* (not demand as reported below) for Plaintiff's counsel's consent, Ms. Massimi began belligerently accusing Defendant's counsel of "demanding" to record them—an accusation they lay again in this letter.

concerns. Defendant has also reserved the right to supplement that list as discovery continues and is reviewed. At the M&C, Defendant also reminded Plaintiff—and notes here for the Court—that in her July 24, 2026 Amended Responses to Defendant's First Requests for Production (the "Amended Responses"), Plaintiff stated that she was "continuing to search for responsive documents and [would] produce such documents within 60 days." That commitment contained a caveat buried in a footnote that Plaintiff's current counsel had received from her prior counsel "(1) two boxes of paper documents with no organization, folders, or any other attempt to keep order, filled with a number of documents from other cases and projects and (2) copies of tens of thousands of emails based on search terms . . . ." Plaintiff has neither produced a single document from that file nor served a privilege log pertaining to it. Needless to say, how Plaintiff's prior counsel maintained his records or what steps Plaintiff's current counsel must take to comply with discovery deadlines is not Defendant's problem. Plaintiff's counsel is more than capable of meeting the court deadlines, and the continued excuse of blaming predecessor counsel for purported deficiencies is wearing thin.

Regarding Plaintiff's devices, the parties discussed the sole cellular phone in either party's possession: Plaintiff's "Kosher Phone," which was returned by the government following the conclusion of the criminal action. Plaintiff states that she does not remember the password to access the data on this phone. She has refused to engage a technology vendor to access it unless Defendant pays for it. Plaintiff provided a quote of $5,000 to have this service performed. Plaintiff's counsel has even been so bold to demand that Defendant advance the cost to engage the technology vendor, claiming the cost is disproportionate to the case. That demand is confusing considering the multi-million-dollar demand set forth in the Amended Complaint (which was reduced from an initial untethered demand of $150 million). Defendant notes the apparent inconsistency in Plaintiff's attitude toward the Kosher Phone. She now claims—and has repeatedly represented to Defendant—that there is nothing of substance on the phone, which is by design on "Kosher Phones"; *i.e.*, they do not have the capabilities of messaging and other features of ordinary phones. However, her Amended Responses to Requests Nos. 2, 4, 5, 19, and 20 state that "[t]o the extent [responsive documents] existed, the majority were on a kosher cell phone, inherently without back up, that Plaintiff gave to the FBI." Accordingly, Defendant has a legitimate interest in the data on the Kosher Phone. Defendant's position is that Plaintiff must bear the cost of searching her own devices, and any cost-shifting that the Court deems appropriate will occur later in the case after any judgment and on an accounting of Plaintiff's reasonably-incurred costs. Defendant has requested the serial number of the Kosher Phone to determine whether it is among the devices forensically imaged by the government in the criminal action, because if so, there may be no need to open the phone. Plaintiff has thus far inexplicably refused to provide the serial number. Contrary to Plaintiff's assertion below, Defendant has made that request repeatedly, including in writing following the M&C. Plaintiff now states that she is "happy to pull that serial number," and Defendant (again) asks that she do so promptly.

Regarding Plaintiff's medical records and authorizations, Defendant maintains that he is entitled to authorizations for any provider, including medical providers, from whom Plaintiff sought treatment related to the injuries she claims to have suffered as a result of Defendant.

Plaintiff's written discovery indicates physical manifestations of her alleged injuries, and Defendant maintains that he is entitled to all records relating to those alleged manifestations, including records relating to other potential causes of those alleged injuries. Defendant is in the process of serving subpoenas on the medical providers that Plaintiff has thus far identified. On November 8, 2026, Defendant asked Plaintiff for the correct address of one of her therapists, as the medical practice at the address on the authorization provided had no record of the therapist or Plaintiff.

Regarding the subpoenas that are the subject of Plaintiff's pending motion to quash, Plaintiff indicated that she will not withdraw any portion of that motion. Following the M&C, however, Plaintiff's counsel acknowledged that Plaintiff lacks standing to challenge the Za'akah subpoena on First Amendment grounds, notwithstanding her assertion of that objection in the motion. Plaintiff cites no authority for her suggestion below that the Court quash *sua sponte* the portion of a subpoena that she concedes she lacks standing to challenge. Defendant will respond to any objections or motions to quash by the subpoena recipients if and when they are filed. Defendant continues to oppose Plaintiff's motion to quash in its entirety. Defendant notes that he likely will seek to serve subpoenas on additional fact witnesses, whom we have identified as likely possessing information relevant to the parties' claims and defenses through our review of the file in the criminal action, which was already produced in full by Defendant to Plaintiff.

Regarding interrogatories, Defendant is still awaiting supplemental responses with more fulsome answers to several of his interrogatories, including those to which Plaintiff objected as contention interrogatories. Defendant believes that it is appropriate for Plaintiff to provide complete answers to these interrogatories at this time, as she has had possession of the criminal case file for weeks, and she indicated more fulsome responses would be forthcoming. Defendant reserves the right to move to compel. Defendant also objected to Plaintiff's improper invocation of Rule 33(d) in response to several interrogatories in lieu of providing an answer.

Finally, Defendant maintains that, given Plaintiff's delayed document production and interrogatory answers, her pending motion to quash, and the newly issued medical provider subpoenas, the originally contemplated deposition schedule should be modified to reflect more appropriate later dates. As to a settlement conference, Defendant is available on December 7, 2026or January 4, 2027.

**Plaintiff's Position**

Plaintiff is providing this position after receiving, for the first time, a draft at 7:44 p.m. on Monday, November 9, and another update at 10:03 a.m. today. Before saying anything else, however, because it was lost in the shuffle last time, Plaintiff proposes the apparently agreed-to settlement conference take place between December 7 and December 11, 2026. We have followed up many times since the Court directed both parties to come prepared with dates to the most recent conference, with no response at all from Defendant's counsel other than to say they would get back to us.

At the meet and confer, nearly every issue raised was one raised by Defendant. Plaintiff varyingly confirmed impasses, clarified misunderstandings, and offered further production, on a variety of issues. The position Defendant sent after business hours the day before a noon deadline, however, is almost completely disconnected from the meeting.

It is false to say the parties "did not resolve any discovery issues." Plaintiff agreed to meet a number of Defendant's demands. The parties also explicitly reached several impasses, which are bizarrely reported above as if Plaintiff agreed to meet Defendant's demands: For example, Defendant says he "is still awaiting supplemental responses with more fulsome answers to several of his interrogatories, including those to which Plaintiff objected as contention interrogatories," but Plaintiff has made clear there is an impasse and Defendant is free to move on that issue. It is not clear why Defendant is reporting it as if Plaintiff will be acquiescing to that demand.

However, because of timing, Plaintiff cannot directly address every single issue, because, as has been the case throughout this case, Defendant's counsel has not been willing to send a draft in any timely manner — regardless of which party takes the pen first. Plaintiff has asked for a time plan and draft since last week. At 3:56 p.m., Defendant's counsel only said, "We will get you a draft in the next few hours. There is no reason that you need Defendant's position on paper before you draft Plaintiff's position."[6] While Defendant's firm may make its associates work late, it is not unreasonable to expect collaboration to take place during ordinary business hours.[7] And there is no reason Defendant's counsel could not have at least notified Plaintiff's that there was no plan to work during business hours. Plaintiff's lead counsel is Court Tuesday morning, and had family obligations Monday evening, which had to be cut short.

Below is largely what Plaintiff had drafted in order to be prepared to file *something*, should Defendant not provide anything in advance of the deadline.

***Defendant's Counsel violated the Court's Order to meet.***[8]

First, Defendant's counsel violated the Court's clear direction that all "attorneys of record are ordered to meet in person." October 22, 2026 Minute Order; October 16, 2026 Minute Order. Mr. Schuster (appearance at ECF No. 9) did not attend. Defendant's counsel in attendance confirmed at the meet and confer that this was a deliberate decision, stating Mr.

---

[6] This is similar to Defendant's choice, mentioned below, to only serve proposed search terms the morning of the date scheduled for the meet and confer. Defendant omits, above, that this is why terms were not discussed.
[7] The metadata in the document Defendant sent reflects the document was created at 7:16 p.m., by a named legal assistant at the firm. The work product may have been created earlier.
[8] Defendant's claim that that this is somehow connected to Defendant's issues with recording is not based in reality. The demand to record the meeting was made for the first time the moment it was slated to start. It turns out recording the meeting would not have worked anyway, because Defendant's firm was using a free zoom account that stopped working after 45 minutes.

Schuster "entrusted us to handle this meeting without him."[9] Defendant's counsel never informed us that Mr. Schuster was attending a wedding. Had they provided this information, Plaintiff would have consented to a request for an extension on that basis.

This matters because, several days following the meeting, Defendant's counsel sent a lengthy follow up email that appears to have been driven or written by the absent attorney in that it shows significant confusion over issues that were specifically clarified at the meet and confer. There was no ambiguity in the Court's Order, particularly because the Court rejected the portion of ECF No. 190 that asked if even one attorney could appear remotely for the meet and confer. The Court made clear all counsel of record were to attend. It appears Mr. Schuster saw that the Court would say no if he asked to be excused, and decided to excuse himself instead . As Judge Wicks has put it a few times, it is "not" — or should not be — "easier to ask for forgiveness than it is to get permission." *Sanchez v Aircraft Finishing Corp.*, 2022 US Dist LEXIS 163177, at *4, n 3 (EDNY Sep. 9, 2022). And this comes after Judge Reyes cautioned Defendant's counsel about following Court orders and rules, after previous violations noting, "Daskal's counsel is warned that they now have two (2) strikes against them. A third may result in sanctions." ECF No. 118 at 1 n. 1.

As mentioned above, there is a large distance between what happened at the meet and confer and what is in Defendant's position above. And some of this appears to come from the failure of — as Defendant admits he understood the Court to order — "all counsel of record for both sides … to participate in the M&C."

***Defendant's subpoenas are broader than Plaintiff understood, and there is otherwise no agreement on the subpoenas.*** [10]

At the meet and confer, Defendant confirmed that his subpoenas to Za'akah do not seek just information that Za'akah had from first hand sources, but any communication any Za'akah employee or personnel had about Defendant, at any time, whatsoever.

Plaintiff agreed that she has no standing to object to a subpoena that seeks communications that were not with her, and do not — for example — repeat things she discussed with anyone. That is, for example, Plaintiff does not have standing to move to quash so much of the subpoena as Defendant has confirmed seeks discussions of the news that Defendant was

---

[9] Defendant's claim that his counsel were confused about whether Mr. Schuster was included in the Court's order is strange. Defendant admits the Order was clear that the Order meant "all counsel of record for both sides were to participate in the M&C." Mr. Schuster has been lead on this case for some time. At the most recent in person conference, Mr. Schuster took the lead in speaking for Defendant. 2026-05-26 Tr. at 32-54. He did the same at other conferences. So, to compare him to a lawyer who appears to have simply forgotten to file a motion to withdraw is baseless. And the fact that Defendant feels the need to mention ***why*** he missed the Court-ordered meeting — but not why other lawyers who have not worked on the case missed it — demonstrates Defendant understands the difference.

[10] Defendant's report of the positions above is detached from the conversation in a way that is profoundly difficult to understand. It may be best for the Court to just decide the motion on the papers filed, as if nothing had developed, or discuss at the upcoming conference. Plaintiff

being indicted and political strategy around that indictment. However, that portion of the subpoena is sufficiently overbroad and poses a clear enough First Amendment problem that the Court may wish to quash it *sua sponte*.[11]

***The parties have reached impasses on a number of issues.***

The parties also confirmed impasses on a number of issues that would now be ripe for Defendant to file a motion to compel. In addition to the requests seeking Plaintiff's birth certificate and IDs — on which an impasse was reached some months ago — the parties are now at an impasse on a few additional issues. Plaintiff can respond to Defendant's explanation for how the relevant material is discoverable after Defendant moves. For example, Defendant cited a 1990's case from the Northern District that they say discusses contention interrogatories early in discovery with approval (*In re Savitt/Adler Litigation*, 176 F.R.D. 44 (N.D.N.Y. 1997)), and believed that meant the cases in this district saying otherwise were wrongly decided. *But see, e.g., Linde v Arab Bank, PLC*, 2012 US Dist LEXIS 39518, at *7-8 (EDNY Mar. 20, 2012) (collecting cases). But as noted above, for some reason, Defendant seems to think that — despite Plaintiff saying, "we are at an impasse, you can file a motion" — Plaintiff has agreed to withdraw her objections.

***Plaintiff will respond to Defendant's search term proposal later this week.***

Defendant served a proposal on search terms the morning of the meet and confer, despite multiple requests by Plaintiff to see something with some reasonable amount of notice. For Defendant to say "Defendant has not yet received an objection to any of those search terms" is more than strange.

Regardless, the search terms proposal nominally had 75 terms — already a massive proposal — but many of these were common words separated by "OR" connectors, such as this single term with six nested term: "Mommy OR Mammy OR Mami OR Ima OR Mom OR Mother." And searching "mom" across an entire email account is almost inevitably designed to make a search far too broad. Others included things like "parent*," "uncle OR aunt OR aunty OR tante OR cousin*," and internal contradictions, like separately proposing "Daskal" and "Daskal w/15 (arrest* OR plea OR guilty OR sentenc* OR prison OR jail OR trial OR charge* OR FBI OR police OR NYPD OR report*)" (which would be wholly included in the first term).

Accordingly, Plaintiff was not prepared to discuss actually resolving the terms, but she committed to providing a response this week.

***Defendant committed to providing authority for certain requests.***

---

[11] Plaintiff's counsel's firm represents Za'akah and its employees. The firm is not acting in that capacity here at the moment.

Certain requests were discussed for the second time, and like last time, Defendant said he would provide authority for the request so Plaintiff could consider it. Those included, for example, the request that Plaintiff identify every place she has lived in the last decade. Defendant appears to be walking that commitment back in this letter.

***Plaintiff will provide updated responses.***

For a large number of items, on discussion — either to avoid litigation or because Plaintiff now better understands what Defendant is requesting after a discussion — Plaintiff will serve updated responses within 30 days.

***Plaintiff is open to certain items, but the expense is otherwise prohibitive and not proportionate.***

The parties have spent a puzzling amount of time on a kosher cell phone that did not have any messaging capability. The FBI had imaged the phone and had custody of it until it was sent to Plaintiff's counsel this year. Defendant admitted his counsel had never reviewed the image of the phone, despite the firm having had the image for years now.

The physical phone[12] is locked with a pass-pattern that Plaintiff does not know. And because of the nature of the phone, Plaintiff does not believe there is anything of value on it — and anything of value would be on the FBI image anyway. Notwithstanding that, Plaintiff is willing to send the phone to a vendor to be cracked, if Defendant pays the expense — which we have an estimate of $5,000.00 for. Defendant has likely already spent more than that having his attorneys fight over this issue. Given the low likelihood of any relevant evidence being on the phone beyond what is already in the image, along with the fact that Plaintiff ***will*** recover all costs at the end of the case anyway, because she has liability on a private attorney general claim, the Court would be well within its discretion to shift this cost if Defendant demands it be incurred. *See* Fed R. Civ. P. 26(c)(1)(B); *cf. Bakov v Consol. World Travel, Inc.*, 68 F.4th 1053, 1058-1059 (7th Cir 2023) (collecting cases about a court's discretion to shift the costs of class notice fees when a case is post liability, because the defendant would need to pay those fees anyway). In suggesting the Court only *may* shift costs, Defendant seems to not understand that with liability on the federal, private attorney general claim here, costs and attorneys' fees are mandatory.

Plaintiff provided her response to Defendant's draft at 9:26 on November 9th. At 10:03 this morning, Defendant provided an updated draft to include footnotes 3 and 4. Plaintiff's counsel take a different of view of what Defendant's counsel describe in these footnotes. Ms. Massimi responded to Ms. Ashby's sudden demand to record by simply declining. Ms. Ashby was unwilling to accept this response and continued to repeatedly push her demand to record and harangue Plaintiff's counsel for

[12] It is simply a false statement to say Defendant "has requested the serial number of the Kosher Phone to determine whether it is among the devices forensically imaged by the government in the criminal action" at the meet and confer. That did not happen. Plaintiff is happy to pull that serial number, but the lawyer writing this letter after hours does not have the phone at home — it currently being stored safely in the office.

declining consent. Having just received Defendant's demand that minute, Ms. Massimi attempted to engage in a discussion of how the recording would take place, to which Ms. Ashby became belligerent, which continued throughout the course of the meet and confer, through Ms. Ashby screaming Plaintiff's counsel out of her office lobby at the end of the meeting. It is surprising that Defendant's counsel have chosen to open the door to this issue since their own attacks on Plaintiff's counsel included swipes at one counsel's physical appearance.

We thank Your Honor for your consideration and attention to this matter.

Very truly yours,

| | |
|---|---|
| COHEN&GREEN P.L.L.C. | MEISTER SEELIG & SCHUSTER PLLC |
| By: /s J. Remy Green | By: /s Stacey M. Ashby |
| J. Remy Green | Stacey M. Ashby |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

cc: All Counsel Of Record (via ECF)